# EXHIBIT B

# EXHIBIT B

United Technologies Realty, Inc.
4 Farm Springs Road
Farmington, Connecticut 06032



July 22, 2011

Southern California Aviation, LLC
18438 Readiness Street
Victorville, California 92394
Attn: Robby Word, General Manager

Re:  Hangar #681, Southern California Logistics Airport, Victorville, CA (the "Facility")

Dear Mr. Word:

This letter (this "Agreement") shall confirm the agreement that Pratt & Whitney Maintenance Services, Inc. ("Pratt") shall sublease to Southern California Aviation, LLC ("SCA") all of the space, with appurtenant rights, at the above-referenced Facility leased by Pratt from the Southern California Logistics Airport Authority ("SCLAA") under that certain Sublease Agreement dated as of July 1, 2011, a copy of which is attached hereto and incorporated herein by reference (the "Sublease"), for a term commencing on the Sublease Commencement Date (as defined in the Sublease) and expiring on the day immediately preceding the fifth anniversary of the Sublease Commencement Date. Notwithstanding the foregoing, this Agreement shall sooner terminate in the event the Sublease terminates for any reason. SCA hereby agrees to be bound by and perform all of the provisions and obligations of Pratt under the Sublease, with the exception that SCA shall pay the required rent and other payments under the Sublease to Pratt and Pratt shall then pay such sums to SCLAA. Notwithstanding the foregoing, SCA shall not have the right to renew the Sublease with SCLAA, and shall not assign, sublet or alter the Facility without the prior written consent of Pratt.

By signing a copy of this Agreement where indicated below, SCA hereby acknowledges and agrees to the above terms.  If you have any questions, please feel free to contact Peter Stergos at (860) 284-3623.

Very truly yours,

PRATT & WHITNEY LINE MAINTENANCE
SERVICES, INC.

By: _____

Stephen Forino, President of
United Technologies Realty, Inc.
Authorized agent

Acknowledged and agreed to:

SOUTHERN CALIFORNIA AVIATION, LLC

By: _____        7/26/2011
John Tokarz, CEO                              Date

EXHIBIT B
87

EXECUTION VERSION

FIRST AMENDED AND RESTATED SUBLEASE

This First Amended and Restated Sublease (this "Sublease") is entered into as of the 7th day of May, 2013 (the "Effective Date") by PRATT & WHITNEY LINE MAINTENANCE SERVICES, INC. ("Sublandlord"), a Delaware corporation, and SOUTHERN CALIFORNIA AVIATION, LLC ("Subtenant"), a Delaware limited liability company, and amends and restates in its entirety that certain sublease letter agreement between Sublandlord and Subtenant dated July 22, 2011 with regard to Building # 681 at the Southern California Logistics Airport, Victorville, California.

1.     Property Subleased.  Sublandlord hereby subleases to Subtenant, and Subtenant hereby subleases from Sublandlord, upon the terms and conditions set forth herein, certain property known as Building # 681 and the adjacent parking area at the Southern California Logistics Airport, 18260 Phantom Street, Victorville, California (the "Subleased Premises").  The Subleased Premises constitute the entirety of the "Subleased Premises" as such term is defined in Section 1, subsections a, b and c, of the Master Lease (as defined below).

2.     Master Lease and Master Landlord.  The Subleased Premises are presently subleased by Sublandlord from the Southern California Logistics Airport Authority ("Master Landlord") pursuant to a Standard Sublease Agreement dated as of July 1, 2011, a copy of which is attached hereto as Exhibit A (the "Master Lease").  Master Landlord ground leases the land on which the Subleased Premises is located from the Secretary of the Air Force on behalf of the United States of America (the "Ground Landlord") by Lease dated April 29, 1994, a copy of which is available and on file in the Master Landlord's office.  The Master Lease and the Ground Lease are incorporated herein by this reference.  Except as herein modified or excluded, all of the terms, provisions, covenants and conditions of the Master Lease applicable to the Subleased Premises are made part of this Sublease with, where applicable, Sublandlord being substituted for "Sublessor" therein and Subtenant being substituted for "Sublessee" therein, provided, however, that Sublandlord shall not be liable to Subtenant for any failure in performance resulting from the failure in performance by the Master Landlord under the Master Lease of the corresponding covenant of the Master Lease, and Sublandlord's obligations hereunder are accordingly conditional where such obligations require such parallel performance by Master Landlord.  Subtenant hereby assumes and covenants that it will observe all of the provisions of the Master Lease except as may be excluded above, to the extent applicable to the Subleased Premises, on the part of Sublandlord to be performed as Sublessee thereunder, and that Subtenant will not do any act, matter or thing which will be, result in, or constitute a violation or breach of or default under the Master Lease or the Ground Lease.  In addition, within (fifteen) 15 days after the close of each fiscal quarter, Subtenant shall deliver to Sublandlord a quarterly compliance certificate, in each case certifying the then-current representations, warranties, and/or covenants that are required under the compliance certificate, the form of which is attached hereto as Exhibit B (the "Compliance Certificate").  Time shall be of the essence with respect to the delivery of each Compliance Certificate due hereunder.  In case of any conflict or inconsistency between the provisions of the Master Lease and those of this Sublease, the provisions of this Sublease shall, as between Sublandlord and Subtenant, control.

3.     Premises Subject to Master Lease.  Except as otherwise provided herein, this

EXHIBIT B
88

Sublease is subject to all of the provisions of the Master Lease, and Subtenant shall:

(a)    be bound with respect to the Subleased Premises by all the terms, covenants, and conditions of the Master Lease; and

(b)    assume, as to the Subleased Premises, all obligations of Sublandlord under the Master Lease starting on the Commencement Date, as defined in <u>Section 4</u> below, (including, without limitation, any obligations of maintenance, repair, and indemnity).

4.    <u>Term; Termination</u>. (a) Unless terminated earlier pursuant to subsections (b)(i) – (iii) below, the term of this Sublease shall be for a period from the Effective Date (the "<u>Commencement Date</u>") through and including June 30, 2016 (such period being referred to as the "<u>Sublease Term</u>"). The following terms are defined:

"<u>Bankruptcy</u>" means a petition in bankruptcy, voluntary or otherwise, any assignment for the benefit of creditors, any petition seeking reorganization or arrangement under the bankruptcy laws of the United States or any state thereof, or any other action brought pursuant to such bankruptcy laws filed by or against Subtenant;

"<u>Change in Control</u>" means the occurrence of any event, or series of events, by which either (x) ComAv, LLC shall cease to own (directly or indirectly) one hundred percent (100%) of the ownership interests of Subtenant, or (y) ComAv, LLC shall otherwise fail to have the ability to Control Subtenant.

"<u>Control</u>", including the terms "controlling," "controlled by" and "under common control with", means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting securities, by contract, or otherwise.

(b)    This Sublease may be terminated (each a "<u>Termination Event</u>") by Sublandlord:

(i)    upon Subtenant experiencing (A) a Change in Control or (B) Bankruptcy;

(ii)    upon default by Subtenant under (A) this Sublease, (B) the Master Lease, or (C) any other lease or license the Subtenant is a party to for property located at the Southern California Logistics Airport and following the expiration of any applicable notice or cure provided herein or therein; or

(iii)    in the event the Master Lease terminates for any reason.

(c)    In the event this Sublease is terminated in accordance with this <u>Section 4</u>, the parties hereto shall be released from all liabilities and obligations hereunder as of the date of such termination, except those which by the terms of this Sublease expressly survive expiration or termination of the Sublease.

5.    <u>Rent</u>.

EXHIBIT B

(a)     Subtenant shall pay Sublandlord as Rent for the Sublease Term: (i) the "Monthly Base Rent" plus the "Annual Anniversary Increase" as set forth in Paragraph 5 of the Master Lease, plus (ii) Ten Thousand Dollars ($10,000) per year for administrative costs, plus (iii) any and all additional rent or additional sums charged by Master Landlord under the Master Lease. Such Rent shall be payable in advance on the first day of each month, without deduction or offset and without prior notice or demand.  Any rental sums more than 10 days past due shall be subject to a late fee in the amount of 5% of the amount delinquent.

(b)     If the date of delivery of the Subleased Premises by Sublandlord is not the first day of a month, Rent for the period commencing on the Commencement Date and ending on the last day of the month in which the Commencement Date occurs shall be apportioned on the basis of the number of days in said month and shall be paid on the Commencement Date.

(c)     Subtenant shall be responsible for paying for the utilities in accordance with Section 19 of the Master Lease.

6.     Condition of the Premises.  Subtenant has inspected the Subleased Premises prior to executing this Sublease.  Subtenant acknowledges and agrees that, as of the commencement of the Sublease Term:

(a)     the Subleased Premises are in good condition;

(b)     Sublandlord has no obligation to make any improvements to the Subleased Premises; and

(c)     the Subleased Premises are accepted "as is".

7.     Insurance.  Subtenant shall procure and maintain all insurance policies required to be provided by Sublandlord under the provisions of the Master Lease with respect to the Subleased Premises.  All such policies shall name Sublandlord, Master Landlord and the Ground Landlord as an additional insured.  Certificates of insurance evidencing such policies shall be delivered to Sublandlord on the Commencement Date and, if the policy requires renewal, not less than 10 days prior to the expiration of the policy.  Subtenant shall also deliver to Sublandlord certificates of insurance evidencing any changes in the types or amounts of insurance coverage with respect to the Subleased Premises.

8.     Indemnity.  For purposes of the Master Lease and Ground Lease, Sublandlord shall be included within the term "Indemnified Parties".  Except in instances where the gross negligence or willful misconduct of Sublandlord or Sublandlord's agents, employees or invitees (other than Subtenant's agents, employees or invitees) is involved and in which case the following provisions shall not apply, Subtenant shall indemnify, defend and hold harmless Sublandlord from:

(a)     any and all claims of liability asserted against Sublandlord by a third party, including without limitation any agency or instrumentality of the federal, state or local government, for bodily injury including death, physical damage to or loss of use of property or

cleanup activities to the extent required by applicable law (remedial or removal), arising out of or relating to:

   (i)  the release or threat of release of a Hazardous Materials by Subtenant, its agents, employees, invitees and contractors during the term of this Sublease;

   (ii)  Subtenant's use or occupancy of the Subleased Premises;

   (iii)  Subtenant's failure to comply with any term, condition, or covenant of this Sublease or the Master Lease, except as excluded in <u>Section 2</u> above; or

   (iv)  the negligence or willful misconduct of Subtenant or Subtenant's agents, employees or invitees and

  (b) any cost, liability or expense imposed upon Sublandlord under any local, state or federal law, ordinance, statute, rule, regulation, or judicial or administrative order because of or arising out of any contamination of the property on which the Subleased Premises are located or any contamination of groundwater or surrounding lands because of or arising out of contamination of the property on which the Subleased Premises are located due to the actions of Subtenant or its employees or agents.  The indemnifications of this <u>Section 8</u> shall survive the expiration or termination of this Sublease.

  9. <u>Use of Leased Premises</u>.  (a)  Subtenant agrees (i) to use the Subleased Premises in such a manner as to comply with all applicable governmental laws, ordinances, and regulations in connection with its use of the Subleased Premises; (ii) to keep the Subleased Premises in a clean and sanitary condition, and to use all reasonable precautions to prevent waste, damage, or injury to the Subleased Premises; and (iii) the Subleased Premises are to be used by Subtenant for the purposes stated in Section 12 of the Master Lease and for no other purpose unless expressly agreed to by the Sublandlord in writing.

  (b) Additionally, Subtenant agrees that it will not, without the written approval of the Sublandlord:

   (i)  conduct removal and salvaging of aircraft assemblies, parts and components from aircraft for the sole purpose of scrapping activities ("Dismantling") inside of the Subleased Premises or in or around such other building or buildings and land adjacent thereto;

   (ii)  store any aircraft parts outside of the Subleased Premises and land adjacent thereto;

   (iii)  drain or fill fuel tanks or hydraulic tanks, or any compartments, or distribution systems related thereto;

   (iv)  treat or dispose of any Hazardous Material;

   (v)  store or dispose of Solid Wastes except in the normal course of business;

   (vi)  use, store, or dispose of chlorinated hydrocarbons and PCBs, the storage of fuels, hydraulic oils in excess of 110 gallons;

EXHIBIT B

(vii)   any activities that would require an air emissions permit, water discharge or hazardous waste permit under all State of California or Federal requirements;

(viii)   conduct any activities that would require the facility to exceed a small quantity generator status; or

(ix)   conduct the large scale machining of metal or composite material; or

(x)   install chemical cleaning tanks exceeding 20 gallons.

10.   Notices.  Any notice given under this Sublease shall be in writing and shall be hand-delivered (including delivery by nationally recognized overnight courier) or mailed (by certified or registered mail, return receipt requested, postage prepaid), addressed as follows:

| | |
|---|---|
| Subtenant: | Southern California Aviation, LLC<br>18438 Readiness Street<br>Victorville, CA 92394<br>Phone: 760-963-1811 |
| Sublandlord: | Pratt & Whitney Line Maintenance Services, Inc.<br>411 Silver Lane<br>East Hartford, CT 06108<br>Attn: President |
| with a copy to: | United Technologies Realty, Inc.<br>Nine Farm Springs Road<br>Farmington, CT 06032<br>Attn:  Manager, Aerospace Real Estate |

Any notice shall be deemed to have been given when hand-delivered or, the date of receipt indicated on the return receipt, if sent by certified mail.

11.   Remedies of Sublandlord Upon Default.  Sublandlord shall, if Subtenant breaches any provision of the Sublease, be entitled to the same remedies as those granted to the Master Landlord for default under the Master Lease, in addition to any remedies at law or in equity which apply to subleases.  Subtenant shall be afforded the same notice and cure periods for default under this Sublease as are set forth in Section 32 of the Master Lease.

12.   Surrender of the Subleased Premises.  Upon the expiration of the Sublease Term or earlier termination of this Sublease, Subtenant shall surrender the Subleased Premises in the same condition as received, ordinary wear and tear excepted, subject to Subtenant's alterations for which the prior written consent of Sublandlord and Master Landlord was obtained and which otherwise comply with the terms of the Master Lease.

13.   Attorney's Fees.  Should either party commence any legal action or proceeding against the other based on this Sublease, the prevailing party shall be entitled to an award of reasonable attorney's fees, in addition to any other relief to which such party would be entitled.

EXHIBIT B

14.     Binding Effect.  This Sublease is binding upon and shall inure to the benefit of the parties hereto and their permitted respective successors and assigns.

15.     Amendment.  This Sublease may not be amended or altered in any provision unless such amendment or alteration is reduced to writing and signed by the parties hereto and approved by the Master Landlord in writing.

16.     Subleasing; Assignment.  Except with the prior written consent of Sublandlord and the Master Landlord, Subtenant shall not transfer or assign this Sublease or any of its rights hereunder, nor sublet the Subleased Premises or any part thereof or any property thereon nor grant any interest, privilege or license whatsoever in connection with this Sublease.   The foregoing notwithstanding, Sublandlord expressly consents to that certain License Agreement dated January 14, 2013 by and between Commercial Aviation Services, LLC ("Commercial") and Federal Express Corporation ("FedEx"), as amended and assigned by that certain Assignment of and Amendment to License Agreement of even date herewith by and among FedEx, Commercial and Subtenant (as amended and assigned, the "FedEx License Agreement"), which FedEx License Agreement has been approved by Master Landlord, and Sublandlord provided.   Sublandlord, by giving its consent to a transfer, assignment or subletting of the Subleased Premises in any instance, shall not thereby be deemed to have given its consent to any transfer, assignment or subletting of the Subleased Premises thereafter.

17.     Non-Waiver.  The failure of Sublandlord to insist in any one or more instances upon performance of any of the terms, covenants, or conditions of this Sublease shall not be construed as a waiver or relinquishment of the future performance of any such term, covenant, or condition. Subtenant's obligation with respect to such future performance shall continue in full force and effect.

18.     Entire Agreement.  This Sublease, the Master Lease, the Ground Lease and the Compliance Certificates contain the entire agreement of the parties.   No representations, inducements, promises of agreements, oral or otherwise, not embodied herein shall be of any force or effect.

19.     Consent.  This Sublease is subject to the consent of the Master Landlord and notwithstanding anything to the contrary herein, this Sublease shall not become effective until such consent is obtained and until Sublandlord and Subtenant execute this Sublease.

20.     Partial Invalidity.  If any provision of this Sublease or the Master Lease is invalid or unenforceable to any extent, then that provision and the remainder of this Sublease and the Master Lease shall be enforceable to the fullest extent permitted by law.

21.     Press Releases; Advertising.  Neither party hereto or any of their respective agents shall issue any press releases, or publish or permit any advertising, with regard to this Sublease and the transaction evidenced hereby, without the prior written consent of the other party.

22.     Permitted Entries.  Sublandlord and its agents, servants, and employees may enter the Subleased Premises at all reasonable times, without notice, and at any time if an emergency

exists, without charge, liability, or abatement of rent, to:

(a)     inspect and examine the Subleased Premises to confirm Subtenant's compliance with the provisions of this Sublease and the Master Lease;

(b)     make repairs, alterations, improvements, and additions either required by the Sublease, the Master Lease or applicable law or advisable to preserve the integrity, safety, and good order of part or all of the Subleased Premises or any buildings thereon, provided that Subtenant has otherwise failed to do so following applicable notice and cure; and

(c)     show the Subleased Premises to prospective subtenants (i) during the last six (6) months of the Sublease Term or (ii) upon a default by the by Subtenant and subsequent failure to cure.

[SIGNATURE PAGE FOLLOWS.]

IN WITNESS WHEREOF, the parties have executed this Sublease as of the date first written above.

SUBLANDLORD:

PRATT & WHITNEY LINE
MAINTENANCE SERVICES, INC.

By: _____
    Brady A. Mozahdehi_____
    President

SUBTENANT:

SOUTHERN CALIFORNIA AVIATION, LLC

By: _____
    Craig Garrick
    CEO

IN WITNESS WHEREOF, the parties have executed this Sublease as of the date first written above.

SUBLANDLORD:                            SUBTENANT:

PRATT & WHITNEY LINE                    SOUTHERN CALIFORNIA AVIATION, LLC
MAINTENANCE SERVICES, INC.

By: _____            By: _____
    Brady A. Mozhdehi_____                 Craig Garrick
    President                               CEO

[SIGNATURE PAGE TO FIRST AMENDED AND RESTATED SUBLEASE]

Exhibit A

Master Lease

Exhibit A

EXHIBIT B

## SOUTHERN CALIFORNIA LOGISTICS AIRPORT AUTHORITY

### STANDARD SUBLEASE AGREEMENT
#### (# 681)

This Sublease Agreement (the "Sublease") is made ~~this~~ as of the 1st day of July 2011, by and between SOUTHERN CALIFORNIA LOGISTICS AIRPORT AUTHORITY (SCLAA), a California joint powers authority, (hereinafter referred to as "Sublessor") and PRATT & WHITNEY LINE MAINTENANCE SERVICES, INC., a Delaware Corporation, (hereinafter referred to as "Sublessee").

