TUCKER ELLIS LLP
Bart L. Kessel - SBN 125080
bart.kessel@tuckerellis.com
Ndubisi Ezeolu - SBN 256834
ndubisi.ezeolu@tuckerellis.com
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071-2223
Telephone:      213.430.3400
Facsimile:      213.430.3409

Attorneys for Defendants
PRATT & WHITNEY LINE
MAINTENANCE SERVICES, INC.,
UNITED TECHNOLOGIES
CORPORATION and UNITED
TECHNOLOGIES REALTY, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| COMAV, LLC, a California limited liability company; COMAV TECHNICAL SERVICES, LLC, a Delaware limited liability company, | Case No. 5:16-cv-01267-PSG-PLA |
| | Hon. Philip S. Gutierrez |
| Plaintiffs, | **DEFENDANTS PRATT & WHITNEY LINE MAINTENANCE SERVICES, UNITED TECHNOLOGIES CORPORATION AND UNITED TECHNOLOGIES REALTY'S NOTICE OF MOTION AND MOTION TO DISMISS THE SECOND, THIRD, FOURTH AND FIFTH CLAIMS IN PLAINTIFFS' FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| v. | |
| SOUTHERN CALIFORNIA LOGISTICS AIRPORT AUTHORITY, a joint powers authority; CITY OF VICTORVILLE, CALIFORNIA, a municipal corporation; PRATT & WHITNEY LINE MAINTENANCE SERVICES, INC., a Delaware corporation; UNITED TECHNOLOGIES CORPORATION, a Delaware corporation; PACIFIC AEROSPACE RESOURCES AND TECHNOLOGY, LLC, a Nevada limited liability company; UNITED TECHNOLOGIES REALTY, INC., a Connecticut corporation; and DOES 1 through 10, inclusive, | *[Filed concurrently with [Proposed] Order]* |
| | **FILING PERMITTED PER ORDER FILED ON JULY 25, 2016 (#39)** |
| Defendants. | Date:    October 3, 2016<br>Time:    1:30 p.m.<br>Place:   Courtroom 880 |

i

TUCKER ELLIS LLP
Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

1183761.1

## NOTICE OF MOTION AND MOTION TO DISMISS

**TO PLAINTIFFS COMAV LLC AND COMAV TECHNICAL SERVICES, LLC AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 3, 2016 at 1:30 p.m., or as soon thereafter as may be heard, in the courtroom of the Honorable Philip S. Gutierrez, located at 255 East Temple Street, Courtroom 880, Los Angeles, California, Defendants Pratt & Whitney Line Maintenance Services, Inc., United Technologies Corporation and United Technologies Realty, Inc. (collectively, "UTC Defendants") will and hereby move for an order dismissing plaintiffs Second, Third, Fourth and Fifth Claims for Relief.  In addition, the UTC Defendants join in the motion filed by Southern California Logistics Airport Authority and the City of Victorville on July 28, 2016 (Docket No. 40).

Each of Plaintiffs' claims against the UTC Defendants should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to plead facts sufficient to state a claim upon which relief can be granted.  The UTC Defendants' motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the pleadings and papers on file in this action, any matters upon which the Court may take judicial notice, the arguments of counsel, and any other matter that the Court may properly consider.

The UTC Defendants' motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on July 20, 2016.

DATED:  August 19, 2016                TUCKER ELLIS LLP


By:  */s/ Bart L. Kessel*
Bart L. Kessel
Attorneys for Defendants
PRATT & WHITNEY LINE
MAINTENANCE SERVICES, INC.,
UNITED TECHNOLOGIES
CORPORATION and UNITED
TECHNOLOGIES REALTY, INC.

ii

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................. 1

I.     INTRODUCTION .................................................................. 1

II.    BACKGROUND ................................................................. 2

III.    LEGAL STANDARDS ........................................................ 4

IV.    ARGUMENT ..................................................................... 5

    A.    Plaintiffs' Amended Complaint and "Group Pleading" Fail to Satisfy Rule 8 and Should Be Dismissed. ................................. 5

    B.    Plaintiffs' Claims for Interference with Prospective Economic Advantage Fail as a Matter of Law. ........................................... 5

        1.    Plaintiffs' Conclusory Allegations Are Insufficient to Support a Claim for Intentional Interference With Prospective Economic Advantage. ................................. 5

        2.    Plaintiffs Failed to Plead a Wrongful Act That Can Support Their Claim for Intentional Interference with Prospective Economic Advantage. ................................. 6

        3.    A Claim for Interference with Prospective Economic Advantage Cannot Be Based On an Alleged Breach of Contract. ................................................................ 9

        4.    Plaintiffs' Fail to Allege the Elements of a Claim for Negligent Interference with Prospective Business Advantage. ................................................................ 10

    C.    Plaintiffs' Claim for Breach of the Covenant of Good Faith and Fair Dealing fails as Matter of Law. ................................. 12

    D.    Plaintiffs' Claims for Declaratory and Injunctive Relief are Also Defective. ................................................................ 13