### RECITALS

These Recitals are included to assist in interpreting this Sublease and to understand the basis upon which certain terms and conditions have been included.   It is not intended, nor should it be construed, to supersede or amend the specific terms and conditions of this Sublease.

A.    The United States Air Force ("Air Force") and the Victor Valley Economic Development Authority ("the Authority") have previously entered into certain Department of the Air Force Leases pertaining to portions of former George Air Force Base, which is now known as Southern California Logistics Airport ("SCLA") (hereinafter referred to as the "Air Force Leases").

B.    The Authority has delegated its decision-making authority with respect to SCLA to the Sublessor, which now has the authority to enter into transactions on behalf of the Authority.

C.    Sublessee's predecessor in interest, Pratt & Whitney Specialty Materials and Services, Inc., had previously entered into a Sublease Agreement (herein after referred to as the "Original Sublease") on September 22, 2005 where the Southern California Logistics Airport became the successor entity to the Sublessor.

D.    Sublessor and Sublessee agree that this Sublease Agreement shall replace the Original Sublease and any extensions relating to the Original Sublease as may have been approved by the Authority in writing.

E.    Sublessee seeks to continue sublease from the Sublessor a portion of the property subject to the Air Force Leases, (hereinafter defined as the "Leased Premises").

### TERMS AND CONDITIONS

1.    **Subleased Premises.**   Subject to the terms and conditions herein contained, Sublessor hereby subleases to Sublessee, and Sublessee hereby subleases

EXHIBIT B
98

Acknowledgement of Changes to Page   Sublessee   _____   Sublessor   _____

from Sublessor certain property which is part of SCLA, described as follows (the "Subleased Premises"):

        a.    A portion of that certain real property designated as Building 681, comprising approximately of 67,500 square feet of hangar space and 5,272 square feet of office space, together with the improvements thereon, located at SCLA at 18260 Phantom St., Victorville, California, including related tarmac, as depicted on Exhibit A, attached hereto and incorporated herein by this reference;

        b.    Together with all appurtenances, rights, privileges and easements in any way applicable thereto.

        c.    In addition to the foregoing Subleased Premises, Sublessee will have a "right of use" for the areas of the tarmac outlined on the map attached hereto and incorporated by reference herein as Exhibit D for use of ingress and egress to the Subleased Premises. Sublessee agrees and understands this tarmac area will be shared and used as common ingress and egress with other hangars at SCLA. Sublessee shall not cause this tarmac area to become blocked or limit use of this area by other aircraft needing to enter adjacent hangars. This right of use will allow Sublessee to use an area of the tarmac which is 270' wide by 250' deep located directly outside and in front of the Subleased Premises as indicated on Exhibit D. This area will be available for Sublessee to use for staging of aircraft that are incidental to a scheduled maintenance operation prior to entering the Subleased Premises and also may be used as an extension of the hangar for servicing aircraft as long as this use does not impede the ingress, egress or business operations of adjacent hangars and does not result in undue wear and tear or damage to the tarmac area.

    2.    Term.  The Term of this Sublease shall commence on July 1, 2011 (the "Sublease Commencement Date") and shall expire on June 30, 2016 (the "Termination Date") unless sooner terminated as herein provided.  To the extent any of the leases or subleases referenced in Recital A hereof are terminated (other than the Original Sublease which this Sublease replaces), and such lease or sublease governs this Sublease, then this Sublease shall also terminate, as of the date of termination of the applicable governing lease or sublease.

    3.    Termination.  Intentionally Omitted.

    4.    Right to Terminate for Development.  With respect to any building which Sublessee occupies pursuant to this Sublease, after Sublessee's execution of this Sublease, Sublessor shall have the right, upon giving Sublessee three hundred sixty-five (365) days prior notice in writing (the "Development Termination Notice"), to terminate this Sublease.  Such right shall only be exercised in good faith to the extent Sublessor requires the current space for the development of SCLA.  In the event Sublessor exercises its termination option contained in this Section 4, Sublessor shall use its best efforts to relocate Sublessee to suitable space on SCLA upon the written

EXHIBIT B
99

Acknowledgement of Changes to Page  Sublessee  _SF_  Sublessor  _____

from Sublessor certain property which is part of SCLA, described as follows (the "Subleased Premises"):

        a.    A portion of that certain real property designated as Building 681, comprising approximately of 67,500 square feet of hangar space and 5,272 square feet of office space, together with the improvements thereon, located at SCLA at 18280 Phantom St., Victorville, California, including related tarmac, as depicted on Exhibit A, attached hereto and incorporated herein by this reference;

        b.    Together with all appurtenances, rights, privileges and easements in any way applicable thereto.

        c.    In addition to the foregoing Subleased Premises, Sublessee will have a "right of use" for the areas of the tarmac outlined on the map attached hereto and incorporated by reference herein as Exhibit D for use of ingress and egress to the Subleased Premises. Sublessee agrees and understands this tarmac area will be shared and used as common ingress and egress with other hangars at SCLA. Sublessee shall not cause this tarmac area to become blocked or limit use of this area by other aircraft needing to enter adjacent hangars. This right of use will allow Sublessee to use an area of the tarmac which is 270' wide by 250' deep located directly outside and in front of the Subleased Premises as indicated on Exhibit D. This area will be available for Sublessee to use for staging of aircraft that are incidental to a scheduled maintenance operation prior to entering the Subleased Premises and also may be used as an extension of the hangar for servicing aircraft as long as this use does not impede the ingress, egress or business operations of adjacent hangars and does not result in undue wear and tear or damage to the tarmac area.

    2.    Term. The Term of this Sublease shall commence on July 1, 2011 (the "Sublease Commencement Date") and shall expire on June 30, 2016 (the "Termination Date") unless sooner terminated as herein provided. To the extent any of the leases or subleases referenced in Recital A hereof are terminated (other than the Original Sublease which this Sublease replaces), and such lease or sublease governs this Sublease, then this Sublease shall also terminate, as of the date of termination of the applicable governing lease or sublease.

    3.    Termination. Intentionally Omitted.

    4.    Right to Terminate for Development. With respect to any building which Sublessee occupies pursuant to this Sublease, after Sublessee's execution of this Sublease, Sublessor shall have the right, upon giving Sublessee three hundred sixty-five (365) days prior notice in writing (the "Development Termination Notice"), to terminate this Sublease. Such right shall only be exercised in good faith to the extent Sublessor requires the current space for the development of SCLA. In the event Sublessor exercises its termination option contained in this Section 4, Sublessor shall use its best efforts to relocate Sublessee to suitable space on SCLA upon the written

request of Sublessee received within thirty (30) days after Sublessee receives the Development Termination Notice.

5. **Rental**. During the Term, Sublessee shall pay monthly base rent for the Subleased Premises equal to $47,880 (based on $40,500 for hangar and $7,380 for offices) per month (the "Monthly Base Rent"), with an anniversary annual increase (the "Annual Anniversary Increase") of one (1%) percent thereafter commencing on Date.

a. **Payment**. Monthly Base Rent shall be payable in advance prior to the first (1st) day of each calendar month and without demand to:

Southern California Logistics Airport Authority
Attention: Executive Director
18374 Phantom Street
Victorville, California 92392

Or at such other place as Sublessor may designate in writing from time to time.

6. **Security Deposit**. Sublessee shall deposit with the Sublessor upon execution hereof $47,880 as security for Sublessee's faithful performance of Sublessee's obligations hereunder. If Sublessee fails to pay rent or other charges due hereunder, fails to pay any utility or service provider, or otherwise defaults with respect to any provision of this Sublease, the Sublessor may use, apply or retain all or any portion of said deposit for payment of any rent or other charges in default or for the payment of any other sum to which the Sublessor may become obligated by reason of Sublessee's default, or to compensate the Sublessor for any loss or damage which the Sublessor may suffer thereby.

7. **Late Charge**. Sublessee hereby acknowledges that late payment by Sublessee to Sublessor of any installment of rent, or any other sums due hereunder will cause Sublessor to incur costs not contemplated by the Sublease, the exact amount of which will be extremely difficult to ascertain. Accordingly, if any installment of rent, or any other sum due from Sublessee is not received by the Sublessor within ten (10) days after such amount is due, whether or not any notice of default or other notice has been given, Sublessee shall pay to the Sublessor a one-time late fee of six percent (6%), in addition to the delinquent payment. The parties hereby agree that such interest charges represent a fair and reasonable estimate of the costs the Sublessor will incur by reason of late payment by Sublessee. Notwithstanding the foregoing, in the event the Sublessee elects to make annual payments in advance, then no late fee shall apply.

8. **Limited Right to Possession of the Subleased Premises**. Sublessee agrees that the terms of its possession shall be subject to any outstanding easements and rights-of-way not within the control of the Sublessor and further to the right of entry by the United States Air Force as provided under the Air Force Leases. The Sublessor shall use best efforts to ensure the quiet use and enjoyment of the Subleased Premises by Sublessee. However, unreasonable interference by Sublessor or the Air Force in the

EXHIBIT B
101

quiet enjoyment of the Subleased Premises by Sublessee such that it results in material financial detriment to Sublessee and Sublessee being unable to continue its business functions in a commercially reasonable manner, shall be grounds for termination of the Sublease by Sublessee.

9.   **Holding Over**.  In the event Sublessee, with or without the Sublessor's prior written consent, holds over and continues in possession of the Subleased Premises after the Termination Date of this Sublease, Sublessee's occupancy of the Subleased Premises shall be considered a month-to-month tenancy subject to all the terms and conditions of this Sublease in effect on the day immediately preceding the Termination Date, except that the Monthly Base Rent for any such holdover period shall be increased to one hundred fifty percent (150%) of the Monthly Base Rent.

10.   INTENTIONALLY OMITTED

11.   **Maintenance**.  Except for (i) repair and maintenance necessitated by Sublessee's activities; and (ii) any capital repairs or replacements, including, but not limited to, repairs and replacement of the exterior, roof, common areas and structural elements of the Subleased Premises and repair and replacement of all systems including HVAC, electrical and plumbing, Sublessee shall at all times during the Term hereof and until surrender and termination, keep and maintain the Subleased Premises in good and substantial order and repair, and shall undertake all necessary repair and maintenance of Subleased Premises.

12.   **Use and Condition of Subleased Premises**.  The Subleased Premises are to be used by Sublessee for aviation-related hangar, testing, storage, maintenance, refurbishment and office purposes and for no other purpose unless expressly agreed to by the Sublessor in writing. Sublessee agrees to use the Subleased Premises in such a manner as to not interfere with the Sublessor's rights in the Subleased Premises or the surrounding areas, to comply with all airport rules and regulations, all applicable governmental laws, ordinances, and regulations in connection with its use of the Subleased Premises, to keep the Subleased Premises in a clean and sanitary condition, and to use all reasonable precaution to prevent damage, or injury to the Subleased Premises.

a.   **No Warranties**.  Except as provided herein, Sublessee agrees that no promises, covenants, representations, statements or warranties have been made on behalf of the Sublessor to Sublessee respecting the condition of the Subleased Premises, or the manner of operating the Subleased Premises or the maintaining of any repairs to the Subleased Premises.

b.   **Acceptance of Subleased Premises**.  Sublessee acknowledges that it has satisfied itself by its own independent investigation that the Subleased Premises are suitable for their intended use, and that neither the Sublessor nor the Sublessor's agent or agents have made any representation or warranty as to the present or future suitability of the Subleased Premises for the conduct of Sublessee's business.

Sublessee's taking possession or use of the Subleased Premises for any purpose shall constitute Sublessee's acceptance of the Subleased Premises "as-is" in its existing condition.

c. Notice of Presence of Asbestos and Lead Based Paint. Sublessee, its successors and assigns are warned that the Subleased Premises may contain asbestos materials and lead based paint materials. No warranties, either expressed or implied, are given with regard to the quantity, location or condition of the asbestos containing materials or the lead based paint materials. Sublessee, its successors and assigns, shall be deemed to have relied solely on their own judgment in assessing the overall condition of all or any portion of the Subleased Premises, including any asbestos hazards or lead based paint hazards or concerns. Sublessee acknowledges that Sublessee was given every opportunity to inspect the Subleased Premises to assess the risk, if any, from asbestos containing material or lead based paint materials.

The Sublessor assumes no liability for damages for personal injury, illness, disability or death to Sublessee or to Sublessee's successors, assigns, employees, invitees, or any other persons subject to Sublessee's control or direction, or to any person, including members of the general public arising from or incident to the purchase, transportation, removal, handling, use, disposition or any activity causing or leading to contact of any kind whatsoever with asbestos or lead based paint on the Subleased Premises which is the subject of this Sublease, whether Sublessee, its successors or assigns has or have properly warned or failed to properly warn the individuals injured. Sublessee, its successors and assigns, further agree, that in its use and occupancy of the Subleased Premises, it will comply with all federal, state and local laws relating to asbestos and lead based paint.

d. Personal Property. Sublessee shall, at the termination of this Sublease, by lapse of time or otherwise, remove all of Sublessee's personal property, repair any damage to the Subleased Premises resulting therefrom, and surrender the Subleased Premises to the Sublessor in as good a condition as when Sublessee took possession, normal wear and tear excepted.

13. Waste or Nuisance. Sublessee shall not commit or permit the commission by others of any waste on the Subleased Premises. Sublessee shall not maintain, commit, or permit the maintenance or commission of any nuisance on the Subleased Premises nor shall Sublessee use or permit the use of the Subleased Premises for any unlawful purpose.

14. Taxes. Sublessee shall pay when due and prior to delinquency all taxes, assessments, and other charges including possessory interest taxes levied or imposed by any governmental entity on the possessory interest of Sublessee in the Subleased Premises and the personal property, trade fixtures, appliances, and leased equipment placed by Sublessee in, on, or about the Subleased Premises during the Term of this Sublease. Sublessee recognizes that the interests of Sublessee in this Sublease shall be subject to the imposition of a possessory interest tax by the San Bernardino County

EXHIBIT B
103

Assessor, and Sublessee agrees to pay such tax amount as may be so levied with respect to the possessory interest of Sublessee in the Subleased Premises under this Sublease. Sublessee further acknowledges that pursuant to California Health and Safety Code Section 33673, the property shall be assessed in the same manner as privately owned property and Sublessee shall pay taxes upon the assessed value of the entire property and not merely the assessed value of its leasehold interest.

    15.    <u>Compliance With Air Force Lease Covenants, Conditions and Restrictions And Related Agreements</u>.

    a.    Sublessee acknowledges a copy of the applicable Air Force Lease is available and on file in the SCLA office.

    b.    Sublessee expressly acknowledges that the Sublessor has assumed certain duties and obligations to the Air Force under the Air Force Lease affecting the use and occupancy of the Subleased Premises. Sublessee further agrees that as of the commencement date of this Sublease (the "Commencement Date"), it shall not cause a breach of the duties and obligations set forth under the Air Force Leases as those duties and obligations relate to the Subleased Premises. These duties and obligations include, but are not limited to, the following which are presented below for purposes of reference and convenience:

    I.    Air Force Lease Condition 10 (Environmental Protection);

    II.    Air Force Lease Condition 17 (Development and Alterations); and

    III.    Air Force Lease Condition 26 (Restrictions on Use of Leased Premises).

    c.    Any use, occupancy or activity of Sublessee on the Subleased Premises which may result in either the receipt by the Sublessor of a notice of default from the Air Force under the Air Force Lease or a notice of default from either the Air Force or the Federal Aviation Administration under any Airport deed, shall be deemed to be a default of Sublessee under this Sublease. The response of the Sublessor following receipt of any such notice of default or breach from either the Air Force under the Air Force Lease or from the Air Force and/or the Federal Aviation Administration under the Airport deed, shall not waive, stay or otherwise mitigate or remedy the default of Sublessee to the Sublessor under this Sublease. Sublessee shall have no right under this Sublease to participate in any proceeding between the Air Force, the Federal Aviation Administration and the Sublessor for the resolution of an alleged default, breach or other dispute of the parties arising under the Air Force Lease and/or the Airport deed except to the extent the Sublessee is alleged to have directly caused such breach or default.

d.    Sublessee acknowledges that the Subleased Premises are, or will be, subject to certain Declaration of Covenants, Conditions and Restrictions to be recorded in the official records of San Bernardino County, California, as amended (the "CC&Rs"). There shall also be included in any assessments the amount of assessments levied pursuant to the CC&Rs and applicable to the Subleased Premises, determined by the ratio that the rentable area of building on the Subleased Premises bears to the total net rentable area of building or buildings which include the Subleased Premises and for which a separate assessment is made pursuant to the CC&Rs.

16.    Insurance.

a.    Comprehensive Commercial General Liability Insurance. Sublessee shall procure and maintain at its own expense, during the term of this Sublease, comprehensive commercial general liability insurance with a company or companies acceptable to Sublessor, of not less than Five Million Dollars ($5,000,000.00) per occurrence, Ten Million Dollars ($10,000,000) in the aggregate, for bodily injury, personal injury, death, loss, or damage to property resulting from the activities conducted by the Sublessee or its officers, employees, servants, volunteers, and agents and independent contractors on the Subleased Premises. Such policies shall provide coverage for bodily injury, personal injury and property damage to the Subleased Premises based upon, involving or arising out of the use, occupancy or maintenance of the Subleased Premises and all areas appurtenant thereto.

b.    Property Casualty Insurance. Sublessee shall keep in full force and effect a policy of insurance against fire, vandalism, malicious mischief, and all other perils as are from time to time included in an "all risk" coverage endorsement insuring Sublessee's improvements constructed on the Subleased Premises, if any, in an amount which is at least one hundred percent (100%) of the full replacement cost.

c.    Workers' Compensation Insurance. Sublessee shall procure and maintain at its own expense, during the Term of this Sublease, workers' compensation insurance, providing coverage as required by the California State Workers' Compensation Law. If any class of employees employed by Sublessee is not protected by the California State Workers' Compensation Law, Sublessee shall provide adequate insurance for the protection of such employees to the satisfaction of the City.

d.    Self-insured. If Sublessee is self-insured, it shall provide certificates or evidence to Sublessor indicating that its insurance meets the levels and requirements as set forth herein above.

e.    Additional Named Insureds. Notwithstanding any inconsistent statement in any required insurance policies or any subsequent endorsements attached thereto, the protection offered by all policies shall bear an endorsement whereby it is provided that, Sublessor, the Authority, the City of Victorville, the City Attorney, and their officers, employees, servants, volunteers, agents and independent contractors are named as Additional Insureds.