V.    CONCLUSION ................................................................. 16

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

i

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................................4

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................................4

*City of Oakland v. Comcast Corporation*,
  2007 WL 518868 (N.D. Cal. 2007)........................................................6, 7

*Comwest, Inc. v. American Operator Services, Inc.*,
  765 F.Supp. 1467 (C.D. Cal. 1991)...........................................................9

*Della Pena v. Toyota Motor Sales, US.A., Inc.*,
  11 Cal.4th 376 (1995) ..............................................................................10

*Dinh Nguy v. County of Yolo*,
  2014 WL 4446829 (E.D. Cal. 2014) ...................................................14, 15

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
  751 F.3d 990 (9th Cir. 2014) ....................................................................4

*Edejer v. DHI Mortgage Co.*,
  2009 WL 1684714 (N.D. Cal. 2009) ...................................................15, 16

*Englewood Lending Inc. v. G&G Coachella Inv., LLC*,
  651 F.Supp.2d 1141 (C.D. Cal. 2009)................................................14, 15

*First Advantage Background Servs. Corp. v. Private Eyes, Inc.*,
  2007 2007 WL 2572191 (N.D. Cal. 2007) ..................................................9

*Flores v. EMC Mortgage Co.*,
  997 F.Supp.2d 1088 (E.D. Cal. 2014) .......................................................5

*Gauvin v. Trombatore*,
  682 F. Supp. 1067 (N.D. Cal. 1988)..........................................................5

*Ginsberg v. Gamson*,
  205 Cal.App.4th 873 (2012) ....................................................................13

*Green v. Mansour*,
  474 U.S. 64 (1985) ..................................................................................14

*In re Countrywide Financial Corp. Mortgage-Backed Securities Litigation*,
  934 F.Supp.2d 1219 (C.D. Cal. 2013).......................................................4

TUCKER ELLIS LLP

Cleveland ● Columbus ● Denver ● Los Angeles ● San Francisco

ii

*Int'l Longshore & Warehouse Union v. ICTSI Oregon, Inc.*,
   15 F.Supp.3d 1075 (D. Or. 2014)..................................................................12

*Jones v. Community Redevelopment Agency*,
   733 F.2d 646 (9th Cir. 1984)........................................................................5

*JRS Products, Inc. v. Matsushita Elec. Corp. of America*,
   115 Cal.App.4th 168 (2004)........................................................................9

*KeyBank, N.A. v. Bingo, Coast Guard Official No. 1121913*,
   2011 WL 1559829 (W.D. Wash. 2011).......................................................15

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal.4th 1134 (2003)...........................................................................6, 7

*Levy v. State Farm Mut. Auto. Ins. Co.*,
   150 Cal.App.4th 1 (2007)..........................................................................12

*Lingad v. Indymac Fed. Bank*,
   682 F.Supp.2d 1142 (E.D. Cal. 2010).........................................................12

*Mangindin v. Wash. Mut. Bank*,
   637 F.Supp.2d 700 (N.D. Cal. 2009)..........................................................15

*McClain v. Octagon Plaza, LLC*,
   159 Cal.App.4th 784 (2008)......................................................................12

*McGraw-Edison Co. v. Preformed Line Prod. Co.*,
   362 F.2d 339 (9th Cir. 1966)......................................................................14

*National Medical Transp. Network v. Deloitte & Touche*,
   62 Cal. App.4th 412 (1998).......................................................................11

*North American Chemical Co. v. Superior Court*,
   59 Cal. App. 4th 764 (1997).......................................................................11

*PAI Corporation v. Integrated Science Solutions, Inc.*,
   2009 WL 1106809 (N.D. Cal. 2009).............................................................9

*Pub. Serv. Comm'n of Utah v. Wycoff Co.*,
   344 U.S. 237 (1952)..................................................................................14

*Rasidescu v. Midland Credit Mgmt., Inc.*,
   435 F.Supp.2d 1090 (S.D. Cal. 2006)...........................................................5

*Seattle Audubon Soc. v. Moseley*,
   80 F.3d 1401 (9th Cir. 1996)......................................................................14

*Sprewell v. Golden State Warriors*,
   226 F.3d 979 (9th Cir. 2001)........................................................................4

TUCKER ELLIS LLP
Cleveland ◆ Columbus ◆ Denver ◆ Los Angeles ◆ San Francisco

iii

*Steckman v. Hart Brewing, Inc.*,
143 F.3d 1293 (9th Cir. 1998) ........................................................................ 4

*Stevenson Real Estate Services, Inc. v. CB Richard Ellis Real Estate Services, Inc.*,
138 Cal.App.4th 1215 (2006) .......................................................................... 8

*Storek & Storek, Inc. v. Citicorp Real Estate, Inc.*,
100 Cal.App.4th 44 (2002) ............................................................................ 12

*Sybersound Records, Inc. v. UAV Corp.*,
517 F.3d 1137 (9th Cir. 2008) ........................................................................ 6

*Top Serv. Body Shop v. Allstate Ins. Co.*,
283 Or. 201, P.2d 1365 (1978) ...................................................................... 12