17. Proof of Insurance Coverage.

a.     Sublessee shall secure from a good and responsible company or companies authorized to do insurance business in the State of California the policies of insurance required by this Sublease and furnish to Sublessor certificates of said insurance on or before the Sublease Commencement Date.

b.     The certificates of insurance shall bear an endorsement whereby it is provided that, in the event of cancellation or amendment of any required insurance policy for any reason whatsoever, Sublessor shall be notified by mail, postage prepaid, not less than thirty (30) days before the cancellation or amendment is effective.  In the case of non-payment, ten (10) days' advance written notice shall be given.

c.     The certificates of insurance shall bear an endorsement whereby it is provided that the respective insurance policy shall not be terminated or expire without first providing thirty (30) days written notice to Sublessor of such termination or expiration.

d.     All required insurance coverage shall be maintained by Sublessee throughout the term of this Sublease.

18.     Personal Property at Risk of Sublessee. All personal property which Sublessee maintains at the Subleased Premises shall be at the risk of Sublessee only. Except for the grossly negligent, reckless, or unlawful intentional acts of the Sublessor, its agents, employees, guests or invitees, the Sublessor shall not be liable for any damage to any property of Sublessee or for any damage to Sublessee's property in moving the same to or from the Subleased Premises.

19.     Utilities and Other Services.  Sublessee shall contract with and pay the applicable provider, whether the provider is the Sublessor or other party, all charges for water, gas, electricity, lights, heat, sewer or other utilities used or supplied upon or in connection with its use of the Subleased Premises and shall indemnify, defend and hold harmless the Sublessor against any liability arising out of Sublessee's responsibilities under this Section 19.

20.     Alterations, Improvements and Additions. Sublessee shall not make any alterations, improvements or additions to the Subleased Premises without the prior written consent of the Sublessor. Any machinery, equipment or apparatus, which belongs to Sublessee may be removed by Sublessee at any time prior to the expiration of the term of this Sublease, or extension thereof. Any improvements made to the Subleased Premises shall remain on the Subleased Premises. In the case of removal of equipment or fixtures, Sublessee shall restore the area to its original condition.

21.   Airport Development.   The Sublessor, at its sole discretion, shall determine and may from time to time change the routes of surface ingress and egress to and from the Subleased Premises, but agrees to locate such routes as conveniently as may be done for Sublessee, having in mind the reasonable requirements of the Sublessor with respect to the operation of the SCLA.  Notwithstanding the above, if the rerouting of such ingress and egress routes significantly disrupts the normal operations of Sublessee such that it results in material financial detriment to Sublessee, then Sublessee shall have the right to terminate this Sublease.

22.   Signs.   Sublessee shall not post, install, erect or operate any sign, placard, poster or other device on any part of the Subleased Premises without the prior written permission of the Sublessor, which permission shall not be unreasonably withheld.   Sublessor hereby acknowledges that Sublessee's existing signage has received Sublessor's permission.  Such signs as may from time to time be permitted by the Sublessor shall be made, posted, maintained and removed, and repair any damage caused by removal, at Sublessee's own cost and expense. Sublessor shall have the right to remove unauthorized signs at Sublessee's expense.   Sublessee shall be responsible for all costs associated with the purchase and installation of the required Building Standard Suite Signage in accordance with local codes.

23.   Liens.  Sublessee shall not suffer or permit any liens to stand against the Subleased Premises, or any part thereof, by reason of any work, labor, services or materials done for, or supplied to Sublessee or anyone holding the Subleased Premises or any part thereof through or under Sublessee. If any such lien shall at any time be filed against the Subleased Premises, Sublessee shall cause such lien to either be discharged of record sixty (60) days after the date that Sublessee receives notice of the filing. Notwithstanding the above, in any bona fide dispute between Sublessee and any third party concerning work done by the third party on or for the Subleased Premises, and as a result of the dispute the third party files a lien against the Subleased Premises, then, in lieu of obtaining the discharge of the lien within the sixty day period, Sublessee, at its option, may either file suit against the third party, a part of the suit being to judicially negate or remove the lien or Sublessee may file an appropriate bond or other device allowed by law to remove the lien.

24.   Inspection by the Sublessor.   Sublessee shall permit the Sublessor, or its agents, representatives, or employees to enter the Subleased Premises at mutually agreeable, reasonable times for the purpose of inspecting the Subleased Premises to determine whether Sublessee is complying with the terms of this Sublease, for the purpose of doing other lawful acts that may be necessary to protect the Sublessor's interest in the Subleased Premises, or for the purpose of performing the Sublessor's duties under this Sublease. Except in the event of an emergency, the Sublessor shall contact Sublessee, no less than 24 hours prior to the time that Sublessor desires to enter the Subleased Premises to arrange a mutually agreeable time for the inspection.

25.   Damage or Destruction of Subleased Premises. Unless occasioned by the negligence or intentionally unlawful act of Sublessee, if, during the term of this

EXHIBIT B
107

Acknowledgement of Changes to Page   Sublessee  _____   Sublessor  _____

Sublease, any portion of the Subleased Premises shall be damaged by fire or other catastrophic cause, so as to render such portion of the Subleased Premises untenable, the obligations under this Sublease shall be immediately suspended while such portion of the Subleased Premises remains untenable. In the event of such damage, the Sublessee shall give Sublessor notice of such untenable conditions and the Sublessor shall elect in its sole discretion, whether to repair the Subleased Premises or to cancel this Sublease with respect thereto. It shall notify Sublessee in writing of its election within thirty (30) days after such damage. In the event the Sublessor elects to repair the Subleased Premises, the work or repair shall begin promptly and shall be carried on without unnecessary delay. In the event the Sublessor elects not to repair the Subleased Premises or portion thereof, the Sublease shall be deemed canceled as of the date of damage with respect to the applicable portion. Such damage shall not extend the sublease term. In the event that insurance proceeds are received by Sublessee under the property casualty policy required to be carried by Sublessee, and the Sublease is terminated under this Section, the Sublessor shall be entitled to the portion of such proceeds attributable to the fixtures, improvements, and other property which would remain with the Subleased Premises, and Sublessee shall be entitled to the portion of such proceeds attributed to the fixtures and property on the Subleased Premises which would be removed by Sublessee. Notwithstanding anything in this paragraph to the contrary, if the Subleased Premises are rendered inadequate for Sublessee to conduct its normal operations in or upon the Subleased Premises (or such portion of the Subleased Premises which is still tenable), and it is reasonably anticipated that the damages shall not be repaired or otherwise resolved, within sixty (60) days of the date of the accident, then Sublessee, at its sole and exclusive option, may immediately terminate this Sublease. Additionally, irrespective of whether Sublessee remains in possession and occupancy of the Subleased Premises or elects to terminate this Sublease, rent payable under this Sublease shall abate during the period that the Subleased Premises are not totally useable by Sublessee. The abatement shall be pro rata in proportion to the ratio that the amount of space which Sublessee is actually able to occupy and from which it is able to conduct operations bears to the total Subleased Premises. Sublessee shall continue to make all other payments during this period, including taxes.

26.   Assignment and Subletting. Sublessee shall not cause, or permit, by operation of law or otherwise, any assignment, encumbrance or transfer of this Sublease or any estate or interest therein without the prior written consent of the Sublessor, which consent shall not be unreasonably withheld. Sublessee shall not sublet the Subleased Premises or any part thereof without the prior written consent of the Sublessor.   Sublessor hereby acknowledges and consents to 1) the Sublease by Sublessee to The Boeing Company dated as of March 15, 2011, as the same may hereafter be extended; and 2) a Sublease to Southern California Aviation, Inc. and/or Commercial Aviation Services, LLC.   An assignment or subletting shall not relieve Sublessee of any of its obligations or liabilities for the term of this Sublease, both Sublessee and any subsequent assignees and Sublessee will be deemed to be bound hereunder. The Sublessor's consent to any such assignment, transfer or subletting shall not constitute consent to any further assignment, transfer or subletting. This provision is not intended, nor should it be construed, to prevent Sublessee from allowing such independent

Acknowledgement of Changes to Page   Sublessee   _SF_   Sublessor   _____

Sublease, any portion of the Subleased Premises shall be damaged by fire or other catastrophic cause, so as to render such portion of the Subleased Premises untenable, the obligations under this Sublease shall be immediately suspended while such portion of the Subleased Premises remains untenable. In the event of such damage, the Sublessee shall give Sublessor notice of such untenable conditions and the Sublessor shall elect in its sole discretion, whether to repair the Subleased Premises or to cancel this Sublease with respect thereto. It shall notify Sublessee in writing of its election within thirty (30) days after such damage. In the event the Sublessor elects to repair the Subleased Premises, the work or repair shall begin promptly and shall be carried on without unnecessary delay. In the event the Sublessor elects not to repair the Subleased Premises or portion thereof, the Sublease shall be deemed canceled as of the date of damage with respect to the applicable portion. Such damage shall not extend the sublease term. In the event that insurance proceeds are received by Sublessee under the property casualty policy required to be carried by Sublessee, and the Sublease is terminated under this Section, the Sublessor shall be entitled to the portion of such proceeds attributable to the fixtures, improvements, and other property which would remain with the Subleased Premises, and Sublessee shall be entitled to the portion of such proceeds attributed to the fixtures and property on the Subleased Premises which would be removed by Sublessee. Notwithstanding anything in this paragraph to the contrary, if the Subleased Premises are rendered inadequate for Sublessee to conduct its normal operations in or upon the Subleased Premises (or such portion of the Subleased Premises which is still tenable), and it is reasonably anticipated that the damages shall not be repaired or otherwise resolved, within sixty (60) days of the date of the accident, then Sublessee, at its sole and exclusive option, may immediately terminate this Sublease. Additionally, irrespective of whether Sublessee remains in possession and occupancy of the Subleased Premises or elects to terminate this Sublease, rent payable under this Sublease shall abate during the period that the Subleased Premises are not totally useable by Sublessee. The abatement shall be pro rata in proportion to the ratio that the amount of space which Sublessee is actually able to occupy and from which it is able to conduct operations bears to the total Subleased Premises.   Sublessee shall continue to make all other payments during this period, including taxes.

26.   **Assignment and Subletting.**   Sublessee shall not cause, or permit, by operation of law or otherwise, any assignment, encumbrance or transfer of this Sublease or any estate or interest therein without the prior written consent of the Sublessor, which consent shall not be unreasonably withheld.   Sublessee shall not sublet the Subleased Premises or any part thereof without the prior written consent of the Sublessor.   Sublessor hereby acknowledges and consents to 1) the Sublease by Sublessee to The Boeing Company dated as of March 15, 2011, as the same may hereafter be extended; and 2) a Sublease to Southern California Aviation, Inc. and/or Commercial Aviation Services, LLC.   An assignment or subletting shall not relieve Sublessee of any of its obligations or liabilities for the term of this Sublease, both Sublessee and any subsequent assignees and Sublessee will be deemed to be bound hereunder. The Sublessor's consent to any such assignment, transfer or subletting shall not constitute consent to any further assignment, transfer or subletting. This provision is not intended, nor should it be construed, to prevent Sublessee from allowing such independent

EXHIBIT B
109

contractors onto the Subleased Premises who are involved in Sublessee's normal operations on the Subleased Premises (such as repair and maintenance personnel, janitorial personnel and similar). Additionally, this provision should not be construed to prevent subcontractors of Sublessee from conducting their work on the Subleased Premises in conjunction with the normal operations conducted by Sublessee. To the extent that Sublessor must grant its consent for Sublessee's subcontractors to enter onto the Subleased Premises for the above-described purposes, consent is hereby deemed to be granted.

27.   Indemnification.

a.   To the fullest extent permitted by law, Sublessee hereby agrees to defend, indemnify and hold Sublessor, the City of Victorville, the Victor Valley Economic Development Authority and all or any of its employees, directors, agents, and assigns, the City of Victorville and all or any of its employees, directors, agents ("Indemnified Parties"), and assigns harmless against and from any and all claims, actions, suits, proceedings, demands, losses, judgments and costs and expenses, including attorneys' fees, arising from any legal action or proceeding initiated by any individual or entity arising out of, or resulting from the performance of this Sublease, except for any such claim arising out of the negligence or willful misconduct of the Indemnified Parties.

b.   Sublessor shall defend, indemnify and hold harmless Sublessee, its officers, officials, agents, employees and volunteers against and from any and all claims, actions, suits, proceedings, demands, losses, judgments and costs and expenses, including attorneys' fees, arising from any legal action or proceeding initiated by any individual or entity arising out of, or resulting from the performance of this Sublease, except for any such claim arising out of the negligence or willful misconduct of Sublessee and its officers, agents, employees or volunteers.

28.   The Sublessor's Environmental Representations.

a.   Except as otherwise provided in Section 12 hereof, Sublessee shall not be held responsible or deemed liable by the Sublessor for any hazardous environmental condition on the Subleased Premises, which existed prior to Sublessee's occupancy of the Subleased Premises.

b.   Except as provided in Section 12 hereof, the Sublessor represents that to the best of its actual knowledge, the Subleased Premises are free from any violations of law or regulations pertaining to occupational hazards and environmental conditions or Hazardous Materials as defined in Section 29 of this Sublease. In the event that any hazardous environmental conditions exist on the Subleased Premises as of the Sublease Commencement Date which result in a loss to Sublessee and which were caused by Sublessor, the United States Air Force or parties or entities within the control of, or under contract with Sublessor, then the Sublessor shall indemnify, defend and hold Sublessee harmless from any costs, expenses, attorney fees or liabilities relating to any claims of such violations or conditions existing prior to Sublessee's

EXHIBIT B
110

occupancy of the Subleased Premises. Sublessor shall indemnify Sublessee from hazardous environmental conditions or violations caused directly by the Sublessor, its employees, agents or licensees during or subsequent to the term of this Sublease.

        c.    Sublessee shall be solely responsible for obtaining at its cost and expense; any environmental permits required for its operation under this Sublease independent of any existing permits.

29.    <u>Compliance With Environmental Laws.</u>

        a.    The words and phrases set forth below shall have the following definitions:

        i.    "Hazardous Material" means and includes any material that because of its quality, concentration or physical or chemical characteristics, poses a significant present or potential hazard to human health and safety or to the environment if released into the workplace or the environment. Hazardous Materials include hazardous wastes, toxic substances, petroleum products and motor fuels and similar substances and materials, including all substances and materials defined as hazardous or toxic substances or materials under California Health and Safety Code Section 25501(i) and (m) or other similarly applicable state, federal or local law.

        ii.    "Environmental laws" means and includes the various health and safety laws and regulations of state, federal and local agencies pertaining to the manufacture, use, storage, disposal, release, and reporting relating to hazardous materials

        b.    As of the Sublease Commencement Date, Sublessee shall not cause or permit any Hazardous Materials to be used, generated, manufactured, produced, stored, brought upon, or released on, under or about the Subleased Premises, or transported to and from the Subleased Premises, by Sublessee, its agents, employees, contractors, or invitees in violation of any Environmental Law. Sublessee shall indemnify, defend and hold harmless the Sublessor from any damage, cost, expense, liability, fine, or penalty resulting from any unauthorized discharge, emission, spill, storage, release, disposal or use of any hazardous materials by Sublessee, its officers, agents, employees, contractors or invitees or any of them. This obligation of Sublessee shall survive the Termination Date or earlier termination of this Sublease, and shall apply whenever the Sublessor incurs cost or liability arising from any use or activity of Sublessee relating to Hazardous Materials during the Term hereof.

    Sublessor shall indemnify, defend and hold harmless the Subless from any damage, cost, expense, liability, fine, or penalty resulting from any unauthorized discharge, emission, spill, storage, release, disposal or use of any hazardous materials by Sublessor, its officers, agency, employees, contractors or invitees or any of them.

EXHIBIT B
111

This obligation of Sublessor shall survive the Termination Date or earlier termination of this Sublease.

c.    Without limiting the foregoing, if the presence of any hazardous material on, under or about the Subleased Premises caused by Sublessee, its agents, employees, contractors, or invitees results in an unpermitted, unscheduled or unauthorized release or contamination of the Subleased Premises by such Hazardous Material at any time during the Term of this Sublease, then Sublessee shall at its sole cost and expense promptly take all actions necessary to return the Subleased Premises to the condition existing prior to the unpermitted, unscheduled or unauthorized release of any such Hazardous Material to the Subleased Premises.

d.    Sublessee shall immediately notify the Sublessor of the occurrence of any of the following events: (i) receipt by Sublessee of any correspondence or communication from any governmental entity regarding the application of environmental laws to the Subleased Premises or the investigation or enforcement by such governmental entity of any such environmental laws in connection with Sublessee's occupancy or use of the Subleased Premises, and (ii) unpermitted, unscheduled or unauthorized release of any Hazardous Material on the Subleased Premises which may occur at any time during the Term of the Sublease.

e.    To the extent Sublessee may conduct any use or activity on the Subleased Premises which includes the use, handling, transport, or disposal of any Hazardous Material in quantities which exceed the threshold amounts authorized under California Health and Safety Code Section 25503.5, Sublessee shall, at its sole cost and expense, prepare and submit to the City of Victorville for approval, renewal or amendment, as applicable, a Business Plan for the Subleased Premises, as the term "Business Plan" is described under California Health and Safety Code Section 25504.

f.    Notwithstanding any of the foregoing, in the event Sublessee, its agents, employees, contractors, or invitees, fails to use and maintain the Leased Premises in accordance with the provisions of this Section 29, Sublessor and/or the City of Victorville (the "City") shall have the right, but not the obligation, to enter the Subleased Premises and undertake remedial action as necessary in order to ensure that the Subleased Premises are in compliance with all environmental laws. In such event, Sublessee shall reimburse Sublessor and/or the City for all reasonable sums incurred by it for such remediation activities. In such event Sublessor may, in its sole discretion, and not limiting its ability to recover through any other means provided in law or equity, determine to deduct all or a part of such sums due under this section from the Security Deposit.

30.    Surrender of Subleased Premises.    On the Termination Date of this Sublease, Sublessee shall surrender and deliver the Subleased Premises to the Sublessor clean and free of debris in as good condition as it is on the Sublease Commencement Date of this Sublease, excluding reasonable wear and tear.