*Tuchsher Development Enterprises, Inc. v. San Diego Unified Port District*,
106 Cal.App.4th 1219 (2003) .......................................................................... 8

*Warwick v. University of the Pacific*,
2010 WL 2680817 (N.D. Cal. 2010) ............................................................... 6

**S**TATUTES

28 U.S.C. § 2201 .......................................................................................... 14

Fed. R. Civ. P. 12(b)(6) .................................................................................. 4

Federal Rule of Civil Procedure 8(a)(2) ......................................................... 5

TUCKER ELLIS LLP
Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

iv

1183761.1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

On June 14, 2016, Plaintiffs ComAv, LLC ("ComAv") and ComAv Technical Services LLC ("CTS"), two experienced and successful government contractors, filed their original complaint in this action seeking to enjoin the expiration of their sublease for Hangar 681 at the Victorville Airport.  Plaintiffs' complaint acknowledged they had known for more than two years that their sublease would expire on June 30, 2016, and that if they wanted to continue operations in their current location, they would need to negotiate a direct lease with defendant Southern California Logistics Airport Authority ("SCLAA").  Indeed, Plaintiffs spent more than one year bargaining with SCLAA over the financial terms of a new lease, and rejected several leases proposed by SCLAA claiming that the rental rate was too high.  After SCLAA re-let the premises to another entity that agreed to the rental terms that Plaintiffs claimed were too high, Plaintiffs amended their complaint claiming that they were treated unfairly and should be allowed to hold over indefinitely.

Defendant Pratt & Whitney Line Maintenance Services, Inc. ("PWLMS") is a party to this case simply because it is stuck in the middle of the leasing chain for Hangar 681 between CTS and SCLAA.  PWLMS leased Hangar 681 from the SCLAA beginning on September 2, 2005, and then subleased it to CTS's predecessor in interest, Southern California Aviation ("SCA"), at a time when PWLMS's sister company, SPC-AS Leasing, Inc. ("SPC-AS"), had an ownership interest in SCA.[1]  As part of a transaction in which SPC-AS sold its ownership interest in CTS, PWLMS subleased its interest in Hangar 681 to CTS.  The gravamen of Plaintiffs' claims against PWLMS is that PWLMS had a contractual duty to hold-over after its lease with SCLAA expired so that Plaintiffs

---

[1] PWLMS is a wholly-owned subsidiary of United Technologies Corporation ("UTC").  SPC-AS, which is now dissolved, was an indirect wholly-owned subsidiary of UTC.

TUCKER ELLIS LLP
Cleveland • Columbus • Denver • Los Angeles • San Francisco

could maintain possession of Hangar 681 on an indefinite month-to-month basis.[2] However, PWLMS's sublease with Plaintiffs contains no such promise and as a result, Plaintiffs' claims should be dismissed for the following reasons:

- **Interference with Prospective Economic Advantage (2nd and 3rd Claims for Relief):** Plaintiffs cannot state claims for interference with prospective economic advantage because PWLMS was under no duty or obligation to extend the term of its sub-lease with SCLAA past June 30, 2016. In addition, Plaintiffs have not alleged PWLMS acted with improper means or purpose when it vacated Hangar 681 at the end of its lease.

- **Breach of the Covenant of Good Faith and Fair Dealing (4th Claim for Relief):** Plaintiffs' claim for breach of the covenant of good faith and fair dealing is similarly flawed in that Plaintiffs' claim contradicts the express terms of its contract with PWLMS.

- **Declaratory and Injunctive Relief (5th and 6th Claims for Relief):** Plaintiffs' claims for declaratory and injunctive relief are classic "add on" claims that are duplicative, untimely, and ultimately would not resolve all of the issues between the parties.

## II.  BACKGROUND

PWLMS recites the facts as alleged in Plaintiffs' Amended Complaint, which are assumed to be true only for purposes of this motion to dismiss.

In September 2005, PWLMS entered into a lease with SCLAA for use of Hangar 681 at the Victorville airport. (1st Am. Comp., Ex. B, p. 100.) At the time PWLMS entered into this lease, SPC-AS had an ownership interest in SCA, the predecessor to plaintiff CTS.[3]

---

[2] Defendants UTC and United Technologies Realty, Inc. ("UTR") had no involvement with either of the Plaintiffs or the leasing of Hangar 681.

[3] After SPC-AS sold its interest in SCA in May 2013, SCA changed its name to ComAv Technical Services, LLC.

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

In addition, when PWLMS entered into this lease, SCLAA knew that Hangar 681 was going to be used by CTS.

In July 2011, PWLMS renewed its lease with SCLAA for Hangar 681 ("the Master Lease"). (1st Am. Compl., ¶ 25, Exh. B.) The Master Lease was for a term of 5 years and expired by its own terms on June 30, 2016. *Id.* In paragraph 26 of the Master Lease, SCLAA acknowledged and consented to subleases between PWLMS and CTS and/or ComAv. (1st Am. Compl., Ex. B, pp. 111-112.) And by a one-page letter agreement dated July 22, 2011, PWLMS did in fact sublease its rights to possession of Hangar 681 to CTS. (1st Am. Compl., Ex. E, p. 284.)