EXHIBIT B
112

31.   <u>Compliance with Laws</u>. Sublessee shall comply with all applicable Federal, State and local laws, regulations and standards that are or may become applicable to Sublessee's activities on the Subleased Premises. Sublessee agrees to abide by and conform to the SCLA Rules and Regulations, attached hereto as <u>Exhibit B</u>, and incorporated herein by this reference as may be amended from time to time, and to cause its employees, suppliers, shippers, customers, and invitees to so abide and conform. The Sublessor shall have the right, from time to time, to modify, amend and enforce said rules and regulations. In addition, Sublessee agrees to abide by the FAA Rules and Regulations attached hereto as <u>Exhibit C</u> and incorporated herein by this reference as may be amended from time to time, and to cause its employees, suppliers, shippers, customers, and invitees to so abide and conform. The Sublessor shall not be responsible to Sublessee for the noncompliance of said rules by other tenants, their agents, employees and invitees. The judgment of any court of competent jurisdiction, or the admission of Sublessee in a proceeding brought against Sublessee by any government entity, that Sublessee has violated any such statute, ordinance, regulation, or requirement (except where such admission may be the basis for settlement) shall be conclusive as between the Sublessor and Sublessee and shall constitute grounds for declaration of default, breach, forfeiture, and termination of this Sublease by the Sublessor.

32.   <u>Defaults</u>. In the event Sublessee should default in the performance of any covenant or condition of this Sublease (excluding the payment of monthly rent or other amounts due hereunder) and such default is not cured or removed within thirty (30) days after service of written notice upon Sublessee of such default in the performance of any covenants and conditions; then in such event, the Sublessor shall have the right and option to terminate this Sublease, to re-enter the Subleased Premises, to evict Sublessee and to remove Sublessee's possessions, all without being deemed guilty of any trespass, and without prejudice to any claim for arrears of rent or breach of covenant. Notwithstanding the foregoing, if Sublessee, prior to the expiration of such thirty (30) day period for default diligently commences to cure such default but is unable to do so within the thirty (30) day period, then such period shall be extended for an additional thirty (30) days provided Sublessee continues to make a diligent effort to cure the default. Any statutory notice required as part of any eviction action or similar type of proceeding may be included with any notice of default given pursuant to this Section and the Sublessor need not declare a default and have such default remain uncured prior to delivery of such statutory notice. Failure to pay Monthly Base Rent or any other amounts when due shall be deemed a default under this provision. Sublessee shall cure such default within ten (10) days after service of written notice.

33.   <u>Remedies of the Sublessor</u>. In the event of any breach of the Sublease by Sublessee and the cure periods described in Section 32 hereof have expired, the Sublessor may at any time thereafter, with or without notice or demand and without limiting the Sublessor in the exercise of any other right or remedy, which the Sublessor may have by reason of such breach:

EXHIBIT B
113

a.     terminate Sublessee's right to possession of the Subleased Premises by any lawful means, in which case this Sublease shall terminate and Sublessee shall immediately surrender possession of the Subleased Premises to the Sublessor. In such event, the Sublessor shall be entitled to recover from Sublessee all damages incurred by the Sublessor by reason of Sublessee's default, including, but not limited to the cost of repairing or restoring damages to the Subleased Premises caused by Sublessee, the cost or removal of Sublessee's improvements, fixtures and other contents of the Subleased Premises, costs associated with past or future brokerage commissions and marketing expenses and the other costs payable by the Sublessor in connection with the recovery of possession of the Subleased Premises, including reasonable attorneys' fees as well as (a) the worth at the time of award by the court having jurisdiction thereof of the unpaid rent which had been earned at the time of termination, and (b) the worth at the time of award by the court having jurisdiction thereof of the amount by which the unpaid rent for the balance of the Term after the time of such award may exceed the amount of such rental loss for the same period that Sublessee proves could be reasonably avoided; or

b.     pursue any other remedy now or hereafter available to the Sublessor under the laws or judicial decisions of the State of California.

34.     <u>Default by the Sublessor</u>.  In the event Sublessor should default in the performance of any covenant or condition of this Sublease and such default is not cured or removed within thirty (30) days after service of written notice of default upon Sublessor, then in any such event, Sublessee shall have the right and option to terminate this Sublease and shall have the right and option to pursue any remedy available to Sublessee under the laws of the State of California. If Sublessor, prior to the expiration of such thirty (30) day period for a default, diligently commences to cure such default, but is unable to do so within the thirty (30) day period, then such period shall be extended for an additional thirty (30) days provided Sublessor continues to make a diligent effort to cure the default. In event of uncured default Sublessee shall have all remedies available at law or in equity for any default or breach of this Sublease by the Sublessor.

35.     <u>Force Majeure-Unavoidable Delays</u>.  If the performance of any act required by this Sublease to be performed by either the Sublessor or Sublessee is prevented or delayed by reason of an act of God, strike, lockout, labor troubles, inability to secure materials, unreasonably restrictive governmental laws or regulations, or any other cause except financial inability that is not the fault of the party required to perform the act, the time for performance of the act will be extended for a period equivalent to the period of delay, and performance of the act during the period of delay will be excused. However, nothing contained in this Section shall excuse the prompt payment of rent by Sublessee as required by this Sublease or the performance of any act rendered difficult solely because of the financial condition of the party required to perform the act.

36.   Notices.  Any and all notices or demands required or permitted to be given hereunder must be personally delivered (including by nationally recognized overnight courier) or be mailed by registered or certified mail, return receipt requested, addressed as follows:

To the Sublessor:     Southern California Logistics Airport Authority
                      18374 Phantom
                      Victorville, CA 92392
                      Attn: Executive Director

With copies to:       Green, de Bortnowsky & Quintanilla, LLP
                      23801 Calabasas Road, Suite 1015
                      Calabasas, CA 91302
                      Attn: Andre de Bortnowsky

To Sublessee:         Pratt & Whitney Line Maintenance Services, Inc. *SF*
                      ~~13610 Aerospace Drive~~ *18438 Readiness Street*
                      Victorville, CA 92394
                      Attn:  General Manager

with a copy to:       United Technologies Realty, Inc.
                      Four Farm Springs Road
                      Farmington, CT 06032
                      Attn:  Manager, Aerospace Real Estate

or at such other address or addresses that either party may hereafter designate in writing to the other. Any notice or demand which is mailed by registered or certified mail or sent by overnight courier as provided above shall be deemed to be effective and given for all purposes three (3) business days following the time of deposit thereof in the United States mail.

37.   Miscellaneous.

a.     One or more waivers of any provision of this Sublease by the Sublessor shall not be construed as a waiver of a subsequent breach of the same provision and the Sublessor's consent or approval shall not be deemed to waive or render unnecessary the Sublessor's consent or approval to or of any subsequent or similar act by Sublessee.

b.     If either party to this Sublease shall bring any action for any relief against the other, declaratory or otherwise, to enforce the terms hereof or to declare rights here under (collectively, an Action), the losing party shall pay to the prevailing party attorneys' fees and costs incurred in bringing and prosecuting such Action and/or enforcing any judgment, order, ruling, or award (collectively, a Decision) granted therein, all of which shall be deemed to have accrued on the commencement of such Action and shall be paid whether such Action is prosecuted to a Decision.  Any Decision entered in

such Action shall contain a specific provision providing for the recovery of attorneys' fees and costs incurred in enforcing such Decision. The court may fix the amount of reasonable attorneys' fees and costs on the request of either party. For the purposes of this paragraph, attorneys' fees shall include, without limitation, fees incurred in the following: (1) post-judgment motions and collection actions; (2) contempt proceedings; (3) garnishment, levy, and debtor and third party examinations; (4) discovery; and (5) bankruptcy litigation. "Prevailing party" within the meaning of this paragraph includes, without limitation, a party who agrees to dismiss an Action on the other party's payment of the sums allegedly due or performance of the covenants allegedly breach, or who obtains substantially the relief sought by it. Nothing contained in the Section shall be interpreted to mean that Sublessor has agreed to arbitrate any dispute which may arise hereunder.

c.      This Sublease can be modified, supplemented, amended or rescinded only by a writing expressly referring to this Sublease and signed by Sublessor and Sublessee.

d.      If any term of this Sublease or any application thereof shall be invalid or unenforceable, the remainder of this Sublease and any other application of such term shall not be affected thereby. Unless otherwise expressly provided herein, any approval or consent of Sublessor required hereunder shall not be unreasonably withheld or delayed. This Sublease shall be binding upon and inure to the benefit of and be enforceable by the respective successors of the parties hereto. The heading in the table of contents of this Sublease are for purposes of reference only and shall not limit or define the meaning hereof.

e.      This Sublease contains the entire understanding and agreement of the parties, supersedes all prior understandings and agreements, and cannot be changed orally. This Sublease shall be construed in accordance with the laws of the State of California. Time is of the essence.

f.      Any conflict between the printed provisions, exhibits, or addenda of this Sublease and the typewritten or handwritten provisions, if any, shall be controlled by the typewritten or handwritten provisions provided such typewritten or handwritten provisions are initialized by both parties.

g.      This Sublease shall be of no force and effect unless executed by both parties.

h.      This Sublease may be executed by the parties in counterparts, and when executed by each of the parties, each counterpart shall be deemed to be a part of the same instrument.

[END OF THIS PAGE]

IN WITNESS WHEREOF, the parties have executed this Sublease Agreement as of the day and year first written above.

SOUTHERN CALIFORNIA LOGISTICS AIRPORT AUTHORITY

Signature: _____ 7-19-11

Name and Title: Ryan McCutchon   Date
Chairman, SCLAA Board

ATTEST:

Signature: Marci Wolters   7-19-11

Deputy City Clerk   Date

PRATT & WHITNEY LINE MAINTENANCE SERVICES, INC.

Signature: _____

Stephen Forino, President   Date
Name and Title: United Technologies Realty, Inc.
Authorized agent

APPROVED AS TO STANDARD FORM:

Signature: _____ Signed in Counterpart _____
Authority Legal Counsel   Date

RISK MANAGER
CHUCK BUQUET
Signed in Counterpart

Signature: _____
Date

\SCAA\0004A\DOC\115-4 082111.docx

EXHIBIT B
117

IN WITNESS WHEREOF, the parties have executed this Sublease Agreement as of the day and year first written above.

SOUTHERN CALIFORNIA LOGISTICS AIRPORT AUTHORITY

Signature: _____Signed In Counterpart_____

Name and Title:_____

ATTEST:

Signature: _____Signed In Counterpart_____
Date

PRATT & WHITNEY LINE MAINTENANCE SERVICES, INC.

Signature: _____Signed In Counterpart_____
Date

Name and Title:_____

APPROVED AS TO STANDARD FORM:

Signature: _____
Authority Legal Counsel                    Date

RISK MANAGER
CHUCK BUQUET

Signature: _____    7/12/11
Date

\SCAA\0004A\DOC\115-4 082111.docx

EXHIBIT B
118

**EXHIBIT A**

**DESCRIPTION OF SUBLEASED PREMISES**

EXHIBIT B
119



EXHIBIT B
120

**EXHIBIT B**

**SCLAA RULES AND REGULATIONS**

EXHIBIT B
121

## SOUTHERN CALIFORNIA LOGISTICS AIRPORT RULES AND REGULATIONS

RULES AND REGULATIONS FOR THE USERS OF SOUTHERN CALIFORNIA LOGISTICS AIRPORT; ESTABLISHING FEES FOR THE VARIOUS USES; DEFINING TERMS; PROHIBITING OR LIMITING CERTAIN ACTIVITIES; FIXING PENALTIES FOR VIOLATIONS; AND PROVIDING FOR AMENDMENTS TO THESE RULES AND REGULATIONS AS MAY BE NEEDED FROM TIME TO TIME

SECTION 1. SHORT TITLE:

1.1    These Rules and Regulations shall be referred to as the Southern California Logistics Airport (SCLA) Rules and Regulations. It may be amended by a majority vote by the Board of the Southern California Logistics Airport Authority (SCLAA).

SECTION 2. APPLICABILITY:

2.1    These Rules and Regulations apply equally to every Airport User. The Airport Operating Manual or Specifications, as applicable, adopted in accordance with FAR Part 139, and the Airport Policies and Procedures Manual are hereby made by reference a part of these Rules and Regulations.

SECTION 3. RESPONSIBILITIES:

3.1    Management: It shall be the responsibility of the Airport Director to fairly and impartially administer these Rules and Regulations.

3.2    Users: It shall be the responsibility of every Airport User, pilot or other, to become familiar with the SCLA Rules and Regulations and to obey those Rules and Regulations. Current copies of these Rules and Regulations will be maintained reflecting any amendments and will be posted at the SCLA Administrative Office and at Million Air. Additional copies will be provided by the SCLA Airport Director through the SCLA Administrative Office to any Airport User who requests such copy.

SECTION 4. DEFINITIONS:

For the purposes of these Rules and Regulations, the following definitions and meanings shall apply unless otherwise specified:

4.1    "Air Operations Area" or "AOA" means the area upon which aircraft are able to operate and includes the runways, taxiways, taxi lanes, apron area, and the vehicle and personnel gates that lead to these areas.

4.2    "Air Carrier" means any person who undertakes directly, by lease, or other arrangement, to engage in air transportation of persons or things. An "Air Carrier" operates in various categories, under authority or certification by the FAA and holds a current FAA certificate to transport air passengers or property for hire.

SOUTHERN CALIFORNIA LOGISTICS AIRPORT RULES AND REGULATIONS

4.3     "Aircraft" means a device that is used, or is intended to be used, for flight in the air. "Aircraft" includes airplanes, helicopters and gliders, and lighter than air devices such as blimps or balloons, but does not include hang gliders.

4.4     "Aircraft Owner" shall mean a Person who holds title to an Aircraft.

4.5     "Aircraft Operator" shall mean the Person who is operating or controlling an Aircraft while said Aircraft is on Airport property.

4.6     "Aircraft Storage" shall have the same meaning as "Stored Aircraft".

4.7     "Airport" means the SCLA, its buildings and facilities, all lands owned and or controlled by the SCLAA contiguous to the airport, including airspace above such land and the designated approaches thereto.

4.8     "Airport Director" means that person so appointed by the SCLAA or his designated representative.

4.9     "Airport Master Security Program" or "Airport Security Program" means the Security Program, which is the responsibility of an Airport Operator pursuant to TSA 1542.

4.10    "Airport Operations and Security Department" or means the Airport Operations and Security Department of the Southern California Logistics Airport.

4.11    "Airport Security Areas" or "Secure Areas" means Air Operations Areas, roadways, and common Air Carrier areas within terminal facilities (i.e. baggage makeup areas), excluding exclusive leasehold structural areas, to which public access is limited or denied under Airport Master Security Program.

4.12    "Airport Security Coordinator" or "ASC" means an individual appointed by the Airport Director, charged with the responsibility to implement and enforce the Airport Master Security Program, employed by the City of Victorville and under the direction of the Airport Director, or the Airport Security Coordinator's designated representative.

4.13    "Airport Tenant" means an individual, partnership, corporation or other business entity, and its agents, employees, representatives, and subtenants which occupies or controls all or part of Airport areas, buildings or other facilities which they lease from the Southern California Logistics Airport Authority.

EXHIBIT B
123

SOUTHERN CALIFORNIA LOGISTICS AIRPORT RULES AND REGULATIONS

4.14 "Airport Tenant Security Program" shall have the same meaning as set forth in TSA1542.113, entitled "Airport Tenant Security Programs."

4.15 "Airport User" means any Person who uses the Southern California Logistics Airport, including but not limited to, Airport Tenants and subtenants, Fixed Base Operators, Air Carriers, Aircraft Owners, Aircraft Operators, Commercial Operators, passengers, and their employees, agents, representatives, agents, successors and assigns.

4.16 "Authorized Person" means an individual authorized with a Personnel Identification Badge issued by the Airport Security Coordinator, or his designated representative, to have unescorted access authority to Airport Security Areas.

4.17 "Air Traffic" means Aircraft operating in the air or on an Airport surface, exclusive of loading ramps or parking areas.

4.18 "Air Traffic Clearance" means an authorization issued by Air Traffic Control personnel for an Aircraft to proceed under specified traffic conditions within controlled airspace.

4.19 "Air Traffic Control" or "ATC" shall mean the Air Traffic Control of the Southern California Logistics Airport.

4.20 "Airworthy Condition" means a condition wherein an Aircraft can take flight under its own power. See definition of "Non-Airworthy Aircraft" below.

4.21 "Autorotation" means a rotorcraft flights condition in which the lifting rotor is driven entirely by action of the air when the rotorcraft (helicopter) is in motion.

4.22 "Balloon" means a lighter-than air aircraft, which is not engine-driven.

4.23 "Based Aircraft," means Aircraft that are parked on the Airport for thirty (30) days or longer and are not part of an aircraft storage program.

4.24 "Ceiling" means the height above the earth's surface of the lowest layer of clouds or obscuring phenomena, that is reported as "broken," "overcast," or "obscuration," and is not classified "thin" or "partial".

4.25 "City" means the City of Victorville.

4.26 "Commercial Operator" means any Person who, for compensation or hire, engages in the carriage of persons, property, or mail in air commerce, or engages in other aerial activity such as flight instruction, aerial photography, fire fighting, agricultural aviation activities, or traffic surveillance.

SOUTHERN CALIFORNIA LOGISTICS AIRPORT RULES AND REGULATIONS

4.27   "Criminal History Records Check (CHRC)" means a fingerprint-based criminal history records check as described in 49 CFR § 1542.

4.28   "Commercial Use" means use of SCLA for revenue-producing commercial activities.

4.29   "Dismantled Aircraft" means an Aircraft which has been disassembled to a point where it is not reasonable to assume that said Aircraft can be reassembled and placed in an Airworthy Condition.

4.30   "Driving Permit" means a permit issued by the Airport Director or his designee in order for an individual to operate a Vehicle on the Airport.

4.31   "Escort" means an Authorized Person or Authorized Persons accompanying, monitoring, directing and controlling the actions of an individual or individuals who are not displaying Personnel Identification Badges, and/or who are not otherwise Authorized Persons, within Airport Security Areas. The Authorized Person(s) performing an Escort must be displaying valid Personnel Identification Badges, must be accompanying the individual or individuals for performance of direct job duties and must ensure that those individuals who are being escorted remain within sight and sound at all times.

4.32   "Executive Director" means the Executive Director of the Southern California Logistics Airport Authority.

4.33   "FAA" means the Federal Aviation Administration of the United States Government or any federal agencies succeeding to its jurisdiction.

4.34   "Fixed Base Operator" means any Person who rents, leases, or owns facilities located on SCLA, who by virtue of his specific type of aviation or aviation related activity, requires the occupancy of a site with contiguous aircraft apron and direct access to the Aircraft Operation Area, and who engages in a business activity providing aviation sales or service, including but not limited to any of the following:

    1. Selling and/or servicing new and used Aircraft and component parts;

    2. Aircraft maintenance and repairs;

    3. Sales and/or repair of avionics;

    4. Aviation training (including ground or flight instruction);

    5. Aerial photography;

SOUTHERN CALIFORNIA LOGISTICS AIRPORT RULES AND REGULATIONS

      6. Air ambulance service;

      7. Aircraft agricultural operations (crop dusting, spraying, or the application of seed, fertilizers, pesticides, defoliants, etc);

      8. Aircraft rental, charter, leasing;

      9. Aircraft Storage;

     10. Fuel and oil sales and servicing; and

     11. Aircraft servicing or ground handling including cargo handling, baggage handling, lavatory service, water service, air starts, ground power, or other elements related to aircraft handling.