However, during the following years, disputes arose between SPC-AS and the other owner of CTS. These disputes ultimately led to SPC-AS's decision to sell its ownership interest in CTS in May 2013. (1st Am. Compl., ¶ 25.) PWLMS would have preferred to assign its rights under the Master Lease to CTS at that time, but SCLAA would not consent to the assignment. As a result, PWLMS and CTS entered into a more comprehensive First Amended and Restated Sublease for Hangar 681 ("CTS Sublease"). (1st Am. Compl., Ex. B.) Thus, for the balance of the term of the Master Lease, PWLMS was stuck as the lessee under the Master Lease and the lessor under the CTS Sublease.

Knowing that PWLMS would no longer want to be the middleman in the business relationship between them and SCLAA, Plaintiffs began discussions with SCLAA about entering into a direct lease for Hangar 681 in June 2015. (1st Am. Compl. ¶ 37.) As is more fully described in Plaintiffs' complaint, the discussions between Plaintiffs and SCLAA did not result in an agreement. (1st Am. Compl. ¶¶ 37-49.) However, what is also disclosed in Plaintiffs' complaint is that at no time prior to commencement of this action did either of the Plaintiffs ask PWLMS if it would extend the term of the Master Lease. (1st Am. Compl. ¶¶ 24-25, 35-55.) Indeed, PWLMS's first notice of the dispute between Plaintiffs and SCLAA was when it was served with a copy of the summons and complaint in this action.

**MOTION TO DISMISS OF PWLMS, UTC AND UTR**
**CASE NO. 5:16-CV-01267-PSG-PLA**

1183761.1

## III.  LEGAL STANDARDS

Rule 12(b)(6) requires that a plaintiff allege sufficient facts to support a claim that would entitle the plaintiff to relief.  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss under Rule 12(b)(6), the plaintiff's complaint must allege "facts to state a claim that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Moreover, although the Court accepts as true well-pleaded facts, it is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at p. 555 (quotation omitted); *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995-96 (9th Cir. 2014) (*quoting Iqbal*, 556 U.S. at 679 (allegations that "are no more than conclusions, are not entitled to the assumption of truth")).  "Therefore, to survive a motion to dismiss, complaint must provide more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'"  *Iqbal*, 556 U.S. at p. 678.

But "a plaintiff can … plead himself out of a claim by including unnecessary details contrary to his claim."  *In re Countrywide Financial Corp. Mortgage-Backed Securities Litigation*, 934 F.Supp.2d 1219, 1227 (C.D. Cal. 2013) *citing Sprewell v. Golden State Warriors*, 226 F.3d 979, 988 (9th Cir. 2001).  Where an allegation conflicts with the terms of an attached document or a document incorporated into the complaint by virtue of the plaintiff's allegations, the document controls.  *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998) ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint.")  This rule is aimed at disposing of cases involving contracts or situations where this Court can take judicial notice of matters demonstrating that the plaintiff cannot state a claim for relief.

Lastly, there is no point in allowing a plaintiff an opportunity to amend claims where such an amendment would be futile.

1183761.1

## IV.  ARGUMENT

### A.  Plaintiffs' Amended Complaint and "Group Pleading" Fail to Satisfy Rule 8 and Should Be Dismissed.

Under Federal Rule of Civil Procedure 8(a)(2), "[a] plaintiff suing multiple defendants '**must allege the basis of his claim against <u>each</u> defendant to satisfy Federal Rule of Civil Procedure 8(a)(2)**, which requires a short and plain statement of the claim to put defendants on sufficient notice of the allegations against them.'" *Flores v. EMC Mortgage Co.*, 997 F.Supp.2d 1088, 1103 (E.D. Cal. 2014) (emphasis added) (*quoting Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988)).  This means that "every complaint must . . . state the elements of each claim <u>against each defendant plainly and succinctly</u>." *Rasidescu v. Midland Credit Mgmt., Inc.*, 435 F.Supp.2d 1090, 1098-99 (S.D. Cal. 2006) (emphasis added) (*citing Jones v. Community Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984)).

Plaintiffs' Amended Complaint contains improper "group pleading" in violation of Rule 8.  PWLMS is the only party who had a contract with Plaintiffs.  The only allegations Plaintiffs make regarding Defendants UTC and UTR are their states of organization, place of business, and purported relationships with each other.  (1st Am. Compl. ¶¶ 18, 21.)  This is insufficient to state any claims against UTC and UTR, and therefore all claims against both of these defendants should be dismissed.

### B.  Plaintiffs' Claims for Interference with Prospective Economic Advantage Fail as a Matter of Law.

#### 1.  Plaintiffs' Conclusory Allegations Are Insufficient to Support a Claim for Intentional Interference With Prospective Economic Advantage.