4.35 "Flight Visibility" means the average forward horizontal distance from the cockpit of an Aircraft in flight, at which prominent unlighted objects may be seen and identified by day, and prominent lighted objects may be seen and identified by night.

4.36 "Ground Visibility" means prevailing horizontal visibility near the earth's surface.

4.37 "Helicopter" means a rotor driven aircraft (rotorcraft) that, for its horizontal motion, depends primarily on its engine-driven rotors.

4.38 "IFR" means Instrument Flight Rules covering meteorological conditions below the minimums for flight under visual (VFR) conditions.

4.39 "Individual" means a natural person.

4.40 "Maintenance" means inspection, overhaul, repair, preservation, and the replacement of parts, including preventive maintenance.

4.41 "Movement Area" means the runways, taxiways, and other areas of the Airport, which are utilized for taxiing, takeoff, and landing of Aircraft. The Movement Area does not include parking and loading ramps. Entry into the Movement Area requires ATC approval.

4.42 "Night" means the time between the end of evening civil twilight and the beginning of morning civil twilight as published in the American Air Almanac, converted to local time.

EXHIBIT B
126

SOUTHERN CALIFORNIA LOGISTICS AIRPORT RULES AND REGULATIONS

4.43   "Non-Airworthy Condition" means when an Aircraft cannot take flight under its own power as a result of being in disrepair or in the process of being disassembled.

4.44   "Notice of Violation" means a written notification of non-compliance with these Rules and Regulations, issued by the Airport Director or his designated representative.

4.45   "Person" means an individual, firm, partnership, corporation, company, association, joint-stock association, or governmental entity, and includes a trustee, receiver, assignee, or similar representative of any of them.

4.46   "Personnel Identification Badge" means a Personnel Identification Badge issued to an individual by the Southern California Logistics Airport for purposes of granting that individual unescorted access authority to the Restricted Area.

4.47   "Ramp" means an improved surfaced area reserved exclusively for the parking and taxiing of Aircraft.

4.48   "Restricted Area" means all areas or facilities accessible only by Authorized Persons or Persons under Escort, and including all Ramp areas and the Aircraft Operations Area (AOA).

4.49   "Roadway" means that portion of an area improved or designed or ordinarily used for vehicular travel. A roadway on the Airport Operations Area is called a vehicle service road ("VSR").

4.50   "Runway" means an improved surfaced area reserved exclusively for the landing and taking off of Aircraft.

4.51   "Scheduled Air Carrier" means any Person providing scheduled passenger or cargo service from the Airport in accordance with a published schedule and having at least one scheduled departure per day, or no less than five scheduled departures per week, and operating under authority of the Federal Aviation Administration and the Airport.

4.52   "Security Perimeter" means the portion of the Airport that is enclosed by fencing, walls or other barriers, and to which access is controlled through designated entry points.

4.53   "SCLA" means Southern California Logistics Airport.

4.54   "SCLAA" means Southern California Logistics Airport Authority.

EXHIBIT B

SOUTHERN CALIFORNIA LOGISTICS AIRPORT RULES AND REGULATIONS

4.55   "Security Devices" means equipment installed or placed by or under the direction of the Southern California Logistics Airport Authority, or designated representative, to monitor or control entrances to and exits from Airport Security Areas. "Security Devices" include, but are not limited to, bells, sirens, communication equipment, locks and corresponding keys, emergency exits, electronic access control and other security equipment.

4.56   "Security Identification Display Area" or "SIDA" shall have the same meaning as set forth in TSA1542.205. Before being granted unescorted access to the SIDA, individuals must undergo a Criminal History Record Check and employment history verification.

4.57   "Security Screening Area" means an access point, including entrances and exits, to the Airport Security Areas, Secure Areas and the Sterile Areas, where Vehicles, equipment, individuals, and belongings are inspected prior to entrance.

4.58   "Sterile Area" means an area to which access is controlled by the inspection of individuals and property in accordance with FAA and TSA requirements.

4.59   "Stirling Airport International" or "SAI" means SCLA's development partner.

4.60   "Stored Aircraft" means aircraft that are parked at/on airport property and are part of an aircraft storage program.

4.61   "Taxiway" means an improved surfaced area reserved exclusively for use by aircraft to proceed to and from ramp and runway areas.

4.62   "Traffic Pattern" means the traffic flow that is prescribed for aircraft landing at or taking off from SCLA.

4.63   "Unnecessary Noise" means any engine noise that is greater than the level produced when the engines are at idle except when required for taxiing of the aircraft, takeoff or landings.

4.64   "Vehicle" means every device in, upon or which any individual or property is or may be transported or drawn upon a roadway, excepting devices moved by human power or used exclusively upon stationary rails or tracks. A bicycle shall be considered a vehicle under all portions of these Rules and Regulations, which govern right-of-way.

4.65   "Vehicle Owner" means a person who holds the legal title of a vehicle.

4.66   "Vehicle Service Road" or "VSR". (See Roadway.)

4.67   "VVEDA" means the Victor Valley Economic Development Authority.

SOUTHERN CALIFORNIA LOGISTICS AIRPORT RULES AND REGULATIONS

4.68   "VFR" means Visual Flight Rules covering meteorological conditions, above those requiring flight under IFR conditions.

4.69   "Word Construction": The following construction applies throughout these Rules and Regulations:

      1.   Words importing the singular include the plural;

      2.   Words importing the plural include the singular; and,

      3.   Words importing the masculine gender include the feminine and the neutral gender.

**SECTION 5. NECESSITY:**
5.1   These Rules & Regulations are enacted to protect the health, safety and peace, and to promote the welfare and convenience of the general public using SCLA, or affected by activities related to the Airport by providing for the orderly conduct of activities on, or related to, the Airport.  The use of the Airport or any of its facilities in any manner shall create an obligation on the part of the Airport User to obey all of the rules and regulations herein provided.

**SECTION 6. BASED AIRCRAFT:**
6.1   Any Person desiring to base an Aircraft at SCLA shall register such Aircraft at the Airport Operations and Security Department as soon as possible but not later than 24 hours after the arrival of the Aircraft.  If a change in ownership occurs while the Aircraft is based at the Airport, the new Aircraft Owner shall re-register the Aircraft with the Airport Operations and Security Department, again, no later than 24 hours after the change in ownership occurred.

6.2   Except as specifically set forth in an Airport land or facility sublease, Aircraft in a Non-Airworthy Condition shall not be permitted to remain on the Airport in excess of five (5) days without the express prior written permission of the Airport Director.  Such Aircraft shall be removed from the Airport or stored at the Aircraft Owner's expense.

**SECTION 7. AIRCRAFT STORAGE AND PARKING:**
7.1   Aircraft shall only be stored or parked at places as set forth in such Person's sublease or as may be authorized by the Airport Director, and such storage or parking shall be at the sole risk of the Aircraft Owner and/or Aircraft Operator, and without any responsibility to SCLAA, VVEDA or Stirling Airport International, or any of their officers, employees, agents or representatives, for any loss of, or damage to the Aircraft while so stored or parked.  The Aircraft Owner and/or the Aircraft Operator shall be responsible for the tying-down and/or securing of his Aircraft.  The Aircraft Owner and/or Aircraft Operator shall likewise be responsible for any liability arising from or caused by his

EXHIBIT B
129

SOUTHERN CALIFORNIA LOGISTICS AIRPORT RULES AND REGULATIONS

Aircraft or his activities.  All Airport Tenants desiring to store Aircraft at SCLA must notify the Airport Director in writing prior to the Aircraft arriving at SCLA.

SECTION 8. COMMERCIAL ACTIVITY:
8.1   No Person shall utilize SCLA for any revenue-producing commercial activities without the express written permission of SCLAA or its designated representative, and obtaining a City of Victorville Business License for such activities, and paying the fees and charges established for such use or license.

SECTION 9. AIRPORT FEES:
9.1   Funding for Airport operations and capital improvements is derived through various types or classes of Airport User Fees.  Airport User fees are specifically established to compensate the Airport for the use, maintenance and repair of Airport facilities, as well as to minimize the need for on-going general taxpayer support.

9.2   A schedule of rates and charges for the use of the Airport and its facilities may be found as Attachment A to these Rules and Regulations.

9.3   Any Aircraft Owner or Aircraft Operator who fails to pay any fee duly charged for Aircraft owned or controlled by him shall have such Aircraft subject to impounding until the fees are paid, along with any impound fees, or until the Aircraft is sold for charges.

SECTION 10. HOURS OF OPERATION:
10.1  SCLA shall be open for public use at all hours of the day and night, subject to any restrictions imposed by the Airport Director due to inclement weather, condition of the landing area, presentation of special events, construction or repair activities, or similar causes.  The control tower is open 24 hours a day, 7 days a week.  The Airport is attended from 6:00 A.M. to 10:00 P.M. daily by Million Air.  Services may be obtained from Million Air during said hours at telephone number (760) 246-7794 or UNICOM (122.85 MHz).

SECTION 11. UNATTENDED AIRCRAFT:
11.1  No Aircraft shall be left unattended on the Airport unless properly secured or within a hangar.  Aircraft Owners and/or Aircraft Operators of Aircraft left so unattended shall be liable for damage to other Aircraft or property resulting from the failure to adequately secure or tie down the Aircraft.

SECTION 12. MAINTENANCE:
12.1  Unless otherwise authorized by the Airport Director, or specified as a permitted use in an Airport facility or land sublease, no Aircraft or Vehicle maintenance, other than that which is required to remove damaged Aircraft from the Runway or Taxway(s), or that which is necessary to replace a flat tire, shall be

SOUTHERN CALIFORNIA LOGISTICS AIRPORT RULES AND REGULATIONS

performed at SCLA except in areas specifically designated by the Airport Director for that purpose.

SECTION 13. EQUIPMENT REQUIREMENTS:

13.1   Every Aircraft using SCLA shall be equipped with a fully functional, two-way radio, except when operating into or from the Airport under an FAA waiver for radio maintenance. The ATC frequency is 118.35 MHz and the ground control frequency is 124.45 MHz. Weather and traffic advisories are broadcast on 109.40 MHz. No fixed-wing Aircraft equipped with a tailskid shall operate on any paved surface of SCLA.

SECTION 14. ACCIDENTS:

14.1   Every Person involved in, or witnessing an Aircraft operating accident on the Airport shall report promptly the details of such accident to the Airport Director, ATC, or FAA.

14.2   In addition, the Aircraft Owner and/or the Aircraft Operator, including pilot, shall report fully to the California Division of Aeronautics the details on any accident in which there is death or injury, or in which damage to the property of others exceeds $400.00.

14.3   The Aircraft Owner and/or the Aircraft Operator of an Aircraft which is damaged or wrecked in an accident shall be responsible for the prompt removal of the Aircraft as directed by the Airport Director.

14.4   Where the Aircraft Owner and/or Aircraft Operator of an Aircraft which is damaged or wrecked in an accident is unable to arrange for removal of such disabled or wrecked Aircraft, the Airport Director shall have the authority to move, or arrange the removal of, the Aircraft when released (if applicable) by the FAA or the National Transportation Safety Board (NTSB).

14.5   No liability shall be incurred by the SCLAA, SAI, VVEDA, the Airport Director or any of their officers, employees, agents, successors and assigns, for damage aggravated by, or resulting from, removal of an Aircraft pursuant to Section 14.4 of these Rules and Regulations.

SECTION 15. NOISE:

15.1   No Person shall operate any Aircraft in flight or on the ground in such a manner as to cause Unnecessary Noise as determined by applicable Federal or State or local laws and regulations.

SECTION 16. RESTRICTED AREAS:

16.1   Restricted Areas include those areas leased to the Army National Training Center, Advanced Unmanned Systems-Concept Exploration, Southern California Aviation, Victorville Aerospace LLC, Army Reserve, or other area that has direct access to the AOA. No Person shall enter any Restricted Area

EXHIBIT B

SOUTHERN CALIFORNIA LOGISTICS AIRPORT RULES AND REGULATIONS

except (a) employees or invitees of the leaseholder, (b) Persons duly authorized by the Airport Director, including, but not limited to, Authorized Persons who have received Personnel Identification Badges, or (c) security or fire-fighting personnel.

16.2   Every Person who has access to a restricted area shall close and lock the door, gate or other device immediately after it has been used unless it is under surveillance of a Person who is responsible for controlling entry at that access point.

16.3   Every Airport Tenant whose premises have total or limited access to any Restricted Areas shall prevent access to the Restricted Areas by Persons who are not authorized to have such access.

16.4   The Airport Director's staff is authorized to close and lock any door, gate or other device permitting access to a Restricted Area that is found open or unlocked and unattended.

16.5   Every Person to whom a key, code or access device has been issued by the Airport Security Director, or his designated staff, shall use the key, code or access device to enter a Restricted Area only in accordance with any conditions of issuance and only at Restricted Area access points.

16.6   Except where authorized by the Airport Director and subject to any conditions of issuance, no Person shall:

1.   Loan or give to another Person a key, code or access device issued to him; or

2.   Have possession of, or use for any purpose, a key, code or access device that was issued to him by a Person not having authority to do so.

SECTION 17.  ANIMALS:

17.1   No Person shall willfully and knowingly allow or permit any animal owned, possessed, or harbored by him to enter the Airport unless the animal is leashed or restricted in such manner as to be under control, or is in a shipping container, or is otherwise under physical restraint, nor shall any Person allow or permit such animal except "special assistance animals" (i.e. guide dog) to enter any Airport building without the approval of the Airport Director.

SECTION 18.  ACCESS TO RUNWAYS AND TAXIWAYS:

18.1   No Person shall enter upon any Runway or Taxiway, or the movement area as defined by FAA, without the express consent of the Air Traffic Control Tower representative.

Pg.11 of 38

EXHIBIT B
132

SOUTHERN CALIFORNIA LOGISTICS AIRPORT RULES AND REGULATIONS

SECTION 19. STARTING ENGINES:
19.1  No Person shall start any Aircraft engine at SCLA:

   1. Unless a competent operator is at the controls;

   2. Unless the Aircraft is equipped with adequate brakes fully applied or
      the wheels are securely blocked with blocks or chocks that can be
      removed safely (Skid equipped helicopters do not have brakes or
      chocks);

   3. When the Aircraft is in such a position that the propeller slipstream
      or jet blast can cause damage to, or interfere with the operation of,
      other Aircraft, Vehicles, mobile equipment, hangars, shops, other
      buildings, or can cause injury to passengers, spectators, or other
      personnel; and

   4. When the Aircraft is within 50 feet of any building without prior
      written consent.

SECTION 20. ENGINE RUN-UPS:
20.1  No Person shall conduct an aircraft engine run-up beyond idle anywhere on
      the Airport other than in areas designated by the Airport Director (with the
      exception of helicopters, which routinely operate with engines beyond idle as
      part of normal operations).

20.2  Persons who want to conduct an engine run-up beyond idle shall first call
      ATC on the ground control frequency, 124.45 MHz, and request clearance to
      one of the two engine run-up areas. ATC will advise the Airport User, given
      the current wind direction, to proceed to one of two designated engine run-up
      areas.

20.3  ATC will make the final determination of which engine run-up area should
      be used.

20.4  The Person requesting the engine run-up beyond idle will conduct the
      engine run-up in the area designated by ATC and he shall exercise the
      necessary caution to ensure no damage is created by the engine run-up.

SECTION 21. TAXIING:
21.1  Only those personnel that have training and are qualified to taxi a particular
      type of Aircraft are permitted to taxi Aircraft at SCLA.

21.2  No Person shall taxi any Aircraft into, out of, or within any hangar or other
      building on or adjacent to the Airport.

21.3  No Person shall taxi any Aircraft across the double yellow lines on the edge of
      Taxiways and the apron.

SOUTHERN CALIFORNIA LOGISTICS AIRPORT RULES AND REGULATIONS

21.4 Nor shall any Person move any Aircraft under its own power on the Airport unless that Person is in full control of such aircraft, and has assured himself that there is no danger of collision with other Aircraft, Vehicles, equipment, buildings, or other obstacles. Aircraft shall be taxied at a safe speed.

SECTION 22. DUMPING REFUSE:

22.1 No Person shall place, deposit, or dump any garbage, cans, bottles, papers, ashes, sewage, carcass of any dead animal, offal, trash rubbish, debris or any other refuse in any location on the Airport except in containers designed for such purposes.

SECTION 23. FIREARMS:

23.1 No Person shall shoot any projectile from a firearm or other device, into, on, or across any portion of the Airport, nor have in his possession, or under his control, any firearm which is not unloaded and securely wrapped and boxed for shipment, or explosive or explosive device; provided,

23.2 However, that this Section does not apply to peace officers, military personnel, or Airport security guards who are acting in the performance of their duties as such. Firearms on Airport property are pre-coordinated with ASCs when possible.

SECTION 24. TRAFFIC PATTERN:

24.1 Every Aircraft before landing and after takeoff shall be flown as directed by ATC.

SECTION 25. TAKE-OFFS AND LANDINGS:

25.1 No aeronautical activity shall be conducted at SCLA except in conformance with current Federal Aviation Regulations, State of California law and regulations, and these Rules and Regulations.

25.2 All initial takeoffs shall commence at the end of the Runway unless cleared by the ATC Tower.

25.3 Due to the complex mix of Aircraft that utilize SCLA, there is need to limit those type of aircraft and aerial activities that represent a potential hazard to normal flight operations. The following aircraft and aerial activities are restricted from operating at SCLA except in emergency situations or with prior approval of the Airport Director:

      1. Hot Air Balloons;

      2. Hang Gliders;

      3. Parachutists;

Pg. 13 of 38

EXHIBIT B

134

SOUTHERN CALIFORNIA LOGISTICS AIRPORT RULES AND REGULATIONS

      4. Radio Controlled Aircraft;

      5. Ultra Light Aircraft;

      6. Gliders; and

      7. Motorized Lighter than Air Aircraft.

**SECTION 26.**   **AIRCRAFT FUELING AND DEFUELING:**

26.1   In accordance with the regulations from the National Fire Protection Association (NFPA), Uniform Fire Code (UFC), and the Department of Transportation (DOT) the following rules and regulations must be observed while fueling aircraft:

26.2   All fuel servicing must be done outside of any building or hangar. (NFPA 407 3-10).

26.3   Aircraft shall be located a minimum of fifty (50) feet away from any building openings, doors, windows, etc.

26.4   During fuel handling, no passenger shall be permitted in or on the Aircraft unless a cabin attendant is stationed at or near the cabin door.