To state a claim for intentional interference with economic relations (Plaintiffs' Second Claim for Relief) a plaintiff must allege: (1) the existence of an economic relationship between the plaintiff and some third party, with the probability of future

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant. *Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal.4th 1134, 1153 (2003); *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1152 (9th Cir. 2008). Plaintiffs have failed to sufficiently allege any of these elements.

Plaintiffs only assert in conclusory fashion that PWLMS "interfered" with their economic relationships by:

    i.    "failing and refusing to negotiate with Plaintiffs for a continuation of the CTS Sublease" (1st Am. Compl., ¶93(a));[4]

    ii.    "attempting to force Plaintiffs to immediately vacate Hangar 681" (1st Am. Compl., ¶93(b)); and

    iii.    "contacting and attempting to intimidate Plaintiffs' customers and contractors". (1st Am. Compl., ¶94).

However, there are no factual allegations anywhere in Plaintiffs' Amended Complaint that support any of these conclusory statements.

### 2.    Plaintiffs Failed to Plead a Wrongful Act That Can Support Their Claim for Intentional Interference with Prospective Economic Advantage.

In addition, Plaintiffs must plead and prove that PWLMS's acts were "wrongful by some legal measure other than the fact of the interference itself." *Warwick v. University of the Pacific*, 2010 WL 2680817, at p. *10 (N.D. Cal. 2010); *City of Oakland v. Comcast Corporation*, 2007 WL 518868, at p. *8 (N.D. Cal. 2007); *Korea Supply Co.*, *supra*, 29 Cal.4th at pp. 1153-54. This element is required because the act of interfering with

---

[4] Indeed, Plaintiffs do not even allege that they asked PWLMS to continue the CTS sublease (because they did not), so PWLMS cannot possibly have refused to negotiate such continuation.

1183761.1

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

another person's prospective business relationship is **not**, in itself, improper.  *Korea Supply*, 29 Cal.4th at p. 1154; *City of Oakland, supra*, 2007 WL 518868, at p. *8.  The tort of intentional interference with prospective economic advantage is "not intended to punish individuals or commercial entities for their choice of commercial relationships or their pursuit of commercial objectives, unless their interference amounts to independently actionable conduct."  *Korea Supply*, 29 Cal.4th at p. 1158.

In *City of Oakland,* the court granted a Rule 12(b)(6) motion where, as here, the plaintiff did not allege conduct that was wrongful by some legal measure other than the fact of the interference itself to support its claim of interference with prospective business advantage.  The plaintiff in *City of Oakland* asserted claims for breach of contract, misrepresentation, interference with contract, and interference with prospective economic advantage based on allegations that the defendant provided false assurances and directed its subsidiary to reject a franchise renewal ordinance.  *Id.* at pp. *8-9.  The court permitted the plaintiff to maintain its claim for interference with contract, but dismissed the claim for interference with prospective economic relations because the plaintiff did not plead sufficient facts to establish the independent wrongfulness of the alleged interference, noting as follows:

> "The City fails to plead that Comcast Corp. engaged in an independently wrongful act to deprive the City of its prospective economic advantage.  The only action that the City alleges is that Comcast Corp. directed Comcast LLC to reject the franchise renewal ordinance, which is also the act of interference itself.  Although that act may be sufficiently wrongful to state a claim for interference of contract, the act of interference alone does not state a claim for interference with prospective economic advantage in the absence of a contract.  The City's only mention of the independent wrongful act requirement appears in footnote six of its opposition, where it asserts

TUCKER ELLIS LLP

Cleveland • Columbus • Denver • Los Angeles • San Francisco

7

1183761.1

that it has met its burden 'by showing that Comcast Corporation engaged in negligent misrepresentation.'  As stated above, the 'negligent misrepresentation' that the City plead was that Comcast Corp. failed to fulfill its promise that it would cause Comcast LLC to abide by the terms of the MOU.  That allegation is irrelevant to the act of subsequently encouraging the repudiation of those contracts, which is what is at issue here."

*Id.* at pp. *8-9.  *See also Stevenson Real Estate Services, Inc. v. CB Richard Ellis Real Estate Services, Inc.,* 138 Cal.App.4th 1215, 1224 (2006) (affirming an order that granted motion for judgment on the pleadings as to claim for interference with prospective economic relations because the plaintiffs failed to allege facts which could establish that the purported wrongful act actually violated the law);  *Tuchsher Development Enterprises, Inc. v. San Diego Unified Port District,* 106 Cal.App.4th 1219, 1243 (2003) (affirming order that granted motion to strike claim for interference with prospective economic advantage because conduct which was alleged to be "wrongful" and "anticompetitive" did not constitute a violation of statute, tort, or other independently actionable conduct).

Here, as in the foregoing cases, Plaintiffs have failed to plead any fact which could establish that PWLMS interfered with Plaintiffs' prospective economic relationships by engaging in any unlawful act that is separate from the interference itself.  Plaintiffs merely allege that PWLMS failed to assist it in obtaining a direct lease for Hangar 681 with SCLAA.  Plaintiffs have not alleged - and cannot allege - that PWLMS engaged in any unlawful conduct to support this claim, separate and apart from the ostensible "interference" itself.