26.5   Fueling shall not be done while an on-board engine is operating ("hot fueling") without the permission of the Airport Director and then, it shall only be permitted when representatives of the Fire Department are standing by. Exception is allowed for A.P.U. operation on large aircraft. (NFPA 407 3-5.1)

26.6   Equipment other than Aircraft service equipment shall not be permitted within fifty (50) feet of an Aircraft during fueling or defueling. (NFPA 407 3-5.1)

26.7   No open flames, smoking, battery chargers, or any material or device which is likely to cause a spark shall be in use within fifty (50) feet of an Aircraft or fueling truck during fueling or defueling operation. (NFPA 407 3-7, 3-8). Exception is allowed for Ground Power Units.

26.8   All hoses, funnels and appurtenances used in fueling or defueling activities shall be equipped properly with grounding and bonding devices to prevent possible static ignition of volatile liquids or vapors. Such grounding and bonding devices shall be used during all fueling and defueling activities.

26.9   Refueling vehicles, fuel hoses and defueling equipment shall be maintained in a safe, sound, operational and non-leaking condition.

SOUTHERN CALIFORNIA LOGISTICS AIRPORT RULES AND REGULATIONS

26.10 Gravity (hand) fueling may not be accomplished with any container having a capacity greater than five (5) US gallons.  (NFPA 407 3-2.3)

26.11 All portable fuel containers must be approved and marked so as to identify the product contained therein. (UFC)

26.12 Any fuel transported by privately owned vehicles, not specifically designed for the transport of flammable liquids and appropriately placarded, are limited to a maximum of 20 U.S. gallons in an approved and marked container. (DOT and UFC)

26.13 Portable fuel containers shall be kept in approved locations, at least fifty (50) feet from any building, and secured in a cabinet or locker marked "Flammable." (UFC)

26.14 Every Person engaged in aircraft fuel handling shall exercise due care to prevent the overflow of tanks and spilling of fuel.  Fuel spills are a fuel operator's responsibility.

26.15 Where there has been a fuel spill or leak, no Person shall start the engine of any Aircraft in close proximity until the spill or leak has been cleaned up.  In event such spills or leaks are over 10 ft. in any direction, or over 50 sq. ft. in area, or continues to flow, or are otherwise a hazard to persons or properties, the SCLA Fire Department & Haz-Mat shall be notified.

26.16 In addition, all fuel storage on the Airport shall be regulated by NFPA 407, the UFC, and be approved by the City of Victorville Fire Chief or his designee.

SECTION 27.  VEHICLE OPERATIONS:
27.1 No Person shall travel on any portion of the Airport except upon the roads, walks, or places provided for the particular class of traffic, nor occupy the roads or walks in such manner as to hinder or obstruct their proper use.

27.2 Unless escorted by an Authorized Person who is authorized to drive on the AOA, no Person shall operate a Vehicle on the Airport without successfully passing the SCLA driving test, being issued a Personnel Identification Badge, and possessing a valid state driver's license, with the exception of the Airport ARFF, or Law Enforcement.

27.3 No Person shall operate a powered industrial vehicle without a Driving Permit on the Ramps, Taxiways, Runways or designated Roadways.  An exception will be made for employees working within the exclusive leaseholders premises as authorized by the Airport Director.

SOUTHERN CALIFORNIA LOGISTICS AIRPORT RULES AND REGULATIONS

27.4  Persons who employ individuals at the Airport shall be responsible to provide training for powered industrial vehicles and equipment, and for maintaining all training materials and records relating to the employee's duties.

27.5  SCLA requires that employers "certify" that training and evaluations have been completed and maintained in the employee's files up to 180 days upon separation of employment, and are available for inspection by the FAA, TSA and the Airport Operations and Security Department upon request.

27.6  Motor-vehicle traffic shall yield the right-of-way to Aircraft.

27.7  Every vehicle, excluding ARFF and construction vehicles operating within the Movement Area, shall have a flashing yellow beacon and carry a 2-way radio or be escorted by a vehicle so equipped.  Construction vehicles must be identified with an orange and white flag and a 2-way radio or be escorted by an authorized vehicle so equipped.

27.8  Any accident, involving a motor vehicle, which results in a fatality or injury, or in property damage, shall be reported by the driver, or his representative, to the Airport Director.

27.9  No Person shall operate any motor vehicle on the airport in excess of 25 miles per hour except emergency vehicles responding to an emergency situation, or emergency vehicles involved in training or drills with prior ATC coordination.  On passenger loading ramps, around parked Aircraft, and in areas immediately adjacent to hangars, speed shall not exceed ten (10) miles per hour.

27.10 Vehicles shall not be parked on the Airport other than in the manner and locations indicated by posted traffic signs and markings.

27.11 Unattended Vehicles may be parked only in designated Airport vehicle parking lots.

27.12 Vehicles parked other than specified in "27.10" and "27.11" above, may be moved by Airport personnel, and in such event a towing charge will be levied prior to releasing the Vehicle from impound.  Neither SCLAA, VVEDA, the City, nor any of their respective officers, employees, agents, or designated representatives shall be liable for damages sustained by such Vehicles during said movement.

27.13 Motor vehicles shall not be driven on or across Runways or other portions of the Movement Area without permission from ATC Tower to do so.  Two-way radio communications with Ground Control (on frequency 124.45) shall be required between the ATC Tower and such vehicles.  Exceptions may be granted during maintenance activities as long as two-way radio

EXHIBIT B
137

SOUTHERN CALIFORNIA LOGISTICS AIRPORT RULES AND REGULATIONS

communications control is maintained with at least one vehicle controlling the activity.  ARFF vehicles may contact the ATC tower on the fire net per operational agreement.

27.14 Motor vehicles shall not be driven or parked upon, or within fifty (50) feet of Aircraft parking areas, ramp areas, or aprons without express approval of the Airport Director.  Exceptions:  aircraft support, airport maintenance, emergency vehicles, or fuel or service vehicles.

27.15 No Person may operate a motor vehicle or Aircraft in or on any portion of the Airport while under the influence of alcohol or drugs.

27.16 No Vehicle shall be operated on the Airport unless the Vehicle has been registered to drive on the Airport with Airport Operations.   To register a Vehicle to drive on the Airport requires:  a) proof of ownership, b) proof of vehicle registration with the Department of Motor Vehicles for State of California, or the Department of Motor Vehicles for another State; and c) proof of insurance as set forth in Section 37 of these Rules and Regulations.

27.17 Vehicles passing through electronic access perimeter security gates are required to stop just past the gate and wait for the gate to fully close before continuing.  Vehicle operators should ensure no unauthorized persons enter the AOA while the gate is closing.  Vehicle entry procedure is one vehicle per gate activation unless the vehicles following are under Escort.

SECTION 28.  FIRE HAZARDS:
28.1   No Person shall light or smoke any cigarette, cigar, pipe, or similar object in the following Airport areas:

    i.   Within any hangar, or fuel handling or fuel storage areas;

    ii.  Inside any Aircraft (whether or not such Aircraft are parked or stored) or within fifty (50) feet thereof;

    iii. Within fifty (50) feet of any "No Smoking" sign posted;

    iv.  Within any Vehicle operating on the AOA;

    v.   Within any building on the Airport.

28.2   No Person may use flammable liquids, solvents, or substances to clean any Aircraft, engine, part, or accessory thereof, within any hangar or building except a building specially designed for that purpose and approved in writing by the Airport Director.  Such approval shall only be granted when the Airport Director approves the ventilation provisions, fireproofing, and fire-extinguishing equipment.

SOUTHERN CALIFORNIA LOGISTICS AIRPORT RULES AND REGULATIONS

28.3   No Person shall light or use any open flame for any purpose in any hangar or other building on the airport without the prior written consent of the Airport Director and Fire Chief.

28.4   No Person shall operate any welding or cutting equipment (electric or gas) anywhere on the Airport without prior written approval of the Airport Director and the SCLA Fire Department.  A welding permit is required and may be obtained at the fire station.

28.5   No Person shall clean or degrease any Aircraft or part thereof except at or in a maintenance station properly equipped for such purposes, or in a space designated or authorized by the Airport Director.

28.6   No Person shall store or stock any material or substance, or lease or permit such activities in or on the Airport in such a manner, or of such nature, as to constitute a fire hazard. No Person shall keep, store or discard any flammable liquid, gas, signal flare, or other flammable material in any hangar, shop, building, room, enclosure, or other place on the Airport except in areas specially designated by the SCLA Fire Department for such purpose.

28.7   Lessees of hangars, shops, or other Airport areas shall provide suitable metal receptacles with hinged lids for the storage of oily waste, rags, and other similar rubbish.  The lessee shall remove all such materials at frequent intervals.

28.8   Every lessee shall maintain his leased area clean and reasonably free of oil, grease, waste, other flammable materials and weeds.

28.9   Lessees shall provide, and maintain in proper working order, adequate and readily accessible fire extinguishers.  Each such extinguisher shall bear a suitable tag, which indicates the most recent date of inspection or servicing. SCLA Fire Department shall approve all extinguishers, their type, and location.

28.10   No Person shall move, relocate, or otherwise disturb any wheeled fire extinguisher on the Airport without the permission of the SCLA Fire Department unless specifically for emergency use.

28.11   All fires on the Airport, regardless of size, even if extinguished, shall be immediately reported to the SCLA Fire Department without delay.

SECTION 29. FUEL SALES:
29.1   No Person shall deliver aviation fuels or lubricants to, or dispense such fuel from, at, or upon the Airport without a lease or permit from the Airport Director.

EXHIBIT B
139

SOUTHERN CALIFORNIA LOGISTICS AIRPORT RULES AND REGULATIONS

29.2   For the right, privilege and concession of making deliveries of all types of aviation fuels and lubricants, and other fuels, to any Person or location at or upon the Airport, other than to a central fuel person or location at or upon the Airport, other than to a central fuel service stand provided by the Airport, there is levied against such lease or permit holder, a flowage fee of ten cents (.10) for each gallon of fuel so delivered.

29.3   No fuel shall be stored anywhere on the Airport except approved by the Airport Director and the SCLA Fire Department.

SECTION 30.   SECURITY:

30.1   Though not required, SCLA operates under the guidelines established by FAR Part 139 "CERTIFICATION AND OPERATIONS SERVING CERTAIN AIRCRAFT OPERATORS."   To this end, SCLA has prepared and implemented a security program that parallels the requirements contained in TSA 1542.   This program includes the following elements: Personnel Identification Badging, controlled access to the Air Operations Area (AOA), driver licensing for personnel operating on the AOA, Vehicle registration, and perimeter security.   All personnel operating at SCLA are required to abide by the SCLA Airport Master Security Program.

30.2   Personnel Identification Badges.  Only those individuals that have a need to be on the AOA will be issued a Personnel Identification Badge and granted unescorted access to the AOA and Restricted Areas.   Individuals that require access must apply for a Personnel Identification Badge at the Airport Operations and Security Department. Lost or stolen Personnel Identification Badges must be reported to the Airport Operations and Security Department immediately.  The application process includes:

1.   A ten-year employment/education or unemployment history verification check, with five years verified by the individual's former employer(s), and

2.   A CHRC, which is information gathered from the Federal Bureau of Investigation, provided to SCLAA after submitting a Live Scan Fingerprint to the Transportation Clearing House.

30.3   Fingerprints are collected by the Airport Security Coordinator, or his designated representative, at the expense of the individual's employer.

30.4   A Fingerprint-based Criminal History Records Check as described in TSA 1542.209 is required before authorized unescorted access to the Airport is granted. The results of the CHRC will be among the determining factors as to whether the issuance of a Personnel Identification Badge is granted.

Pg.19 of 38

EXHIBIT B
140

SOUTHERN CALIFORNIA LOGISTICS AIRPORT RULES AND REGULATIONS

30.5 Identification for Authorized Persons contains the Individual's photograph, name, company name, expiration date, identification number and color blocks that indicate authorized access areas granted to the badge holder.

30.6 Individuals who have a need to be within the Airport Operations Area (AOA) are required to attend an Airport Familiarization and Security Identification Display Area (SIDA) class and will be required to display a Personnel Identification Badge while operating in such areas.

30.7 The Airport Badging Office issues Non-Driving Identification Badge and Identification Badges with Driving Permit, upon completion of a SIDA Class and AOA Drivers Training and satisfactory score upon completion of a written test. Driving permits will be determined and issued in accordance with the applicant's job related duties on the airport.

30.8 The Airport Security Coordinator will confirm or deny an applicant's request for a badge based on verification of the CHRC and the employment/education or unemployment history verification check, with five years verified by the employer, and the need of the applicant to access the AOA. If a Personnel Identification Badge is warranted, the Airport Security Coordinator, or his designated representative, will issue the Badge.

30.9 All Personnel Identification Badges issued by the Airport Operations and Security Department are the property of Southern California Logistics Airport Authority and MUST be returned upon expiration, separation of employment (for any reason), when the job function no longer requires Personnel Identification Badge, and upon demand of staff from the Southern California Logistics Airport. Any misuse or willful failure to return a Personnel Identification Badge is punishable by fine as dictated in the Airport Rules and Regulations. Personnel Identification Badges are non-transferable and must be used only by the individual to whom they are issued.

30.10 No individual shall enter the AOA of the Airport without a Personnel Identification Badge unless the individual is accompanied by an Authorized Person with a Personnel Identification Badge who shall be fully responsible for the unbadged person being escorted. Fire department personnel responding to an emergency wearing uniforms or other identifying clothing, shall not be required to wear an identification badge.

30.11 No Authorized Person shall Escort any individual who is not in the performance of job-related duties and who requests access to the Airport as a visitor without the consent and approval of the Airport Director. Person(s) denied access to the Airport by Airport security officers, must abide by the decision of the security officers under the direction of this rule. Visitor Escort must be conducted during normal business hours of the Airport

SOUTHERN CALIFORNIA LOGISTICS AIRPORT RULES AND REGULATIONS

Operations and Security Department, unless prior approval of the Airport Director has been established

30.12 Authorized Persons shall always prominently display their Personnel Identification Badge while on the AOA. Failure to prominently display an issued Personnel Identification Badge while on the AOA shall constitute a violation for which a fine shall be assessed as set forth in Section 43, PENALTIES AND APPEALS.

30.13 Individuals who do not display a Personnel Identification Badge, and who are not under Escort by an Authorized Person displaying a Personnel Identification Badge, shall immediately be reported to the Airport Director and shall be escorted off the AOA by the Airport Director or his staff.

30.14 Authorized Persons who have been issued a Personnel Identification Badge and are involved in an accident while operating on the AOA will be asked to submit to a drug-screening test. Authorized Persons who refuse to submit to the drug-screening test will be considered as having failed the test and the Authorized Person will be considered to be under the influence of drugs or alcohol.

30.15 Controlled Access to the AOA. Any Airport Tenant that has direct access to the AOA, should, because of their immediacy of access, be considered part of the AOA. These Airport Tenants shall therefore take measures to protect access to the AOA. As required by TSA 1542.113 Airport Tenant Security Programs, the Airport Tenant must assume responsibility for specified security measures of the Secure Area, AOA, or SIDA. Airport Tenants are encouraged to develop individual security programs designed to meet the needs of their particular businesses. In all cases such security programs *must be approved* in writing by the Airport Director.

30.16 While on the AOA, customers and clients of the Airport or Airport Tenants must be under Escort at all times. Failure to provide an Escort may constitute the issuance of a Notice of Violation that could result in sanctions. See Section 43, PENALTIES AND VIOLATIONS for a discussion on the scope of fines/penalties associated with violations of the Airport Security Program.

30.17 The Airport Operations and Security Department administers the licensing program for drivers on the AOA. This program involves a study element that describes the procedures for driving on the AOA at SCLA. A written test will be administered and all applicants must pass the test in order to receive a license to drive on the AOA.

30.18 Vehicle Registration for driving on the AOA. All Vehicles that operate on the AOA must be registered with the Airport Operations and Security

EXHIBIT B
142

SOUTHERN CALIFORNIA LOGISTICS AIRPORT RULES AND REGULATIONS

Department. All Vehicles that operate on the AOA will be issued a Radio Call Sign that must be utilized while on the AOA. Airport Standard Operating Procedure No. 200-01 describes the Radio Call Sign Procedure.

30.19 Perimeter Security. The Airport is surrounded by an eight-foot (8') high chain link fence. Barbed wire is placed atop this fence. There are numerous locked gates that access the Airport perimeter. Airport Tenants that are situated on the immediate perimeter of the AOA must employ secured personnel doors.

30.20 All Persons that operate on the Airport are charged with the responsibility of maintaining the security of the Airport. To this end, Persons who observe breaches in security are to call said incidents to the attention of the Airport Operations and Security Department.

30.21 A Person's responsibility under Section 30.20 includes breaches to the procedural elements of the Airport Security Program, as well as the physical elements of the Airport Security Program (perimeter fence, vehicle gates, etc.).

30.22 The issuance under this Section of either (i) a Personnel Identification Badge, or (ii) a Personnel Identification Badge with Driving Permit to drive on the AOA, shall be conditioned upon the express consent of the individual to whom the badge is issued, to a drug and alcohol screening in the event that such individual is involved in an accident while on Airport property.

30.23 In the event that an individual to whom a Personnel Identification Badge or Personnel Identification Badge with Driving Permit has been issued (a) tests positive for the use of a controlled substance not prescribed by a physician or has a blood alcohol content equal to or in excess of .08, or (b) refuses to consent to a drug and alcohol screening, then such individual's Personnel Identification Badge and/or Driving Permit shall be revoked by the Airport Director.

30.24 A Personnel Identification Badge and/or Driving Permit which has been revoked under Section 30.23 of these Rules and Regulations will remain revoked until the individual's employer petitions the Airport Director in writing, to have said individual's Personnel Identification Badge and/or Driving Permit reinstated.

30.25 Reinstatement of a Personnel Identification Badge and/or Driving Permit which has been revoked under Section 30.23 of these Rules and Regulations remains the prerogative of the Airport Director; however, reinstatement will not be unreasonably withheld.

SOUTHERN CALIFORNIA LOGISTICS AIRPORT RULES AND REGULATIONS

30.26  Reinstatement of a Personnel Identification Badge and/or Driving Permit which has been revoked under Section 30.23 of these Rules and Regulations will depend on, as a minimum, the employer's verification of a negative drug test as part of a return to duty test.  Any individual who has verified positive drug test results on two drug tests will not be permitted to thereafter work or drive on the AOA, regardless of whether such individual is accompanied by an individual properly in possession of a Personnel Identification Badge and/or Permit.