Accordingly, Plaintiffs' second claim for intentional interference with prospective economic advantage should be dismissed.

8

### 3.   A Claim for Interference with Prospective Economic Advantage Cannot Be Based On an Alleged Breach of Contract.

California courts have held that allegations amounting to breach of contract are insufficient, as a matter of law, to establish the "independently wrongful" element of a claim for intentional interference with prospective business advantage.  *See PAI Corporation v. Integrated Science Solutions, Inc.,* 2009 WL 1106809, at pp. * 15-16 (N.D. Cal. 2009); *First Advantage Background Servs. Corp. v. Private Eyes, Inc.,* 2007 2007 WL 2572191, at p. *2 (N.D. Cal. 2007); *Comwest, Inc. v. American Operator Services, Inc.,* 765 F.Supp. 1467, 1472 (C.D. Cal. 1991); *JRS Products, Inc. v. Matsushita Elec. Corp. of America,* 115 Cal.App.4th 168, 181-183 (2004).

In *JRS Products, Inc., supra,* 115 Cal.App.4th at p. 182, the court rejected an interference with prospective economic advantage claim by a plaintiff because it was based on allegations of breach of contract.  The plaintiff alleged that the defendant had wrongfully terminated the parties' dealership agreement.  After a jury found in favor of the plaintiff on its claim for intentional interference with prospective economic advantage, the defendant appealed, arguing that a party to a contract cannot convert a breach of contract claim into one sounding in tort by alleging that the breach was "wrongful." *Id.* at p. 179.  The Court of Appeal agreed, reasoning that because the interference claim was based merely on the defendant's alleged wrongful termination of the parties' franchise contract, the contract claim was not actionable as an interference with prospective economic advantage, noting as follows:

> "Although superficially seductive, if accepted, the argument
> would convert any wrongful termination of a franchise
> agreement into a tort claim.  [] JRS cites no authority to support
> its novel proposition that the breach of a franchise agreement
> exposes the franchisor to tort liability . . . Although JRS would
> have us expand tort liability to allow for a tortious breach of

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

9

contract as long as the breach violates a statute, it fails to consider the dangers implicit in such a radical departure from well-established limits to commercial recovery. 'Because ours is a culture firmly wedded to the social rewards of commercial contests, the law usually takes care to draw lines of legal liability in a way that maximizes areas of competition free of legal penalties'."

*Id.* at p. 182 (quoting *Della Pena v. Toyota Motor Sales, USA, Inc.,* 11 Cal.4th 376, 386 (1995)).

Here, Plaintiffs have improperly attempted to convert their claim for breach of contract into a tort claims for interference with prospective economic advantage. Indeed, Plaintiffs' claims for interference with prospective economic advantage are based on exactly the same facts that support their fourth claim for relief for breach of the covenant of good faith and fair dealing, which sounds in contract. (1st Am. Compl., ¶¶ 92-95, 104-109). Under the foregoing authorities, these allegations, which merely amount to a purported breach of contract, are insufficient to support a claim for intentional interference with prospective economic advantage as a matter of law.

### 4. Plaintiffs' Fail to Allege the Elements of a Claim for Negligent Interference with Prospective Business Advantage.

Plaintiffs' claim for negligent interference with prospective business advantage, which is based on the same allegations as their claim for intentional interference with prospective business advantage, fails for the same reasons. "The tort of negligent interference with prospective economic advantage is established where a plaintiff demonstrates that (1) an economic relationship existed between the plaintiff and a third party which contained a reasonably probable future economic benefit or advantage to plaintiff; (2) the defendant knew of the existence of the relationship and was aware or should have been aware that if it did not act with due care its actions would interfere with

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

this relationship and cause plaintiff to lose in whole or in part the probable future economic benefit or advantage of the  relationship; (3) the defendant was negligent; and (4) such negligence caused damage to plaintiff in that the relationship was actually interfered with or disrupted and plaintiff lost in whole or in part the economic benefits or advantage reasonably expected from the relationship." *North American Chemical Co. v. Superior Court,* 59 Cal. App. 4th 764, 786 (1997).

Again, Plaintiffs do not identify any actual existing or future economic relationship with which PWLMS interfered, nor do they aver any independently wrongful conduct by PWLMS.  *See National Medical Transp. Network v. Deloitte & Touche,* 62 Cal.App.4th 412, 438-39 (1998) ("independently wrongful" element applies to tort of negligent interference with prospective economic advantage).  In addition, Plaintiffs have not averred any facts supporting the bare conclusion that PWLMS owed any duty of care to them, a necessary element of a claim for negligent interference.