SECTION 31.  AIRPORT SECURITY AREAS:

31.1  Unauthorized Entry and Exit:  No Person shall seek entry to or exit from Airport Security Areas except through designated entrances and exits.  No Individual shall seek entry to or exit from Airport Security Areas over, under or through fencing, walls, window, air or other vents.

31.2  Only Authorized Persons, or those Individuals under Escort, shall have access by any means to Airport Security Areas.

31.3  A Person performing an Escort must, at all times, be in a position to actively monitor, direct and control the movements and actions of the accompanied individual(s).

31.4  No Individual shall enter/exit or allow another Individual to enter/exit into Airport Security Areas except by using his Personnel Identification Badge.  No Individual shall follow another Individual into an Airport Security Area without first using his or her Personnel Identification Badge through any electronic access installed at the entry/exit point.  This provision does not apply to an Individual under Escort

31.5  No Individual shall drive a Vehicle into Airport Security Areas unless the Individual has used his or her Personnel Identification Badge to open any electronic access installed at the entry point.  No Individual shall allow other Vehicles to follow or tailgate in Airport Security Areas.  This provision does not apply to Vehicles under Escort.

31.6  No Person shall tamper with or in any way hamper the effective operation of Security Devices.

31.7  Security of Access Points:  No Person shall leave open, propped or unsecured any door, gate or access point leading to or allowing access to Airport Security areas.  No Person shall hold, prop or cause a door, gate or access point to be open beyond the period of time allowed by a Security Device unless an Authorized Person attends the door.  When an Authorized Person is attending a security door, he or she must be physically present at the door and must use his or her Personnel Identification Badge to activate additional time for the door to be open.

SOUTHERN CALIFORNIA LOGISTICS AIRPORT RULES AND REGULATIONS

SECTION 32.   RESPONSIBILITY OF AIRPORT TENANTS:

32.1   Adherence to the Security Rules and Regulations:  Airport Tenants with access to Airport Security Areas on their leased area shall follow these Rules and Regulations by posting signs, approved by the SCLAA, which prohibit access into the Airport Security Areas.  Airport Tenants with access to Airport Security Areas shall at all times keep the access secured or staffed in a manner that prevents unauthorized individuals from accessing Airport Security Areas.  Airport Tenants shall retain keys or other means of access to Airport Security Areas under their control and issue such access only to Authorized Persons.

32.2   Airport Tenants with access to Airport Security Areas shall appoint at least one employee of the Airport Tenant as the security contact primarily responsible for the Airport Tenant's leased area which access Airport Security Areas.   Airport Tenants shall advise the Airport Security Coordinator in writing of the individual or individuals at all times having such responsibility.

32.3   Airport Tenants must provide a quarterly employee roster to the Airport Operations and Security Department in the months of January, April, July and October, and immediately notify the Airport Operations and Security Department of employee separation.

32.4   Airport Tenants must immediately confiscate Personnel Identification Badges, with or without access media, as well as any keys that would allow access to the Airport, from individuals upon separation of employment. Any misuse or willful failure to return a Personnel Identification Badge is punishable by fine as dictated in these Rules and Regulations.

SECTION 33.   OTHER PROHIBITED ACTS:

33.1   Bypassing Security Screening Area:  No individual shall enter a Sterile Area through a Security Screening Area unless first going through equipment that has been installed for inspection of individuals and their belongings.  Armed federal and local law enforcement officers on official duties at the Airport, airport operations and maintenance personnel, and others exempted by the FAA do not have to be inspected, provided they follow FAA and TSA regulations.

33.2   Statements Against Aviation Safety or Security:  No Person shall make a statement to another so as to indicate that the Person or another may have possession of a firearm, bomb or explosive device while at the Airport.

33.3   Interference with Airport Personnel: No Person shall intimidate, threaten, hinder or obstruct Airport Personnel or Airport Security Officers in the performance of his or her official job duties or lessen the ability of such person to perform his or her duties.

SOUTHERN CALIFORNIA LOGISTICS AIRPORT RULES AND REGULATIONS

33.4   <u>Interference with Flight Operations</u>:  No Person shall intimidate, threaten, hinder or obstruct an aircraft crewmember in the performance of his or her official job duties or lessen the ability of such aircraft crewmember to perform his or her duties.

33.5   <u>Unattended Baggage</u>:   No Person shall leave any bag, luggage, box or container unattended in the terminal areas of the Airport, which are accessible to the public.

33.6   <u>Presenting a Weapon at Security Screening Area</u>:  No Person shall place firearm(s), explosive device(s), knife/knives or other FAA/TSA prohibited items that could be used as a weapon onto inspection equipment at a Security Screening Area without first declaring such item(s). Only Persons authorized by the TSA may test Security Screening Areas.

SECTION 34.   <u>ENFORCEMENT</u>:

34.1   <u>Notices of Violation</u>: The Airport Operations and Security Department will conduct inspections and enforce violations of these Rules and Regulations, Minimum Standards, and any permits issued hereunder regarding activities at the Airport. All Personnel Identification Badge holders and persons with access cards will be subject to a Notice of Violation (NOV) when reasonable grounds exist to believe that Rules and Regulations, Minimum Standards or a permit have been violated, either by commission or omission.

34.2   NOV's will be monitored and issued by Airport Operations and Security Department personnel or by recommendation from an Authorized Person of Authority.  A copy of the NOV will be given to the Personnel Identification Badge holder, or the Person(s) observed committing the violation(s).

34.3   The NOV may serve as a notice only or may include a penalty ranging from suspension to revocation.  Any violation of a severe nature as determined by the Airport Director will warrant immediate suspension or revocation of the Personnel Identification Badge. Severe violations include, but are not limited to, any violation that may result in property damage, injury, runway incursions, or other safety hazards, or that threatens the environment or public welfare.

34.4   The receipt of three (3) NOVs, which have not been appealed or that have been upheld upon appeal, within a twenty-four (24) month period will be considered grounds for revocation of the Personnel Identification Badge.

34.5   When an NOV or sanction is issued, a letter indicating as such will be sent to the individual's employer, advising the employer of the violation.

34.6   Upon written request, the Airport Security Coordinator may review and recommend modification of the NOV.

SOUTHERN CALIFORNIA LOGISTICS AIRPORT RULES AND REGULATIONS

**SECTION 35.    SUSPENSIONS:**
An Individual's authorization to use a Personnel Identification Badge may be suspended for any of the following reasons:

1.    Violation of these Rule and Regulations.

2.    Violation of any rule or regulation of SCLAA for which a criminal penalty may be imposed.

3.    Violation while on Airport property of any law of the State of California or the United States for which a criminal penalty may be imposed.

4.    Actions which interfere with or threaten the operation of the Airport, or the comfort, safety or convenience of passengers, Authorized Person's employed by the City of Victorville, or otherwise constitute just cause for suspension.

35.2  The Airport Director or an Airport Security Coordinator shall issue written notice of the Suspension, which shall state the nature and date of the violation, the length of Suspension, and the date the Suspension shall begin and the Individual's right to have a hearing pursuant to the provisions of Section 43 of these Rules and Regulations. The suspension may be for up to ninety (90) days as determined by the Airport Director or the Airport Security Coordinator.

**SECTION 36.   REVOCATION:**
36.1  An Individual's authorization to use a Personnel Identification Badge may be revoked for any of the following reasons:

1.    Any act that seriously endangers property or Persons or indicates willful or reckless disregard for, and which has an immediate impact on the health, safety or welfare of the public or poses a serious threat to the security of the Airport.

2.    A violation warranting Suspension where the Individual has had a previous suspension for the same or similar offense.

36.2  The Airport Director or Airport Security Coordinator shall issue a written notice of Revocation, which shall state the nature and date of violation, the date and Revocation shall begin, and the Individual's right to a hearing pursuant to the provisions of Section 43 of these Rules and Regulations.

**SECTION 37. LIABILITY INSURANCE:**
37.1  Every Airport User shall carry insurance as required by their lease, sublease or permit to operate on Southern California Logistics Airport and as required

SOUTHERN CALIFORNIA LOGISTICS AIRPORT RULES AND REGULATIONS

by State and Federal regulations. Any person operating a vehicle within the fenced area of the Airport, who does not have a lease, sublease, or Operating Permit, is required to have comprehensive automobile insurance with combined single limits for bodily injury and property damage of not less than $1,000,000.

37.2    Airport Users shall provide Certificates of Insurance naming VVEDA, SCLA and Stirling Airports International as Additional Insured's with respect to their lease, sublease or permit. These Certificates of Insurance shall also provide for a 30-day Notice of Cancellation for those policies listed on the Certificate of Insurance.

37.3    The Airport User shall formally advise its Insurers that all Vehicles in use with or without valid Airside Vehicle Permits are intended to be operated on that portion of the Southern California Logistics Airport premises known as Airside, and should those Insurers exclude, limit, or otherwise restrict coverage while the Vehicle is on Airside, the Occupant shall obtain and keep in full force and effect at all times, a policy of Aviation Liability Insurance covering both license-plated and unlicensed plated Vehicles while on Airside

SECTION 38. ILLEGAL ACTIVITIES:  No Person shall:
38.1    Take or use any Aircraft, aircraft parts, instruments, or tools pertaining thereto, which are owned, controlled, or operated by any other Person, while such Aircraft, parts, instruments, or tools are stored or otherwise left on SCLA, or within its hangars, building, or facilities, without the written consent of the owner/operator thereof, except upon satisfactory evidence of the right to do so duly presented to the Airport Director, or authorized by him or so ordered by a court of competent jurisdiction.

38.2    Land, takeoff, taxi, or otherwise operate any Aircraft on, at, or from SCLA when he knows such Aircraft is not operating properly, or is equipped with any part or safety device which is defective or unsafe. Deviations from this restriction shall only be permitted by specific authorization from the Airport Director and/or FAA if required, or his designated representative.

38.3    Operate any Aircraft on or at the Airport, or on any Runway thereof, when the Airport or Runway has been closed to traffic by the Airport Director or other legal authority, or when such closure has been indicated by the placement of an "X" at each end of the closed Runway.

38.4    Operate any aircraft on, at, or in the vicinity of SCLA in willful or wanton disregard for the safety of persons or property, whether his own or that of others.

Pg.27 of 38

SOUTHERN CALIFORNIA LOGISTICS AIRPORT RULES AND REGULATIONS

38.5   Engage in the performance of any aerobatics, stunt, or maneuver not necessary to a normal takeoff, landing, normal turn or level flight of the Aircraft, over or within one mile of the exterior boundaries of the airport without the permission of the Airport Director or ATC.

38.6   Engage in the sale of any goods, wares, merchandize, or services at or upon the Airport without first having secured from the Airport Director a lease or permit therefore, and paying any required fees for such lease or permit.

38.7   Board an aircraft at the Airport without the prior approval of the Aircraft's owner or representative.

SECTION 39.  AIRPORT CLOSURE:

39.1   The Airport Director is hereby directed and authorized to close the Airport, or portions thereof, or suspend operations related to the landing, takeoff, or taxiing of Aircraft during any period in which he determines that such operations, or their continuance, would be hazardous.

39.2   Causes for such closure could include, but would not be limited to, adverse weather conditions, runway maintenance or repairs, runway obstacles, fire, Aircraft or other accident.

39.3   The Airport Director or his designee shall immediately notify the Riverside Flight Service Station and issue a NOTAM, advising of the closure.

SECTION 40.  THRU-THE-FENCE ACTIVITIES:

40.1   Thru-the-fence activities, defined as accessing the Airport from private land outside the airport perimeter for the purpose of utilizing or otherwise benefiting from the Airport, are strictly prohibited.

SECTION 41.  SEVERABILITY:

41.1   Should any article, section, sub-section, sentence, clause or phrase of these Rules and Regulations be held invalid or unconstitutional for any reason, such decision shall not affect the remaining portion of these Rules and Regulations.

41.2   The SCLA Authority hereby declares that it would have adopted these Rules and Regulations and each article, section, sub-section, sentence, clause or phrase, regardless of the fact that any one or more articles, sections, sub-sections, sentences, clauses, or phrases be declared invalid or unconstitutional.

SECTION 42.  DISMANTLING AIRCRAFT:

42.1   No Person shall dismantle an Aircraft of any type outside of a hangar unless they receive prior written approval from the Airport Director.  Any Person permitted to dismantle an aircraft outside of a hangar must:

SOUTHERN CALIFORNIA LOGISTICS AIRPORT RULES AND REGULATIONS

42.2 Submit a written request to the Airport Director describing the type of aircraft to be dismantled, the dismantling procedures to be employed, the procedures for disposing of all dismantled material, toxic material clean up and abatement procedures, and the schedule for dismantling an aircraft.

42.3 Conduct all aircraft dismantling within a fenced in area to prevent visual contact with the dismantling activity.

42.4 Return the area used for dismantling to its original condition as approved by the Airport Director in his/her sole discretion.

42.5 Procure a performance bond to ensure any contamination, remediation of contamination and the dismantling area is returned to its original state. The amount of the bond will depend upon the procedures set forth in the request and the potential exposure and land clean-up cost to the Airport.

42.6 Receive the prior approval of the SCLA Fire Department.

42.7 Adhere to all City of Victorville, State and Federal environmental regulations.

42.8 Upon receipt of the information set forth in 42.1 through 42.7 above, the availability of land to conduct dismantling and other airport operating requirements and/or constraints, the Airport Director will either approve the Aircraft dismantling request by issuing a written Letter of Permit with appropriate indemnities and airport protection provisions to the requesting person or business or deny the request by providing a Letter of Denial to the requestor.

SECTION 43. PENALTIES AND APPEALS:

43.1 Fixing penalties for violations: Any Airport User including, without limitation, sublessees, suppliers, contractors, guests, invitees, or others that do not adhere to or violates these Rules and Regulations shall be sanctioned.

43.2 Sanctions may include, but are not limited to, a fine paid to the Airport, denial of the use of the Airport for a specified period of time, and/or a referral to the Transportation Security Administration and/or Airport Authority Attorney with a recommendation for criminal prosecution.

43.3 In determining the sanctions to be imposed, the Airport Director may take into consideration any mitigating or aggravating factors that may exist including, without limitation, the number of previous violations and the cooperation of the person involved.

43.4 Fines shall be assessed from $100.00 to $10,000.00 per day per incident depending on the severity of the violation.

SOUTHERN CALIFORNIA LOGISTICS AIRPORT RULES AND REGULATIONS

43.5   Should an infraction occur, and should the infraction and situation surrounding the infraction warrant, fines will be assessed on a graduated/increasing basis.

43.6   All fines assessed to a sublessee, or to a sublessee's suppliers, contractors, guests, invitees, or others, will be added to a Sublessee's monthly rent and subjected to late fees and default provisions as set forth in a Sublessee's land or facility Sublease.

43.7   Fines assessed to Airport Users who do not have a land or facility Sublease at SCLA, shall be paid before the Airport User is permitted to use the Airport again.

43.8   Continuous violation of these Rules and Regulations shall result in denial to use the Airport.   Attachment B provides an example of fines as may be applied.

43.9   Removal from Airport Premises:   The Airport Director, or his designated representative, may order removal of anyone from the Airport who knowingly and willfully violates any provision of these Rules and Regulations.

43.10  Recourse under Tenant's Lease:   SCLAA may take action against Airport Tenants under their lease agreements irrespective of any other penalties under these Rules and Regulations.

43.11  RIGHTS OF APPEAL:   Fines and other sanctions may be appealed to the Executive Director.   Requests for appeal must be made in writing to the Executive Director within ten (10) business days from the date the fine was presented to the Airport User.

43.12  The Executive Director (or his designated representative) will convene an administrative hearing and shall serve as the hearing officer (the "Hearing Officer").   Failure of any Airport User to properly file an appeal shall constitute a waiver of its right to an administrative hearing and adjudication of the fine or any portion of the total amount of the fine.

43.13  The Airport User or other Person in receipt of the fine or sanction shall be provided a written notice of the date, time, and location of the hearing.   The notice will include the date, time and nature of the alleged violation.

43.14  The hearing shall be conducted in an informal manner and strict rules of evidentiary procedure will not apply.   The Hearing Officer may consider any evidence that is reasonably probative and aids in the determination of the facts.

43.15  Parties are entitled to be represented by an attorney of their choice, to bring witnesses, and present documentary evidence.   Parties have the right to have

SOUTHERN CALIFORNIA LOGISTICS AIRPORT RULES AND REGULATIONS

all records or documents relevant to the proceedings provided to them at the cost of reproduction.

43.16 At the conclusion of the appeal hearing, and pursuant to the Hearing Officer's authority, the Airport Director's imposition of sanctions may be upheld, modified or reversed.  Parties will be provided with the results of the hearing in writing, including any penalties imposed by the Hearing Officer.  The decision of the Hearing Officer is final.

SECTION 44.   EFFECTIVE DATE

44.1   These changes contained in the Southern California Logistics Airport Rules and regulations shall be of full force and effective immediately upon filing of same with proof of publication with approval of the Southern California Logistics Airport Authority.


_____
Peter R. Soderquist
Airport Director

EXHIBIT B
152

SOUTHERN CALIFORNIA LOGISTICS AIRPORT RULES AND REGULATIONS

Attachment A

## SOUTHERN CALIFORNIA LOGISTICS AIRPORT
### Airport Rates and Charges

Introduction / Guiding Principles:

A.1    In establishing a Schedule of Airport Rates and Charges, the Southern California Logistics Airport Authority (the "Airport Authority") is required by federal regulations to ensure that charges are fair, reasonable and non-discriminatory.   Further, Airport Rates and Charges are to be reasonably consistent with the rates and charges being applied by other airports for similar types of activities, unless there is a special situation unique to the Southern California Logistics Airport.

A.2    The Airport Authority fully recognizes the FAA prohibition against the diversion of Airport revenues for non-airport purposes.   It is recognized that failure to collect fair and reasonable fees and market-based rents for the use of Airport property, facilities and equipment can be considered a form of Revenue Diversion.  The Authority also recognizes the FAA requirement to establish a Schedule of Rates and Charges that will permit the Airport to be as self-sustaining as possible.

Airport User Fees Defined:

A.3    Aircraft Landing Fees:  The Southern California Logistics Airport Authority (SCLA) has expended a significant amount of funds to provide aviation facilities for the benefit of aircraft owners and operators.  Landing fees are assessed to help offset the cost of operating and maintaining the Airport's runway, taxiway, and aircraft parking ramp areas.  Landing fees are based upon the Certified Maximum Gross Landing Weight (MGLW) of the aircraft multiplied by the Airport Authority's established landing fee rate per 1,000 pounds of Certified Maximum Gross Landing Weight.