Plaintiffs' conclusory claim that PWLMS's purpose or motivation was improper is also insufficient to maintain its negligent interference claim.  As PWLMS explained to Plaintiff in its June 1, 2016 letter, the lease with SCAA was due to expire on June 30, 2016, and it did not intend to renew that lease.  As a result, Plaintiffs' underlying sublease would expire on that same date and it and any of its subtenants would need to vacate the premises by that date as well.  (1st Am. Compl., Ex. C.)  Plaintiffs were well aware that PWLMS would not be seeking to renew its lease with SCLAA and, because of that awareness, had been attempting to negotiate a direct lease with SCAA since June 10, 2015.  (1st Am. Compl., ¶37).  Plaintiffs contend that PWLMS did not renew the CTS Sublease for its own economic benefit, but never identify what that economic benefit was.  (1st Am. Compl., ¶75).  But even if this were true, for the purposes of this motion, Plaintiffs' claim would still fail because "[i]t is not improper for a defendant to interfere with a contract in a manner 'wholly consistent with [its] pursuit of its own business purposes as it [sees] them.'" *Int'l Longshore & Warehouse Union v. ICTSI Oregon, Inc.,*

11

TUCKER ELLIS LLP

Cleveland ● Columbus ● Denver ● Los Angeles ● San Francisco

15 F.Supp.3d 1075, 1108 (D. Or. 2014) (*quoting Top Serv. Body Shop v. Allstate Ins. Co.*, 283 Or. 201, 212, 582 P.2d 1365 (1978)).  And here, PWLMS own business purpose was to extricate itself as the middleman between Plaintiffs and SCLAA.  Such intent is not tortious.

**C.      Plaintiffs' Claim for Breach of the Covenant of Good Faith and Fair Dealing fails as Matter of Law.**

The implied covenant of good faith and fair dealing cannot contradict the express terms of a contract.  *Storek & Storek, Inc. v. Citicorp Real Estate, Inc.,* 100 Cal.App.4th 44, 55 (2002) (citing *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.,* 2 Cal.4th 342, 374 (1992)).  Further, because "the implied covenant operates to protect the express covenants or promises of [a] contract ... [it] cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of [the parties'] agreement." *McClain v. Octagon Plaza, LLC,* 159 Cal.App.4th 784, 805 (2008).

"Facts alleging a breach, like all essential elements of a breach of contract cause of action, must be pleaded with specificity."  *Levy v. State Farm Mut. Auto. Ins. Co.,* 150 Cal.App.4th 1, 5 (2007).  Thus, to state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must identify the specific contractual provision that was frustrated. *See Lingad v. Indymac Fed. Bank,* 682 F.Supp.2d 1142, 1154 (E.D. Cal. 2010).

Plaintiff alleges that PWLMS breached the covenant of good faith and fair dealing by:

> "interfering with Plaintiffs' current and future business
> relationships through, among other things, Defendant Pratt's
> notice to vacate Hangar 681, even though the CTS and Pratt
> Subleases expressly allow Plaintiffs [sic] continued
> possession on a month-to-month basis at 150% of the current

**MOTION TO DISMISS OF PWLMS, UTC AND UTR
CASE NO. 5:16-CV-01267-PSG-PLA**

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

1183761.1

lease rate until the issues raised by Defendants are resolved".

(1st Am. Compl., ¶ 108.)

This ignores the express provision in the CTS Sublease that required plaintiff CTS to surrender Hangar 681 "upon termination of the Sublease Term".  Specifically, Paragraph 12 of the CTS Sublease provides:

> "Upon the expiration of the Sublease term … ***Subtenant shall surrender the Sublease Premises*** in the same condition as received, ordinary wear and tear excepted …."

(1st Am. Compl., Ex. B at ¶12, p. 94 (emphasis added).)

Thus, since Plaintiffs' claim seeks to negate an express term of the CTS Sublease, it fails as a matter of law.

Further, the logical consequence of Plaintiffs' arguments and allegations would result in a situation in which they would get to stay in the Hangar in perpetuity regardless of the term of the Lease and the other express terms of the Sublease and Master Lease. Because perpetual lease provisions potentially implicate the rule against perpetuities, such provisions are disfavored unless the parties' intent to create the right is explicit and clear in the lease.  See *Ginsberg v. Gamson*, 205 Cal.App.4th 873, 884-885, 893 (holding that an agreement "must clearly demonstrate the parties' intention" in order for it to be construed as including a right to perpetual renewals). Here, neither the Master Lease nor the Sublease clearly demonstrate the parties' intention to create a perpetual lease.  Indeed, the Sublease and Master Lease indicate demonstrate the opposite.  Thus, Plaintiffs' breach of the covenant of good faith and fair dealing claim also fails as a matter of law for this well settled independent ground.

**D.    Plaintiffs' Claims for Declaratory and Injunctive Relief are Also Defective.**

As to PWLMS, Plaintiffs' fifth claim is nothing more than an improper, duplicative declaratory judgment claim, as evidenced by the relief sought by Plaintiffs,

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

13

i.e., a judicial declaration that "Pratt has a contractual duty of good faith to consider the impacts of its notice to vacate, and to use all possible means within the scope of the underlying sublease between Defendants Pratt and Airport Authority, including provision expressly authorizing Plaintiffs' continued possession, to mitigate Plaintiffs' damages until such time as the issues raised by Defendants can be resolved by this Court."  (1st Am. Compl., ¶ 112.)  Viewed in this light, Plaintiffs' claim for declaratory relief fails for multiple reasons.