A.4    Commercial Aircraft:  The Airport Authority assesses a landing fee on each aircraft landing conducted by an airline or other commercial Air Carrier, operating under FAR Part 121 (airline), Part 129 (international airline), Part 135 (air taxi), or other similar regulation, regardless of the purpose of the landing.

A.5    Signatory Landing Fees:  Signatory landing fees are assessed to an airline, or other large (over 75,000 lbs MGLW) commercial aircraft operator having a Signatory Operating Agreement with SCLA.  To be eligible for Signatory Operating Agreement status, the operator must have one or more of the following:

Pg.32 of 38

SOUTHERN CALIFORNIA LOGISTICS AIRPORT RULES AND REGULATIONS

    I.    *A lease with the Airport Authority of a ground site having at least 10,000 square feet or more that is used to accommodate the organization's primary base of business on Airport property.*

    II.    *A lease with the Airport Authority, or an approved sublease, of a building,* or part of a building totaling at least 4,000 square feet that is used as the organization's primary base of operations on the Airport.

    III.    Commercial Airlines operating under the military Civilian Reserve Air Force (CRAF) program.

A.6    Non-Signatory Landing Fees:  Non-signatory Landing Fees are assessed at a rate of 125% of the Signatory Landing Fee rate for large commercial operators (over 75,000 lbs MGLW) using the Airport who do not have Signatory Operating Agreement status with the Airport Authority, or have an agreement, but do not meet any of the Signatory eligibility criteria specified in paragraph 2 above.  *The Non-Signatory Landing Fee is intended to compensate the Airport Authority for the operator's use of the Airport's runway and taxiway areas as well as compensation for the privilege of being able to access the airport to conduct business.*

A.7    Private Aircraft:  The Airport Authority assesses a landing fee on *each* aircraft landing conducted by large private operators (over 75,000 lbs MGLW) operating under FAR Part 91, or other similar regulation, regardless of the purpose of the landing.  Landing fees for private aircraft that are operated under FAR Part 91 and are based at the airport under conditions set forth in a long term agreement with the Authority will be charged landing fees as required by that agreement.

Aircraft Parking Fees:

A.8.    Signatory Aircraft Parking Fees: Aircraft having Signatory status as defined in A.1 above, are not required to pay parking fees during the time an aircraft is in the loading/ unloading process (24 hour maximum).  Signatory Aircraft are also exempt from aircraft parking fees on the weekend, and over national holidays, as long as the weekend/holiday parking occurs in the middle of the loading/unloading process.  Signatory Aircraft that are not in the unloading/loading process, and/or use aircraft parking areas in excess of the 24-hour maximum, are required to pay established aircraft parking fees.

A.9.    Non-Signatory Aircraft: Non-signatory aircraft are required to pay established aircraft parking fees.

**SOUTHERN CALIFORNIA LOGISTICS AIRPORT RULES AND REGULATIONS**

**A10. Private Aircraft:** All private aircraft (both heavy and light) are required to pay aircraft parking fees. Aircraft that are based at the airport under conditions set forth in a long term agreement with the Authority will be charged parking fees as required by that agreement.

**A.11 Aircraft Storage Fees:** Aircraft storage fees are charged to aircraft that are stored on areas other than the main parking apron. Fees are payable under one of three different categories: under 50,000 lbs MGTW, narrow body aircraft, and wide body aircraft. Remote aircraft storage is occasioned by the many acres of closed runways and taxiways that make a suitable "hard stand" for aircraft parking. The availability of these areas is directly related to the longevity of these surfaces. As these surfaces fail to be usable for aircraft parking, they will be removed from the inventory of remote parking. The Airport Authority makes no representation that it will maintain these surfaces and those businesses that store aircraft thereon do so at their own risk.

**A.12 Fuel Flowage Fees:** A substantial percentage of the fuel dispensed at SCLA is "pre-purchased" by large aircraft operators that enjoy discounts based on the large volumes of fuel these carriers purchase nationally. This pre-purchased fuel is stored in SCLA's fuel farm to which SCLA assesses a storage fee. SCLA also assesses a flowage fee on each gallon of fuel delivered from the fuel farm to the aircraft.

**A.13 Fuel flowage and fuel storage fees reflect the intent of the Airport Authority to generate reasonable revenues for the use of the airport's fuel storage facility, while at the same time, encouraging aircraft operators to use SCLA as a base of operations.

**A.14 All fuel sold at SCLA is subject to the described fuel flowage fees with following exceptions:

1. **Non-Signatory Air Cargo Operators:** Commercial Air Cargo Operators that are considered Non-Signatory as defined in Section A.1 above and pre-purchase fuel that is stored in the Airport's fuel farm for use in their aircraft, shall pay flowage fees and storage fees.

2. **Signatory Cargo Operators:** Commercial Air Cargo Operators that meet the requirements of Signatory status as defined in Section A.1 above and pre-purchase fuel that is stored in the Airport's fuel farm for use in their aircraft shall pay the appropriate storage fee.

3. **Non-Commercial Signatory:** Based operators (signatory) that are non-commercial (Part 91) will pay the appropriate storage fee and a modified flowage fee as provided in the operator's lease agreement.

EXHIBIT B
155

## SOUTHERN CALIFORNIA LOGISTICS AIRPORT RULES AND REGULATIONS

### Southern California Logistics Airport
### Schedule of Rates and Charges

**Landing Fees:**

| | |
|---|---|
| Signatory airline (over 75,000 lbs MGLW) | $ .85 per 1,000 pounds MGLW |
| Non-signatory airline (over 75,000 lbs MGLW) | $1.06 per 1,000 pounds MGLW |
| Private aircraft (over 75,000 lbs MGLW) | $ .85 per 1,000 pounds MGLW |

**Fueling Fees:**
*(Flowage fee -$ .08 per gal; Storage fee -$ .02 per gallon)*

**Aircraft Parking Fees:** (commercial aircraft)

| | |
|---|---|
| Signatory airline | $200.00 per day |
| Non-signatory airline | $200.00 per day |

**Transient Aircraft Tie down Fees:** (general aviation aircraft; main ramp)

| | | |
|---|---|---|
| Single engine . . . . . . . . . . . . . . . . . . . . . | $ 5.00 per day | $ 80.00 per month |
| Multi engine . . . . . . . . . . . . . . . . . . . . . | $ 10.00 per day | $120.00 per month |
| Mid-weight aircraft (12.5K lbs to 25K lbs) | $ 20.00 per day | $200.00 per month |
| Large aircraft (25Klbs to 100K lbs) | $ 30.00 per day | $300.00 per month |
| Narrow body . . . . . . . . . . . . . . . . . . . . | $100.00 per day | $1,000.00 per month |
| Wide body . . . . . . . . . . . . . . . . . . . . . . | $200.00 per day | $2,000.00 per month |

**Wash Rack:**

Any aircraft. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 40.00 per hour    $240.00 per day

**Live Scan Fingerprint Transmission Fee Per Applicant for Criminal History Records Check:**

Call Airport Operations at (760) 243-1915 for Fingerprint transmission fees.

**Personnel Identification Badge**

| | |
|---|---|
| Personnel Identification Badge with or without access card. . . . . . . . . . . . . . . | $ 10.00 |
| Lost Personnel Identification Badge . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ 100.00 |

*(Fees are subject to change)*

EXHIBIT B
156

SOUTHERN CALIFORNIA LOGISTICS AIRPORT RULES AND REGULATIONS

Notes:

Parking charges for Signatory Airlines do not apply for the first 24 hours, weekends, or holidays. Transient aircraft tie down fees apply to aircraft remaining overnight.   Transient aircraft remaining parked longer than overnight Military aircraft are exempt from paying landing, parking and storage fees.

Definitions:

Signatory –

Having a lease or sublease of a ground site or building space on the Airport in accordance with the Airport Authority's Rates and Charges Policy; or, an airline having a contractual airline operating arrangement with an organization that has such a lease on airport property.

Non-signatory –

Those operators who do not have an On-Airport Lease Agreement with the Airport Authority in accordance with the Rates & Charges Policy.

MGLW – Maximum (certificated) Gross Landing Weight

MGTW – Maximum (certificated) Gross Takeoff Weight

Narrow body aircraft - i.e. B-727; B-737; DC-9; MD-80

Wide body aircraft - i.e. B747; B-777; DC-10; MD-11

SOUTHERN CALIFORNIA LOGISTICS AIRPORT RULES AND REGULATIONS

Attachment B

SCLA
SCHEDULE OF FINES

B.1   In most situations, a sanction or fine will be levied upon the employer of the individual involved in the infraction.  All sanctions or fines assessed will be added to the employer's basic monthly rent and subjected to late fees and default provisions as set forth in an Airport Tenant's land or facility sublease. Fines assessed to Airport Users who do not have a land or facility Sublease at SCLA, shall be paid before the Airport User is permitted to use the Airport again.  Continuous violation of these Rules and Regulations shall result in denial to use the Airport.

B.2   The following schedule should be regarded as a suggested schedule of fines. The Airport Director has the sole discretion and authority to levy fines, their amount and final disposition.

B.3   For minor infractions related to vehicle operations on the AOA such as:

| | |
|---|---|
| Speeding on the AOA. | $100.00 |
| Operating a vehicle on the AOA without: | |
|     Airport issued I'D Badge or drivers permit, appropriate markings or two-way radio communication with ATCT. | $100.00 |
| Runway Incursion. | $500.00 |
| Taxiway Incursion. | $300.00 |
| For negligence resulting in, and failure to correct, FOD | $100.00 |

B.4   For breeches in security such as:

| | |
|---|---|
| 1.  Leaving a perimeter gate unattended. | $100.00 |
| 2.  Failure to accompany non-badged person on the AOA. | $100.00 |
| 3.  Sharing a security code or vehicle gate card. | $300.00 |
| 4.  Bypassing Security. | $300.00 |
| 5.  Sharing a Personnel Identification Badge. | $300.00 |
| 6.  Losing a Personnel Identification Badge. | $100.00 |

B.5   For miscellaneous infractions of the Rules and Regulations such as:

| | |
|---|---|
| 1.  Smoking in a non-approved area. | $100.00 |
| 2.  Parking or storing aircraft in non-approved areas. | $100.00 |
| 3.  Performing aircraft maintenance in unauthorized areas. | $100.00 |
| 4.  Knowingly allow an unsafe condition to exist. | $300.00 |
| 5.  Bringing an unauthorized vehicle on the airport. | $100.00 |

B.6   A Federal Aviation Administration (FAA) or Transportation Security Administration (TSA) fine levied at the SCLA may be directly forwarded to a tenant if such tenant action is cause for the FAA/TSA penalty

SOUTHERN CALIFORNIA LOGISTICS AIRPORT RULES AND REGULATIONS

A second violation of the above listed offenses will result in the doubling of the applicable fine.  A third offense will result in the tripling of the applicable fine and a suspension of privileges until corrective actions are taken and documented.

EXHIBIT B
159

# EXHIBIT C

## FAA RULES AND REGULATIONS

## FAA RULES AND REGULATIONS

### LEASE PROVISIONS REQUIRED BY THE
### FEDERAL AVIATION ADMINISTRATION

The Tenant, for himself, his heirs, personal representatives, successors in interest, and assigns, as part of the consideration hereof, does hereby covenant and agree "as a covenant running with the land" that in the event facilities are constructed, maintained, or otherwise operated on the said property described in this lease, for, a purpose involving the provision of similar services or benefits, the Tenant shall maintain and operate such facilities and services in compliance with all other requirements imposed pursuant to Title 49, Code of Federal Regulations, DOT, Subtitle A, Office of the Secretary, Part 21, Nondiscrimination in Federally-Assisted Programs of the Department of Transportation Effectuation of Title VI of the Civil Rights Act of 1964, and as said Regulations may be amended.

The Tenant, for himself, his heirs, personal representative, successors in interest, and assigns, as part of the consideration hereof, does hereby covenant and agree "as a covenant running with the land" that: (1) no person on the grounds of race, color or national origin shall be excluded from participation in, denied the benefits of, or be otherwise subjected to discrimination in the use of said facilities, (2) that in the construction of any improvements on, over, or under such land and the furnishing of services thereon, no person on the grounds of race, color, or national origin shall be excluded from participation in, denied the benefits of, or otherwise be subject to discrimination, (3) that the Tenant shall use the premises in compliance with all other requirements imposed by or pursuant to Title 49, Code of Federal Regulations, Department of Transportation, Subtitle A, Office of the Secretary, Part 21, Nondiscrimination in Federally-Assisted Programs of the Department of Transportation-Effectuation of Title VI of the Civil Rights Act of 1964, and as said Regulation may be amended.

That in the event of breach of any of the above nondiscrimination covenants, Authority shall have the right to terminate the lease, and to reenter and repossess said land and the facilities thereon, and hold the same as if said lease had never been made or issued. This provision does not become effective until the procedures of 49 CFR Part 21 are allowed and completed including expiration of appeal rights.

Tenant shall furnish it's accommodations and/or services on a fair, equal and not unjustly discriminatory basis to all users thereof and it shall charge fair, reasonable and not unjustly discriminatory prices for each unit or service: PROVIDED THAT the Tenant may be allowed to make reasonable and nondiscriminatory discounts, rebates or other similar type of price reductions to volume purchasers.

Non-compliance with Provision 4 above shall constitute a material breach thereof and in the event of such non-compliance and Authority shall have the right to terminate the lease agreement, and the estate hereby created without liability therefore or at the election of the authority or the United Sates either or both said Governments shall have the right to judicially enforce provisions.

EXHIBIT B

Tenant agrees that it shall insert the above five provisions in any lease agreement, by which said Tenant grants a right or privilege to any person, firm or corporation to render accommodations and/or services to the public on the premises herein leased.

The Tenant assures that it will undertake an affirmative action program as required by 14 CFR Part 152, Subpart E, to insure that no person shall on the grounds of race, creed, color, national origin, or sex be excluded from participating in any employment activities covered in 14 CFR, Part 152, Subpart E. The Tenant assures that no person shall be excluded on these grounds from participating in or receiving the services or benefits of any program or activity covered by this subpart. The Tenant assures that it will require that it's covered sub-organizations provide assurance to the Authority, that they similarly will undertake affirmative action programs and that they will require assurances from their sub-organizations, as required by 14 CFR Part 152, Subpart E, to the same effect.

The Authority reserves the right to further develop or improve the landing area of the airport as it sees fit, regardless of the desires or view of the Tenant and without interference or hindrance.

The Authority reserves the right, but shall not be obligated to the Tenant to maintain and keep in repair the landing area of the airport and all publicly owned facilities of the airport, together with the right to direct and control all activities of the Tenant in this regard.

This lease shall be subordinate to the provisions and requirements of any existing or future agreement between the Authority and, the United States, relative to the development, operation and maintenance of the airport.

There is hereby reserved to the Authority, it's successors and assigns, for the use and benefit of the public, a right of flight for the passage of aircraft in the airspace above the surface of the premises herein leased. This public right of flight shall include the right to cause in said airspace any noise inherent in the operation of any aircraft used for navigation or flight through the said airspace or landing at, taking off from or operation on this airport.

Tenant agrees to comply with the notification and review requirements covered in Part 77 of the Federal Aviation Regulations in the event future construction of building is planned for the leased premises, or in the event of any planned modification or alteration of any present or future building or structure situated on leased premises.

The Tenant, by accepting this lease expressly agrees for itself, it's successors and assigns that it will not erect nor permit the erection of any structure or object nor permit the growth of any tree on the land leased hereunder which would violate the obstruction height limitations as set forth in Federal Air Regulation (FAR), Part 77. In the event the aforesaid covenants are breached, the Authority reserves the right to enter upon the land leased hereunder and to remove the offending obstruction, all of which shall be at the expense of the Tenant.

The Tenant, by accepting this lease, agrees for itself, its successors and assigns that it will not make use of the leased premises, in any manner which might interfere with the landing and taking off of aircraft from this airport or otherwise constitute a hazard. In the event the aforesaid covenant is breached, the Authority reserves the right to enter upon the premises hereby leased and causes the abatement of such interference at the expense of the Tenant.

EXHIBIT B

It is understood that nothing herein contained shall be construed to grant or authorize the granting of an exclusive right within the meaning of Section 308a of the Federal Aviation Act of 1958, as amended

This lease and all the provision hereof shall be subject to whatever right the United States Government now has or in the future may have or acquire, affecting the control, operation, regulation and taking over of said airport or the exclusive or non-exclusive use of the airport by the United States during time of war or national emergency.

EXHIBIT B
163



EXHIBIT B
164

Exhibit B

Compliance Certificate

Pratt & Whitney Line Maintenance Services, Inc.
411 Silver Lane
East Hartford, CT 06108
Attn: President

United Technologies Realty, Inc.
Nine Farm Springs Road
Farmington, CT 06032
Attn: Manager, Aerospace Real Estate

This Compliance Certificate is delivered to you pursuant to Section 2 of the First Amended and Restated Sublease, dated as of May 6, 2013 (as amended, restated, supplemented or otherwise modified from time to time (the "Sublease"), between Pratt & Whitney Line Maintenance Services, Inc. as "Sublandlord" and Southern California Aviation, LLC as "Subtenant". Unless otherwise defined in this Compliance Certificate, terms used herein have the meanings provided in the Sublease. The failure of Sublandlord to insist in any one or more Compliance Certificates upon certification of Subtenant's performance of any of the terms, covenants, or conditions of the Sublease shall not be construed as a waiver or relinquishment of the future performance of any such term, covenant, or condition. Subtenant hereby certifies and warrants from the Commencement Date to _____:

1.      To Subtenant's actual knowledge, which knowledge is limited to the actual knowledge of Craig Garrick, CEO of Subtenant, no Termination Event pursuant to Section 4 of the Sublease has occurred.

2.      Subtenant is not using the Subleased Premises in a manner inconsistent with Section 9 of the Sublease.

3.      Subtenant has not: (a) taken any action in whether by verbal or written agreement or (b) otherwise suffered or permitted any actions by third parties in contravention of Section 16 (Subleasing; Assignment).

4.      Subtenant continues to maintain all required insurance policies in accordance with Section 7 of the Sublease.

5.      Subtenant has not made any alterations, improvements or additions to the Subleased Premises except as otherwise approved in writing by Sublandlord..

6.      Subtenant is in Compliance with Sections 29 (Compliance with Environmental Laws) and 31(Compliance with Laws) of the Master Lease.

[SIGNATURE PAGE FOLLOWS]

Exhibit B

EXHIBIT B

165

IN WITNESS WHEREOF, Subtenant has caused this Certificate to be duly executed and delivered this _____ day of _____, _____.

**SOUTHERN CALIFORNIA AVIATION, LLC**


By: _____
Craig C. Garrick
Chief Executive Officer