The Declaratory Judgment Act provides that a court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  *McGraw-Edison Co. v. Preformed Line Prod. Co.*, 362 F.2d 339, 342 (9th Cir. 1966) (*citing* 28 U.S.C. § 2201); *Green v. Mansour*, 474 U.S. 64, 72 (1985) (*quoting Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952)).  When presented with a claim for declaratory relief (such as that being requested here), courts consider whether the judgment "will serve a useful purpose in clarifying or settling the issue" and "if it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceedings."  *Id.*  Claims for declaratory relief are routinely dismissed where they fail to meet these requirements or are duplicative of other claims or relief.  *See id.*; *see also Dinh Nguy v. County of Yolo*, 2014 WL 4446829, at p. *8 (E.D. Cal. 2014) (dismissing declaratory judgment claim as improper and duplicative); *Englewood Lending Inc. v. G&G Coachella Inv., LLC*, 651 F.Supp.2d 1141, 1147 (C.D. Cal. 2009) (same).

The Ninth Circuit has described a declaratory judgment action as offering "a means by which rights and obligations may be adjudicated in cases brought by any interested party involving an actual controversy ***that has not reached a stage at which either party may seek a coercive remedy and in cases where a party who could sue for coercive relief has not yet done so***."  *Seattle Audubon Soc. v. Moseley,* 80 F.3d 1401, 1405 (9th Cir. 1996) (quotations omitted) (emphasis added).  Accordingly, claims for

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

declaratory relief seeking to address purely past conduct are routinely dismissed.  *See, e.g., Edejer v. DHI Mortgage Co.*, 2009 WL 1684714, at p. *11 (N.D. Cal. 2009 ("Plaintiff's declaratory relief cause of action fails because she seeks to redress past wrongs rather than a declaration as to future rights.").  Such claims are also regularly dismissed where "an adequate remedy exists under some other cause of action." *Mangindin v. Wash. Mut. Bank,* 637 F.Supp.2d 700, 707 (N.D. Cal. 2009).

Plaintiffs' claim for declaratory relief is properly dismissed for all of the reasons set forth above.  In addition, this claim is merely a regurgitation of Plaintiffs' flawed claims for interference with prospective economic advantage and breach of the covenant of good faith and fair dealing.  These claims, much like this one, are premised upon a finding by this Court that PWLMS had a contractual duty to extend the term of the CTS Sublease past June 30, 2016.  (*Cf.* 1st Am. Comp., ¶93 *with* ¶ 112.)  All of the Plaintiffs' claims concern the term of the CTS Sublease, Plaintiffs' purported compliance with the CTS Sublease, PWLMS's obligations under the CTS Sublease, and Plaintiffs' purported entitlement to relief under the CTS Sublease.  And the fact that Plaintiffs' substantive claims are flawed does not mean that the declaratory judgment claim should stand. *KeyBank, N.A. v. Bingo, Coast Guard Official No. 1121913*, 2011 WL 1559829, at p. *9 (W.D. Wash. 2011) ("To the extent that defendants seek declaratory judgment as to the success of their other causes of action (some of which have already been found lacking in merit), the claim is duplicative and shall be dismissed.")  The duplicative nature of these counts also confirms that the declaratory judgment claim standing alone serves no useful purpose. *See Dinh Nguy*, 2014 WL 4446829, at p *8; *Englewood Lending Inc.*, 651 F.Supp.2d at p. 1147.

Plaintiffs' declaratory relief claim is further flawed and unnecessary because it is based purely upon conduct preceding the expiration of the CTS Sublease, relies on language found in a contract that no longer exists and has been terminated, and the time has passed for Plaintiffs to assert claims for declaratory relief based on such past conduct.

15

1183761.1

1   *Edejer, supra,* 2009 WL 1684714, at p. *11.  Having this Court opine on the PWLMS's

2   duties under the now-expired CTS Sublease serves no purpose since Plaintiffs are no

3   longer a sub-tenant of PWLMS and the now- expired CTS Sublease is no longer in effect.

4   **V.     CONCLUSION**

5        For all of the foregoing reasons, Defendants Pratt & Whitney Line Maintenance

6   Services, Inc., United Technologies Corporation and United Technologies Realty, Inc.

7   respectfully request that this Court enter an order dismissing all claims against them with

8   prejudice.

9

10  DATED:  August 19, 2016                    TUCKER ELLIS LLP

11

12                                             By:  */s/ Bart L. Kessel*
                                                    Bart L. Kessel
13                                                  Attorneys for Defendants
                                                    PRATT & WHITNEY LINE
14                                                  MAINTENANCE SERVICES, INC.,
                                                    UNITED TECHNOLOGIES
15                                                  CORPORATION and UNITED
                                                    TECHNOLOGIES REALTY, INC.
16

17

18

19

20

21

22

23

24

25

26

27

28

TUCKER ELLIS LLP
Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

1183761.1