Andre de Bortnowsky, City Attorney (SB# 119676)
Andre@gdblawoffices.com
Michelle McCarron, Deputy City Attorney (SB# 237031)
mmccarron@gdblawoffices.com
Charles R. Green, Deputy City Attorney (SB# 068331)
cgreen@gdblawoffices.com
GREEN DE BORTNOWSKY, LLP
23801 Calabasas Road, Suite 1015
Calabasas, California 91302
Telephone:   (818) 704-0195
Facsimile:   (818) 704-4729

Attorneys for Defendants
*CITY OF VICTORVILLE &*
*SOUTHERN CALIFORNIA LOGISTICS AIRPORT AUTHORITY*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT COURT OF CALIFORNIA

| COMAV, LLC, a California limited liability company; COMAV TECHNICAL SERVICES, LLC, a Delaware limited liability company, <br><br> Plaintiffs, <br><br> v. <br><br> SOUTHERN CALIFORNIA LOGISTICS AIRPORT AUTHORITY, a joint powers authority; CITY OF VICTORVILLE, CALIFORNIA, a municipal corporation; PRATT & WHITNEY LINE MAINTENANCE SERVICES, INC., a division of United Technologies Corporation; UNITED TECHNOLOGIES CORPORATION, a Delaware corporation; PACIFIC AEROSPACE RESOURCES AND TECHNOLOGY, LLC, a Nevada limited liability company; UNITED TECHNOLOGIES REALTY, INC., a Connecticut corporation; and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No. 5:16-cv-01267 PSG (PLAx) <br><br> **NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. SECTIONS 12(b)1 FOR LACK OF SUBJECT MATTER JURISDICTION; 12(b)6 FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED; AND MOTION TO STRIKE PORTIONS OF COMPLAINT PURSUANT TO FED. R. CIV. P. 12(f)2; REQUEST FOR STAY OF PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS** <br><br> Action filed: 6/14/2016 <br> Trial Date:   None |

# **TABLE OF CONTENTS**

Page No.

NOTICE OF MOTION AND MOTION TO DISMISS & STRIKE THE FIRST AMENDED COMPLAINT..............................................................................2

I.   INTRODUCTION........................................................................2

II.  STATEMENT OF FACTS..........................................................4

III. ARGUMENT...............................................................................8

    A.   This Court lacks subject matter jurisdiction, because the Federal Aviation Administration has primary jurisdiction over this matter........8

        1.  Background on the Airport Improvement Program, Grant Assurances and the Federal Aviation Administration's Enforcement Scheme.............................................................8

        2.  This Court cannot exercise jurisdiction over Plaintiff's claims, because they allege the claims are based upon violations of the grant assurances, and the FAA has exclusive jurisdiction over such matters..................................................................12

        3.  This Court lacks supplemental jurisdiction over state law based claims..................................................................14

        4.  Plaintiff's efforts to plead around the FAA's regulatory and enforcement scheme fail.............................................15

    B.   Plaintiff's fail to state claims upon which relief can be granted.........16

        1.  Plaintiff's fail to state claim for a violation of 42 U.S.C. 1983 for a deprivation of a property right and violation of its substantive and procedural due process rights.........................................17

        2.  Plaintiff's fail to state a claim based upon state law upon which relief can be granted.............................................20

        3.  The Court must dismiss Plaintiff's causes for Declaratory and Injunctive Relief.....................................................23

    C.   The Allegations regarding the SCLAA and the City of Victorville's lawsuit with the Securities and Exchange Commission should be stricken from the Complaint...................................................24

    D.   If the Court does not dismiss the First Amended Complaint, Defendant herein requests that the proceedings be stayed pending the outcome of the FAA's investigation of Plaintiff's PART 16 complaint filed on June 6, 2016..................................................................25

IV. CONCLUSION..........................................................................25

i

# TABLE OF AUTHORITIES

Page No.

## Cases

*Airborne Tactical Advantage Co. v. Peninsula Airport Comm'n,*
No. 05-cv-166 (2006)……………………………………..…..…………....14, 20

*Anderson v. Warner,*
451 F.3d 1063, 1067 (2006)……………………..……………………………...…..17

*Arrow Airways v. Dade Cty.,*
749 F.2d 1489, 1491 (1985)………………………..……………………………10

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)……………………………………..…………………17

*Astra USA, Inc. v. Santa Clara County,*
563 U.S. 110, 114 (2011)………………………………………..……....18, 21

*Audette v. International Longshoremen's and Warehousemen's Union,*
195 F.3d 1107, 1111 n.3 (1999)……………………………………..…………...23

*Aviation Center, Inc. v. City of Ann Arbor,*
FAA Docket No. 16-05-01 (2005)………………………………..…………10

*Baker v. McCollan,*
443 U.S. 137, 144 n.3 (1979)………………………………..…………………....17

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)…………………………………..…………………..17

*Blank v. Kirwan,*
39 Cal.3d. 311, 330 (1985)……………………………………………...22

*Bodin v. Cty. of Santa Clara,*
No. 14-cv-04158 (2015)……………………………..………….............................11

*Bowling Green & Warrant City Airport Bd. v. Martin Land Dev. Co., Inc.,*
561 F.3d 556, 560-61 (2009)…………………………..…………………....10

ii

## Cases Cont'd

*Campbell v. Rayburn,*
129 Cal.App.2d 232, 234-235 (1954)……………………………………….….…...22

*Caviness v. Horizon Cmty. Learning Ctr., Inc.,*
590 F.3d 806, 812 (2010)…………………………………..……………………17

*Chapman v. Houston Welfare Rights Org.,*
441 U.S. 600, 618 (1979)…………………………………………………….…17

*City and County of San Francisco v. W. Airlines, Inc.,*
204 Cal.App.2d 109, 125-26 (1962)……………………………………………19

*City of Rancho Palos Verdes, Cal. v. Abrams,*
544 U.S. 113, 120 (2005)…….................................................................18

*City of Rochester v. Bond,*
603 F.2d 927, 934 (1979).....…………………………………………………13

*Connick v. Thompson,*
53 U.S. 51, 60 (2011)…………………………….…………………………...18

*Consol. Servs. Eng'rs & Constructors, Inc. v. City of Palm Springs,*
FAA Docket No. 16-03-05 (2004)…………………………………………....10

*Crumpton v. Gates,*
947 F.2d 1418, 1420 (1991)…………………………….………………………17

*Desert Wings Jet Ctr. V. City of Redmond,*
FAA Docket No. 16-09-07 (2010)……………………………………...…….10, 20

*Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton,*
No. 15-cv-2246 (2015)…………………………………..……………....12, 20

*Four T's Inc. v. Little Rock Mun. Airport Comm'n,*
108 F.3d 909, 915 (1997)…………………………………….……….....10, 19

*Gibson v. United States,*
781 F.2d 1334, 1338 (1986)…………………………….…………………17

iii

1

## Cases Cont'd

2
3
*Graham v. Connor,*
490 U.S. 386, 393-94 (1989)……………………..…………………………....17

4
5
*Hill Aircraft & Leasing Corp. v. Fulton Cty.,*
561 F.Supp.667, 672, aff'd 729 F.2d 1467 (1984)………………..……….....11

6
7
*Interface Group, Inc. v. Mass. Port Auth.,*
816 F.2d 9, 15 (1987)……………………..……………………...10, 19, 23

8
9
*Kokkonen v. Guardian Life Ins. Co. of Am.,*
511 U.S. 375, 377(1994)………………………..…………………………..12

10
11
*Long v. Cty. of Los Angeles,*
442 F.3d 1178, 1185 (2006)…………………..……………………………18

12
13
*Martin v. Port of Anacorte,*
FAA Docket No. 16-02-03 (2003)……………………………………….....10

14
15
*McCasland v. City of Castroville,*
514 F.App'x 446, 448-49 (2013)……………………………….……………19

16
17
*McGraw-Edison Co. v. Preformed Line Products Co.,*
362 F.2d 339, 342 (1966)……………………………………………………24

18
19
*Miree v. United States,*
249 S.E.2d 573, 579-80 (1978)…………………………….………………21

20
21
*New England Legal Found. v. Mass. Port Auth.,*
883 F.2d 168, 169 (1989)…………………………………………….......9, 20

22
23
*Nw. Airlines, Inc. v. Cty. Of Kent,*
955 F.2d 1054, 1058-59 (1992)…………………………………………10, 19

24
25
*Ortez v. Wash. Cty., Or.,*
88 F.3d 804, 810 (1996)…………………..……………………………...18

26
27
*Pistor v. Garcia,*
791 F.3d 1104, 1114 (2015)……………………………...……………………18

28

1

## **Cases Cont'd**

2

3

*Ricks v. City of Winona,*
858 F.Supp.2d 682, 688 (2012)……………………………………..………………8, 14

4

5

*San Francisco v. W. Air Lines, Inc.,*
204 Cal.App.2d 105, 125-26 (1962)………………….…………………………18

6

7

*Sandoval v. Las Vegas Metro. Police Dep't.,*
756 F.3d 1154, 1167-68 (2014)……………………………….…………………18

8

9

*Santa Monica Airports Ass'n. v. Santa Monica,*
481 F.Supp. 927, 946 (1979)……………………………………..…………11, 19, 21

10

11

*Shamsiam v. Atlantic Richfield Co.,*
107 Cal.App.4th 967, 984 (2003)……………………………………..…………23

12

13

*Stanislaus Food Prods. Co. v. USS-POSCO Indus.,*
782 F.Supp.2d 1059, 1064 (2011)………………………………..……………17

14

15

*Town of Castle Rock v. Gonzales,*
545 U.S. 784, 767-68 (2005)…………………………………..……………19

16

17

*W. Airlines v. Port Auth. Of N.Y. & N.J.,*
817 F.2d 222, 225 (1988)………………………………..………………10

18

19

*Whittlestone, Inc. v. Handi-Craft Co.,*
618 F. 3d 970 (2010)………………………………………..………………...24

20

21

*WMX Techs., Inc. v. Miller,*
197 F.3d 367, 372 (1999)………………………………….……………18

22

23

## **Statutes**

24

25

28 U.S.C. § 1331…………………………………………………….....12

26

28 U.S.C. § 1343…………………………………………………..12

27

28 U.S.C. § 1367…………………………………………….……...12

28

28 U.S.C. § 1367(3)(c)………………………………………….......15

v

MOTION TO DISMISS & STRIKE FIRST AMENDED COMPLAINT MEMORANDUM OF POINTS AND
AUTHORITIES CASE NO. 5:16-cv-01267-PSG (PLAx)

1

## __Statutes Cont'd__

2

3  28 U.S.C. § 1367(3)(d)…………………………………………..………...15

4  42 U.S.C. § 1983 …..………………………………………….3, 16, 17, 18, 19, 20, 21

5  49 U.S.C. § 2210(a) …..…………………………………………………......10

6  49 U.S.C. § 41711(f)…………………………………………………………....9

7  49 U.S.C. § 46110………………………………..…………………………10, 13

8  49 U.S.C. § 46110(c)……………………………………………………....13

9  49 U.S.C. § 47101, et seq.………………………………..……………….....8

10  49 U.S.C. § 47106(d) ………………………………………………………......10

11  49 U.S.C. § 47107……………………………………………………….14

12  49 U.S.C. § 47107(a) …………………………………………8, 10, 12

13  49 U.S.C. § 47107(g) …………………………………………………13

14  49 U.S.C. § 47111(d) …………………………………..…10, 13, 24

15  49 U.S.C. § 47111(f) …………………………………………..…13, 24

16  49 U.S.C. § 47122(a) …………………………………………………..9, 13

17

18

## __Rules and Regulations__

19

20  Federal Rules of Civil Procedure, Rule 8……………………….……………………..17

21  Federal Rules of Civil Procedure, Rule 12(b)(1)……………….……………….2, 3

22  Federal Rules of Civil Procedure, Rule 12(b)(6)…………………………...2, 3, 17

23  Federal Rules of Civil Procedure, Rule 12(f)…………………....…....2, 21, 24, 25

24  14 C.F.R. § 16.21 – 16.34……………………….………………………….9, 13

25  14 C.F.R. § 16.31(b)(1)………………………………………………………….9

26  14 C.F.R. § 16.31(d)………………………………………………………….9

27  14 C.F.R. § 16.33(b)(1)…………………………………..……………………….9

28

1

## Rules and Regulations Cont'd

2   14 C.F.R. § 16.109……………………….……………………………………….9

3   14 C.F.R. § 16.245………………………………………………….…10

4   14 C.F.R. § 16.247………………………………………………….…10

5

6

## FAA Orders, Grant Assurances & Publications

7

8   FAA Order 5190.6B……………….……….…………………………..11

9   FAA Order 5190.6B, Ch. 9.2(6)…………………………………….7

10   Grant Assurance 22……………….………………....…11, 15, 17, 19, 21, 22, 23

11   Grant Assurance 23……………….……………………...…11, 17, 19, 21, 22

12   Grant Assurance 25……………….……………………………...17, 19, 25

13   Pub. L. No. 97-248, Title V……………………….……………...…8

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

p:\apps\wpdata\scaa\0073 - comav v sclaa and cov\case - central dist\5.16-cv-01267\docs\main complaint\006-1-table of contents & authorities.docx

MOTION TO DISMISS & STRIKE FIRST AMENDED COMPLAINT MEMORANDUM OF POINTS AND
AUTHORITIES CASE NO. 5:16-cv-01267-PSG (PLAx)

**NOTICE OF MOTION AND MOTION TO DISMISS AND
STRIKE THE FIRST AMENDED COMPLAINT**

PLEASE TAKE NOTICE that on November 14, 2016, at 1:30 p.m. in Courtroom 880 of the above court located at 255 East Temple Street Los Angeles, CA 90012-3332, Defendants CITY OF VICTORVILLE and SOUTHERN CALIFORNIA LOGISTICS AIRPORT AUTHORITY ("Defendants"), will move the Court for an order dismissing this action; striking portions of the Complaint or to request a stay. Defendants' Motion to Dismiss is made pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, and is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities and all other pleadings on file in this matter, and upon such other matters as may be presented to the Court at the time of the hearing or otherwise. Defendant Moves to Strike portions of the Complaint pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. Should the matter not be dismissed the proceedings must be stayed, because the Federal Aviation Administration has exclusive jurisdiction to adjudicate the matters alleged in the First Amended Complaint.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS,
MOTION TO STRIKE & REQUEST FOR STAY**

## I. INTRODUCTION

Defendants Southern California Logistics Airport Authority and the City of Victorville (Defendants), through its undersigned counsel, respectfully move this Court to dismiss the Complaint filed by ComAv LLC, and ComAv Technical Services LLC, (Plaintiff or "ComAv") pursuant to Rule 12(b)1, because the Court lacks subject matter jurisdiction over the matters contained therein. Defendant alternatively requests the Complaint be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted as to all causes of action therein, and if the First Cause of Action is dismissed this Court will no longer have

supplemental jurisdiction over the state causes of action and the Court must dismiss those causes.

This case involves Plaintiff's effort to remain in wrongful possession of a wide-body aircraft Hangar located at Southern California Logistics Airport ("Airport"), without consent or a lease agreement with the Airport. Plaintiff has attempted various legal maneuvers in an effort to wrongfully remain in possession of the Hangar. It filed an Ex Parte Application for a TRO, which this Court denied. Then, Plaintiff filed an emergency appeal to the 9th Circuit, which was denied as well.  Plaintiff also filed a Part 16 Complaint with the Federal Aviation Administration ("FAA") on June 7, 2016. (FAC, Ex. E) It subsequently filed an amended Complaint on or about July 18, 2016 (Exhibit 1) The FAA issued a docket number and notice to the parties on June 28, 2016 and is asserting its jurisdiction over the nearly identical allegations alleged in Plaintiff's First Amended Complaint. (Exhibit 2)   In the Plaintiff's TRO Application filed with and decided by this Court, Plaintiff stated "Federal law vests the FAA with primary authority to determine … whether federal aviation statues have been violated." (TRO App. p. 5 line 10).

The factual allegations in Plaintiff's Part 16 Complaint are nearly identical in that  Plaintiff alleges that Defendant violated Federal Grant Assurances (federal funding for publicly operated airports) and the alleged violations of the Grant Assurances form the basis for Plaintiff's causes of action before this Court. The FAA is the primary decision maker when it comes to determinations as to whether a Federal Grant Assurance under the Airport and Airways Improvement Act of 1982, has been violated by a sponsor Airport.  The FAA has exclusive jurisdiction over such matters. Accordingly, this Court does not have jurisdiction in this matter. Furthermore, there is a long history of case law holding that a Plaintiff is not entitled to a private right of action via a 42 U.S.C § 1983 claim or state contract theory as asserted by the Plaintiff in causes of action one through six.  The FAA's statutory enforcement scheme does not include a private right to action or remedy and such

attempts by Plaintiff's to assert otherwise have been rejected by the FAA and district courts across the country. Accordingly, Plaintiff is barred from seeking any remedies for the causes of actions asserted in the First Amended Complaint (hereafter referred to FAC), which are all predicated upon alleged violations of the FAA's grant assurances.

## II.   STATEMENT OF FACTS

Southern California Logistics Airport is located in Victorville, California in the County of San Bernardino. Southern California Logistics Airport Authority (SCLAA or Airport Authority) is a governmental entity and is the governing body that oversees all Airport activities. It is comprised of various departments, staff members and a Board of Directors. ComAv and its affiliative ComAv Technical Services (hereafter referred to collectively as "ComAv" or "Plaintiff") was interested in entering into a sublease for Hangar 681 located at the Airport. ComAv does not currently have a lease with SCLAA or the Airport for Hangar 681. SCLAA had a lease with Pratt & Whitney for Hangar 681, which expired on its own terms on June 30, 2016. (FAC, Ex. B). Previously, Pratt & Whitney (hereafter "PWLMS" or "PRATT") had entered into a sublease with ComAv's predecessor, Southern California Aviation, in May 2013 for Hangar 681. (FAC, Ex. B) The sublease between PWLMS and Southern California Aviation expired on its own terms on June 30, 2016. (FAC, Ex. B). In anticipation of turning over Hangar 681 to SCLAA, had a final walk through on June 28, 2016. Plaintiff seeks an extraordinary remedy and yet it is not even in privity of contract with the SCLAA for Hangar 681. (Ray Decl. ¶6)

ComAv received a Notice to vacate Hangar 681, from PWLMS, because their sublease was due to expire. (FAC, Ex. C) Prior to Plaintiff's filing of the TRO and this Court's denial of such relief, Defendant SCLAA was not fully aware of the position of PWLMS and United Technologies Realty in regards to ComAv's occupation of the Hangar. Defendant was under the impression that if ComAv refused to vacate Hangar 681, PWLMS would be liable for holdover rent in an

4

amount 150% of the current monthly rent payable to SCLAA. (FAC, Ex B. Pratt Sublease).  The holdover provision does not appear in the CTS sublease (FAC, Ex. B CTS sublease).  The rent for Hangar 681 during the term of the lease was always tendered by PWLMS to SCLAA.  After the TRO filing and the appeal to the 9th Circuit, counsel for Defendants SCLAA and the City, was informed that PWLMS was not going to hold over. (McCarron Decl. ¶2).  If PWLMS did not hold over, then ComAv would not be able to hold over, because the controlling sublease with the Airport Authority was due to expire and did expire. (FAC, Ex.B Pratt Lease).

Approximately two years ago, in its capacity as a sublessee of PWLMS, ComAv entered into a license agreement with Federal Express ("FedEx"), for FedEx to use Hangar 681.  (Smith Decl. ¶3)  ComAv charged FedEx a rent amount of $1.05 per square foot. (Smith Decl. ¶3, Ex. C; Ray Decl. ¶4)  This amount was payable to ComAv. ComAv would then pay to PWLMS a rent amount of $0.70 a square foot, and would pay SCLAA its contracted monthly rent amount of $0.68 a square foot under the original lease between SCLAA and Pratt & Whitney.  SCLAA never received rent payments from ComAv, during Pratt & Whtiney's sublease terms. SCLAA does not have sublease agreement with ComAv for Hangar 681. (Metzler Decl. ¶3) ComAv has historically performed its aviation work at other facilities at the Airport. (Id.)

PWLMS always paid the rent for Hangar 681 on time. However, ComAv was not always timely in paying its rent to PWLMS, despite turning a profit on the licensing agreement for Hangar 681 with FedEx and ComAv.  In fact SCLAA was recently made aware that ComAv owes approximately $185,000.00 in back rent to PWLMS. (FAC, Ex. F) After FedEx vacated Hangar 681, SCLAA personnel believe that PWLMS or ComAV associates swept and cleaned Hangar 681, in anticipation of the lease termination. (Ray Decl. ¶¶ 4-6) Shortly before the expiration Plaintiff's sublease agreement with PWLMS, Plaintiff moved an Aircraft into Hangar 681, in an effort to claim Plaintiff was using Hangar 681 to work on wide body aircraft.

ComAv currently has over 200,000 square feet it subleases at the Airport to disassemble aircraft and sell aircraft parts. (Ray & Metzler Decls.)

SCLAA characterizes ComAv's actions as an intentional interference with SCLAA's operations and is preventing SCLAA from renting Hangar 681 to another tenant. SCLAA has entered into a sublease agreement with Pacific Aerospace Resources and Technology (PART), with the lease term beginning on July 1, 2016. (McCarron Decl ¶3) PART has not been able to take possession of Hangar 681, because of ComAv refusal to vacate the Hangar. (McCarron Decl ¶4) SCLAA's counsel, upon confirmation from PWLMS that it would not hold over under the terms of the sublease agreement, filed an unlawful detainer suit on July 1, 2016. Said action was served on Plaintiff's on or about July 6, 2016. (McCarron Decl. ¶5) Plaintiff filed a notice to remove the unlawful detainer to federal court on July 8, 2016. Defendants filed an Ex Parte Request to remand the matter back to state court. That matter was transferred to this court and was remanded back to state court on July 27, 2016.

There is no rule in the FAA statues, orders or regulations stating that SCLAA must rent Hangar 681 to ComAv. Plaintiff claims that SCLAA is engaging in unjust discrimination against ComAv in violation of FAA grant assurances. Such a claim can only be decided by the FAA. Judicial review of FAA decisions and determinations is exclusively heard by the U.S. Courts of Appeals.

SCLAA publicly offered Hangar 681 to the industrial rental community, beginning in summer of 2015 and further contracted with an industrial real estate rental broker at Cushman Wakefield. (Smith Decl ¶¶ 2-3; Metzler Decl. ¶¶4-5) SCLAA offered Hangar 681 to the public at a monthly rental rate of $1.25, which it is allowed to do. (Smith Decl. Ex. M) The FAA does not intervene in an airport's determination as to what rates it will charge prospective tenants, it will only act if there is a violation of a grant assurance from which it will issue a compliance order. The potential terms and conditions of any new lease agreement for Hangar 681 would be comparable or substantially similar to the terms and conditions imposed on current

6

Airport tenants.  Since this is a new lease agreement, SCLAA sought to increase the rent rate to reflect current market demands.  (Smith Decl. ¶3; Metzler Decl. ¶5) (*See also* FAA Order 5190.6B, Ch. 9.2 (6)).

On or about June 10, 2015, ComAv by and through Craig Garrick inquired about leasing Hangar 681.  (Metzler Decl. ¶4; Smith Decl. Ex. M)  Keith Metzler, Assistant City Manager for Victorville, oversees lease negotiations at the Airport. Mr. Metzler informed Craig Garrick that the Hangar would be offered for lease to the public and ComAv could make a formal offer. Mr. Metzler and SCLAA staff did not receive a formal offer from ComAv until February 2, 2016.  As part of SCLAA's standard due diligence procedures, Keith Metzler and Sophie Smith (Director of Economic Development), repeatedly requested financial statements from ComAv. SCLAA requires this from all prospective tenants before entering into any lease agreement or providing a counteroffer to determine a prospective tenant's financial viability. (Smith Decl. ¶¶ 5,8,9,10-12)  A communication from Plaintiff's counsel, indicates Plaintiff may not be a financially viable subtenant for Hangar 681, since it owed Pratt about $185,000 in back rent. (FAC, Ex. F) This could be the reason that ComAv did not produce the requested information.   Nonetheless, SCLAA, by and through its staff Sophie Smith and Keith Metzler, continued to communicate with ComAv's representatives Craig Garrick and William Morris, providing them with ample opportunity and direction as to the requirements ComAv must fulfill in order to lease Hangar 681. (FAC ¶¶   Smith & Metzler Decls)

SCLAA received an offer for Hangar 681 from another prospective tenant PART. Upon request from SCLAA, PART provided detailed financial statements and spent several hours with SCLAA Staff reviewing its financial documentation. After this review SCLAA and PART agreed to enter into a sublease at $1.05 per square foot for Hangar 681. (Metzler Decl. ¶5)  While the rate for Hangar 681 has increased, the terms, conditions and all other rights afforded to current tenants are

7

MOTION TO DISMISS & STRIKE FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND
AUTHORITIES CASE NO. 5:16-cv-01267-PSG (PLAx)

virtually identical to those that were extended to the PART under its sublease with the Authority for Hangar 681. (Id.)

## III.   ARGUMENT

### A.   This Court lacks subject matter jurisdiction, because the Federal Aviation Administration has primary jurisdiction over this matter.

#### 1.   Background on the Airport Improvement Program, Grant Assurances and the Federal Aviation Administration's Enforcement Scheme.

The Federal Aviation Administration (FAA) has exclusive jurisdiction to enforce the Airport and Airways Improvement Act of 1982, Pub. L. No. 97-248, title V (Sept. 3, 2982) (AIAA), which conditions the receipt of federal airport development funds on certain grant assurances made by an airport sponsor (herein SCLAA) to the FAA. Congress through the AIAA established a comprehensive and exclusive administrative scheme to enforce the grant assurances, and courts have uniformly held that Congress did not create a private right of action under the AAIA and have refused to imply one. *See Ricks v. City of Winona*, (N.D. Miss. 2012) 858 F. Supp. 2d 682, 688.

The Airport Improvement Program (AIP), established by Congress under the AAIA (codified at 49 U.S.C. § 47101, et seq.), is one of the main sources of funding for capital improvements for airports throughout the United States.  Under the AIP, the FAA issues funding grants to participating airport sponsors.  If an airport sponsor participates in the AIP and applies for AIP funding (grants), the airport sponsor is required by statute to execute written assurances that they will assume a number of federal obligations commonly called AIP "grant assurances." *See* 49 U.S.C. § 47107(a).   These are statutory obligations assumed by an airport sponsor as a condition of receiving AIP funding.  These statutory obligations are incorporated into grant agreements (assurances) between the FAA and the airport sponsor.

The AAIA grants the FAA the authority to "take action [it] considers necessary to carry out the [the AAIA], including conducting investigations and public hearings,

8

prescribing regulations and procedures, and issuing orders," among other things the FAA may seek an injunction in United States District Courts to stop an airport sponsor from violating the grant assurances. 49 U.S.C. §§ 47122(a), and 41711(f). Pursuant to this authority, the FAA has established two procedures that allow third parties, such as Plaintiffs, to bring a complaint against the sponsor of a Federally-obligated airport for alleged violations of the AIP grant assurances. There is an informal violation report called a "Part 13" under 14 C.F.R. part 13 and a formal adjudication of a complaint called "Part 16" under 14 C.F.R. part 16.  Plaintiffs in this action have filed a Part 16 Complaint and Request for Investigation with the FAA, and that complaint is currently pending and the FAA has issued an order regarding the party's stipulated briefing schedule. (Exhibit 2).

A Part 16 complaint has formal rules of procedure for the adjudication of a complaint brought by a third party airport user "directly and substantially affected by the alleged non-compliance," of a grant assurance by the airport sponsor.  14 C.F.R. §§ 16.21-16.34   At the end of the submission of all evidence by the parties to a Part 16 complaint and proceedings, the FAA reviews the evidence and may call for additional investigation.

Once the investigative efforts have concluded, a Part 16 complaint is resolved by a "Director's Determination." 14 C.F.R. § 16.31(b)(1).  The Director may find that the sponsor has complied with the grant assurances. If so, the complainant may file an appeal to the FAA's Associate Administrator for Airports, and if that appeal is unsuccessful, then an appeal may be filed with the U.S. Courts of Appeal.  49 U.S.C. § 46110; 14 C.F.R. §§ 16.33(b)(1), 16.247.

Alternatively, the Director may find that the sponsor has violated the grant assurances, and issue a compliance order and propose to withhold approval of an application for AIP grants or suspend AIP grant payments. 14 C.F.R §§ 16.31 (d), 16.109.  If the airport sponsor's grants are at issue, the sponsor has an opportunity for a hearing, and as stated above appeal to the FAA Associate Administrator for

9

Airports and then to the U.S. Court of Appeals. 49 U.S.C. §§ 47106(d), 47111(d), 46110; 14 C.F.R. §§ 16.245, 16.247.

In a long prodigy of cases, a few of which are provided herein, the FAA has continuously rejected Complainant's requests for restitution, compensatory and or punitive relief. *See* Desert Wings Jet Ctr. V. City of Redmond, FAA Docket No. 16-09-07, 2010 FAA LEXIS 298, at *84 (Nov. 10, 2010) ("The Part 16 process does not provide Complainant a private right of action and affords no mechanism for awarding damages."); *Aviation Center, Inc. v. City of Ann Arbor*, FAA Docket No. 16-05-01, 2005 FAA LEXIS 992, at *28 n. 10 (Dec. 16, 2005) ("The FAA has enforcement authority over an airport sponsor and does not award compensatory damages."); *Consol. Servs. Eng'rs & Constructors, Inc. v. City of Palm Springs*, FAA Docket No. 16-03-05, 2004 FAA LEXIS 578, at *73 (June 10, 204) ("The [FAA's enforcement] program does not provide a means for restitution and the award of financial damages to complainants."); *Martin v. Port of Anacorte*, FAA Docket No. 16-02-03, 2003 FAA LEXIS 162, at *115-117 (April 14, 2003) (rejecting claims for compensatory and punitive damages).

Furthermore, District Courts have regularly rejected attempts to obtain private relief for an airport sponsor's violation of the grant assurances. *See Bowling Green & Warrant City Airport Bd. v. Martin Land Dev. Co., Inc.* (6th Cir. 2009) 561 F.3d 556, 560-61 (no private right of action under the AAIA); *Four T's Inc. v. Little Rock Mun. Airport Comm'n* (8th Cir. 1997) 108 F.3d 909, 915 (the AAIA does not create rights enforceable through section 1983); *Nw. Airlines, Inc. v. Cty. Of Kent* (6th Cir. 1992) 955 F.2d 1054, 1058-59) (49 USC § 2210(a), the previous codification of section 47107(a), did not create a private right of action); *New England Legal Found. V. Mass. Port Auth.* , 168 (1st Cir. 1989) 883 F.2d (same, and also rejected section 1983 claims); *Interface Group, Inc. v. Mass. Port Auth.* (1st Cir. 1987) 816 F.2d 9, 15; *W. Airlines v. Port Auth. of N.Y. & N.J.* (2nd Cir. 1987) 817 F.2d 222, 225 (same) cert. denied, 485 U.S. 1006 (1988); *Arrow Airways v. Dade Cty.* (11th Cir. 1985) 749

10

MOTION TO DISMISS & STRIKE FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES CASE NO. 5:16-cv-01267-PSG (PLAx)

F.2d 1489, 1491 (same); *Hill Aircraft & Leasing Corp. v. Fulton Cty.* (N.D. Ga. 1982) 561 F. Supp. 667, 672, aff'd 729 F.2d 1467 (11th Cir. 1984) (same); *Santa Monica Airports Ass'n*, 481 F.Supp. at 946 (grant assurances not enforceable by third party beneficiaries). *Bodin v. Cty. Of Santa Clara* (N.D. Cal. Sep. 15, 2015) No. 14-cv-04158, 2015 U.S. Dist. LEXIS 123919, at *1 (Section 1983 claim dismissed without leave to amend).

The Plaintiff's causes of action asserted in the First Amended Complaint are inextricably entwined with the Defendant's compliance with its FAA's grant assurances. The FAA has exclusive jurisdiction over determinations regarding its grant assurances, thereby leaving this Court without the requisite subject matter jurisdiction to adjudicate Plaintiff's causes of action. The above referenced case analyses establish that Plaintiff, herein, has no private right of action whatsoever necessary to establish this court's original jurisdiction upon the matter alleged in the First Amended Complaint. At the present, the FAA is exercising jurisdiction over the allegations of the grant assurance violations, which form the basis for Plaintiff's causes of action.  Without Plaintiff's allegations regarding unjust discrimination (Grant Assurance 22), exclusive rights (Grant Assurance 23 and FAA Order 5190.6B (duty to negotiate in good faith), and reliance upon FAA statutes (FAC ¶¶ 9b, 36, 50, 57-62, 67-68, 70-72, 79-80, 87, 89, 111, 113, 117), the Plaintiff cannot assert any type of cause of action that would entitle it to remain in possession of Hangar 681. Additionally, Hangar 681 is located on ground that is owned by the United States Government, which in turn leases the ground to the Airport Authority. From there the Airport Authority subleases the Hangar to tenants such as former tenant Pratt & Whitney and current tenant PART.  Plaintiff cannot claim a vested property interest in a Hangar that is built on U.S. government land.

Plaintiff's causes for action are predicated upon its assertion that the Defendant SCLAA is obligated under FAA orders, statutes and grant assurances to lease Hangar 681 to Plaintiff.  Plaintiff specifically alleges the Airport Authority has violated Grant

Assurance 22 by offering to rent Hangar 681 at a lease rate of $1.05. (FAC ¶¶ 9b, 36, 50, 57-62, 67-68, 70-72, 79-80, 87, 89, 111, 113, 117)  The crux of Plaintiff's claim is that it did not want to pay $1.05 to rent the Hangar, rather it offered $0.70 per square foot, which was rejected.  Another prospective tenant, PART, accepted the City's counteroffer to rent the Hangar for $1.05.  Plaintiffs allege that PART's sublease for Hangar 681, that the Airport provided PART with an exclusive right in violation of Grant Assurance 23 (FAC at ¶¶9b,71-74).  Plaintiff's complaint and analysis must fail, because it does not have the right to enforce alleged violations of grant assurances.  In all of the FAA statutes and orders cited by Plaintiff in its Complaint, none of those confer a right of private action upon the Plaintiff. Plaintiff's sole and exclusive remedy is through the FAA.  Plaintiff's bold assertions that the Airport Authority has violated FAA statutes, orders and grant assurances must be disregarded in their entirety, because Plaintiff is not a trier of fact with authority to determine when an Airport Sponsor has violated FAA statute or grant assurance. Plaintiff's position on this matter is ridiculous.

**2.  This Court cannot exercise jurisdiction over Plaintiff's claims, because the alleged claims are based upon violations of the grant assurances, and the FAA has exclusive jurisdiction over such matters.**

"It is to be presumed that a cause lies outside [of federal courts'] limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am*., 511 U.S. 375, 377 (1994) (citations omitted) (jurisdiction lacking). Plaintiffs have not and cannot establish that this Court has original and supplemental jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343 and 1367.  Congress intended to vest the authority for the enforcement of the grant assurances exclusively to the FAA through its comprehensive and administrative enforcement scheme. *Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton* (E.D.N.Y. June 26, 2015) No. 15-CV-2246, 2015 U.S. Dist. LEXIS 83422, at *25.  Pursuant to 49 U.S.C. § 47107(a) the FAA

can condition funding or grants to airport sponsors upon a series of statutorily created "grant assurances." The FAA is solely in charge of ensuring compliance with the grant assurances. 49 U.S.C. § 47107(g). Furthermore, under section 47107(g), Congress authorized the FAA to "prescribe requirements for sponsors that [it] considers necessary." The FAA can then take any action it considers necessary to enforce the grant assurances, such as "conducting investigations and public hearings, prescribing regulations and procedures, and issuing orders." 49 U.S.C. § 47122(a). Should a sponsor fail to abide by the FAA's order, the FAA is authorized to withhold or suspend grant awards or it may seek to enjoin the sponsor's conduct by applying the U.S. District Court for such relief. 49 U.S.C. §§ 47111(d), (f).

As discussed supra in section A1 of this Motion, the FAA has a comprehensive administrative enforcement process allowing a party that is "directly and substantially affected" by the sponsor's alleged violation of the grant assurances to file a complaint and seek the FAA's formal adjudication of any alleged violation of the grant assurances. 14 C.F.R. §§ 16.21-34. (FAC ¶57) Once a complainant has received a determination by the Director, it can, if needed, appeal said determination to the FAA's Associate Administrator. An appeal from the Associate Administrator's decision must be made exclusively to the U.S. Court of Appeals. 49 U.S.C. § 46110 (providing for the U.S. Court of Appeals' exclusive jurisdiction to review final orders of the FAA); *see also City of Rochester v. Bond* (D.C. Cir. 1979) 603 F.2d 927, 934 (holding that the U.S. Courts of Appeals' exclusive review under the predecessor to section 46110(c) "preempts the original jurisdiction of state court as well as federal district courts"). This clearly flies in the face of Plaintiff's statements that action from this Court is necessary to preserve the jurisdiction of the FAA. (Verified Complaint; TRO Application; Appeal to 9th Circuit) In fact, Plaintiff has repeatedly recognized that the FAA has exclusive jurisdiction in this matter. (Verified Complaint; TRO Application; Appeal to 9th Circuit).

It should be noted that the Plaintiff attempted to change its theory for the basis of the causes of action in the First Amended Complaint from the Grant Assurance based theory for a remedy in the Verified Complaint.  The change in theory and recitation of the elements, such as for its section 1983 claim in the FAC, are nothing more than causes of actions based on alleged grant assurance violations that have been dressed up in a new set of clothes. Plaintiffs are not entitled to use section 1983, or contract based theories (intentional and negligent interference with a prospective economic advantage) to force compliance with the grant assurances.  The FAA can and may rule that the Airport Authority has not violated any grant assurance by choosing not to rent Hangar 681 to Plaintiff and ultimately deciding to rent it to another prospective tenant, PART. Any decision by this Court could be inconsistent with a determination by the FAA on the same issues alleged in the First Amended Complaint.

Plaintiffs are routinely barred from seeking private remedies for grant assurance violations.  In examining the FAA's comprehensive administrative enforcement scheme, authorized by Congress, Courts have routinely held that airport users (third party beneficiaries) have no right to bring an action in federal court based upon or claiming a sponsor has violated any of the section 47107 grant assurances 'until that claim has been raised with the FAA" and if needed must seek review exclusively in the U.S. Courts of Appeals. *Airborne Tactical Advantage Co. v. Peninsula Airport Comm'n* (E.D. Va Mar. 21, 2006) No. 05-CV-166, 2006 U.S. Dist. LEXIS 24271, at *4-6; *see also Ricks v. City of Winona (N.D. Miss. 2012)* 858 F.Supp.2d 682, 688 (stating the FAA's enforcement scheme "does not leave an airport user without adequate recourse" notwithstanding the absence of a private right of action).

**3.    This Court lacks supplemental jurisdiction over state law based claims.**

This Court lacks subject matter jurisdiction over Plaintiff's purported Federal Claim, as discussed fully above, and the Court also lacks supplemental jurisdiction

14

over what appear to be state law based claims, for the second and third causes of action[1]. The second and third causes do not allege any federal statutory authority upon which this Court could proceed to entertain said causes of actions. Pursuant to 28 U.S.C. § 1367 (3)(c), because this Court does not have original jurisdiction over the first cause of action, the second and third claims must be dismissed as well. If the Court should find that Plaintiff has established its burden that this Court does have jurisdiction over the purported federal action, it must still dismiss the state claims pursuant to 28 U.S.C. § 1367 (3)(d), because the FAA's administrative and enforcement scheme does not create a private right of action or remedy under California State law. This assertion is discussed in section B2 of this memorandum.

### 4. Plaintiff's efforts to plead around the FAA's regulatory and enforcement scheme fail.

Plaintiffs have not provided this Court with an independent base upon which this Court has jurisdiction to hear the matters alleged in the First Amended Complaint. Plaintiff's entire Complaint rests on Defendant's alleged violations of FAA grant assurances. If the grant assurances are completely removed from the Complaint, then we are left with nothing more than a landlord dispute with a former subtenant / squatter that wants to lease Hangar 681 for an amount less than the landlord is offering. Plaintiff's entire complaint rests upon the allegation that the Airport Authority is unjustly discriminating against it (under Grant Assurance 22) by leasing Hangar 681 to PART instead of Plaintiff. No determination has been made by the FAA as to whether or not the airport has violated any grant assurances as alleged by the Plaintiff or been ordered by the FAA to rent Hangar 681 to Plaintiff or provide a similar alternative.

---

[1] The Fourth Cause of Action in the First Amended Complaint is only alleged as to co-defendant Pratt & Whitney Line Maintenance Services, without waiving a defense or argument against this cause of action, undersigned Defendant will not discuss this cause for action, until or unless it is specifically alleged against it.

It should be noted Plaintiff has an agreement with the Airport Authority to build a wide body hangars at the Airport, but has not undertaken any effort to do so. Plaintiff incorrectly relies on a hold over provision in the Pratt & Whitney sublease with the Authority. Plaintiff, as Pratt's subtenant is not entitled to any right greater than what Pratt would have. If Pratt & Whitney does not hold over, then Plaintiff cannot. Furthermore, hold over provisions are intended to motivate a tenant to vacate the property after the expiration of the lease.  These provisions are common in commercial leases because of the tenant's need to remove large fixture, machinery or repair a large space, such as 67,000 sq foot Hangar. Such a provision protects the parties in case Holding Over is necessary to return the property to its former condition.  It does not create an indefinite month to month tenancy, as claimed by Plaintiff, allowing it to remain in the Hangar.  The 150% of the base rent increase is meant to motivate the tenant to move out.

The crux of this entire case is a sublease dispute that has been shoe horned into an FAA complaint to keep Plaintiff in the Hangar 681.  Then, Plaintiff in an attempt to thwart FAA enforcement scheme (which would not necessarily allow Plaintiff to stay in Hangar 681, availed itself to this Court in an attempt to have the court order that Plaintiff remain in wrongful possession of Hangar 681.  Plaintiff created the situation it is in, and cannot use this Court to circumvent the FAA's regulatory scheme.

**B.   Plaintiff's fail to state claims upon which relief can be granted.**

The First Amended Complaint fails to identify with any particularity how SCLAA / Defendants have actually violated a protected property right of Plaintiff, or how Defendants have intentionally or negligently interfered with a prospective economic advantage[2].   The first, second and third causes of action do not provide any authority for such violations and do not meet the pleading requirements of Fed.

---

[2] Defendant asserts the same argument as to the fifth and sixth causes of action for declaratory and injunctive relief, which are discussed later in section B3.

16

Rule Civ. P. 8.   In reality, Plaintiff's First Amended Complaint makes virtually identical conclusory allegations with respect to each Defendant. These uninformative and non-specific allegations are repeated ad nauseam throughout the Complaint. Defendant's argument for Plaintiff's failure to state a claim is governed by Rule12 (b)(6) as interpreted in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Under these standards, the court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Stanislaus Food Prods. Co. v. USS-POSCO Indus.*, 782 F. Supp. 2d 1059, 1064 (E.D. Cal. 2011); see also *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010).

### 1. Plaintiffs fail to state a claim for a violation of 42 U.S.C. § 1983 for a deprivation of a property right and violation of its substantive and procedural due process rights.

Plaintiffs attempt to seek a private remedy based upon the Airport Authority's alleged violations of FAA Grant Assurances 22, 23, and 25, however, Plaintiffs cannot use the grant assurances as a basis for a claim under section 1983.  "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); see also *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

"Traditionally, the requirements for relief under [§] 1983 have been articulated as: (1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Or, more simply, courts have required plaintiffs to "plead that (1) the defendants acting under color of state law (2) deprived plaintiffs of rights secured by the Constitution or federal statutes." *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986); see also

17

*Pistor v. Garcia*, 791 F. 3d 1104, 1114 (9th Cir. 2015); *Long v. Cty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *WMX Techs., Inc. v. Miller*, 197 F.3d 367, 372 (9th Cir. 1999) (en banc); *Ortez v. Wash. Cty., Or.*, 88 F.3d 804, 810 (9th Cir. 1996). See also *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (explaining that to impose liability on a local government under § 1983 the plaintiffs must prove that an "action pursuant to official municipal policy" caused their injury); *Sandoval v. Las Vegas Metro. Police Dep't*, 756 F.3d 1154, 1167-68 (9th Cir. 2014) (same).

To determine whether the federal statute forecloses the possibility of a § 1983 action, the court considers whether the statute contains (1) an express provision precluding a cause of action under § 1983 or (2) "'a comprehensive enforcement scheme that is incompatible with individual enforcement under section 1983.'" *City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 120 (2005) (quoting *Blessing*, 520 U.S. at 341). Where statutes contain provisions for criminal penalties, citizen suits, judicial review, or even administrative proceedings alone, the Supreme Court has found the remedial scheme sufficiently comprehensive to foreclose an independent § 1983 cause of action. See *Abrams*, 544 U.S. at 121-22.

Plaintiffs have no right of a private action under 42 U.S.C. § 1983 to remedy an alleged violation of an FAA grant assurance, because the FAA's enforcement scheme is comprehensive and incompatible with individual enforcement under section 1983, as Defendant discussed supra in Section A of this Motion.  Furthermore, the United States Supreme Court has squarely rejected attempts like this by plaintiffs wherein they try to mask a claim under a federal statute, such as section 1983, in an effort to circumvent the absence of a private right of action or remedies.  *See Astra USA, Inc. v. Santa Clara County* (2011) 563 U.S. 110, 114 (holding that the lack of a private right of action under statute precludes a third-party beneficiary breach of contract claim on a contract executing that statute). There is no private right of action or remedy for alleged violations of the grant assurances.  Additionally, there are two cases that hold there are no third-party beneficiaries to the grant assurances under

18

California law. *See Santa Monica Airport Ass'n. v. Santa Monica,* (1979) 481 F.Supp. 927, 946 (holding that the grant assurances may not be enforced by third-party beneficiaries under California law); and *San Francisco v. W. Air Lines, Inc.* (1962) 204 Cal. App. 2d 105, 125-26.

Courts have regularly held that an airport sponsor's grant assurance obligations are not enforceable through an action for money damages under 42 U.S.C. § 1983. *See, e.g. McCasland v. City of Castroville,* 514 F.App'x 446, 448-49 (5 th Cir. 2013) (citing *Four T's*, 108 F.3d at 915; *Nw. Airlines,* 955 F.2d at 1058-59; *Interface Group,* 816 F.2d at 15). These cases are examples of the following holding that "because third parties such as [herein Plaintiff ComAv] stands to receive only indirect or incidental benefits from any [FAA] administrative enforcement action against a non-compliant airport, this administrative enforcement scheme does not vest property interests [recognized by the Fourteenth Amendment]" that are actionable under section 1983. *McCasland, 514 F.App'x at 449* (citing *Town of Castle Rock v. Gonzales* (2005) 545 U.S. 784, 767-68).

Plaintiffs are attempting to bootstrap FAA Grant Assurances 22, 23, and 25 as a protected property interest under section 1983. Plaintiff's attempt fails and has been routinely rejected by the Courts. Plaintiff can recite the elements for section 1983 claim, but the heart of the matter is whether or not Defendant is required to rent Hangar 681 to Plaintiff and by not doing so if it [defendant] has engaged in unjust discrimination in violation of Grant Assurance 22, hereby conferring an "exclusive right" to PART for leasing the Hangar to it in violation of Grant Assurance 23. Defendant respectfully asserts that these are determinations this Court does not have the authority to make. Furthermore, many of the cases cited herein are based upon attempts to enforce a private cause of action based upon a determination by the FAA that a grant assurance has been violated. These types of cases routinely fail. Plaintiff's First Amended Complaint is an attempt to put the cart before the horse by alleging various causes of action, prior to an FAA determination.

19

Plaintiff's tactic fails, because the FAA and this Court could issue different or inconsistent decisions.   This is precisely the reason why the FAA with its comprehensive administrative and enforcement scheme has primary jurisdiction over this matter, regardless of what the Plaintiffs allege.  As opined in *Airborne Tactical Advantage Co. v. Peninsula Airport Comm'n,* (E.D. Va. Mar. 21, 2006) No. 05-cv-166, 2006 U.S. Dist. LEXIS 24271, at *4, the FAA's administrative and enforcement scheme is the only exclusive means of obtaining relief from an airport sponsor's alleged noncompliance with its grant assurances, and it also provides the exclusive remedies for non-compliance. *See also New England Legal Found.,* 883 F.2d. at 169 ("Congressional anointment of the power 'to insure compliance' upon the {FAA}, in our view, does more than merely exclude private parties from the right to file an action in court . . . it is up to the Secretary to decide what is necessary and satisfactory.").  Simply put, money damages are not available for violations of grant assurances.  *See Friends of E. Hampton Airport,* 2015 U.S. Dist. LEXIS 83422, at *34n.9; *Desert Wings Jet Ctr. 2010 FAA LEXIS 298,* at *84. ("The Part 16 process does not provide Complainant a private right of action and affords no mechanism for awarding damages.") Plaintiff asserts that it has exhausted its administrative remedies by filing a PART 16 complaint, however, *Desert Wings* and related cases stand for the premise that a PART 16 Complaint is not a stepping stone to filing a cause of action in federal (or State) court. Plaintiff cannot nor is entitled to a cause of action under section 1983, therefore this court must dismiss.

### 2. Plaintiff's fail to state a claim based upon state law upon which relief can be granted.

Plaintiff's state law claims for Intentional or Negligent Interference with prospective economic advantage are predicated upon an alleged violation of FAA grant assurances. For this reason, the second and third causes of action fail, because Plaintiff, as a third party beneficiary of the grant assurances is seeking to enforce

such assurances and recover unspecified damages from the Defendants, which Plaintiff is not entitled to do.

Court have consistently rejected attempts to obtain private remedies for grant assurance violations through contract or other theories. Plaintiffs second and third causes of action for intentional interference and negligent interference with a prospective economic advantage are based upon Plaintiff's allegations that Defendant is violating FAA grant assurances in refusing to lease Hangar 681 to it, in violation of Grant Assurance 22 (unjust discrimination) and by leasing the Hangar to PART conferring an alleged exclusive right to it in violation of Grant Assurance 23 (exclusive rights) (FAC ¶¶ 9b, 36, 50, 57-62, 67-68, 70-72, 79-80, 87, 89, 111, 113, 117)

The FAA's administrative enforcement scheme precludes indirect attempts to obtain private remedies for an airport sponsor's alleged violation of its grant assurances with the FAA. The California Court of Appeal and Federal District Court applying California law, with the support of the FAA as amicus, have held that the grant assurances may not be enforced as regular contracts by persons claiming status as third-party beneficiaries. *Santa Monica Airport Ass'n,* 481 F.Supp at 946; *W. Air Lines, Inc.,* 204 Cal.App.2d 109 at 125-26; *see also Miree v. United States* (1978) 249 S.E.2d 573, 579-80 (reaching the same result under Georgia Law). The United States Supreme Court reaffirmed this rule in *Astra USA, Inc.,* 563 U.S. at 114, holding there can be no third-party beneficiaries under a contract implementing a statute that itself does not create a private right of action. *Id.* Should courts permit otherwise "would be inconsistent with . . . the legislative scheme . . . to the same extent as would a cause of action directly under the statue." *Id.* At 118.

Likewise, just as Plaintiffs are precluded from asserting a claim under section 1983 based upon their unilateral entitlement to lease Hangar 681, Plaintiffs are precluded from asserting a claim for either intentional or negligent interference with a prospective economic advantage. Case law is clear, in that, these torts require more

than a possible economic advantage. They require a "reasonable expectation of economic advantage which would otherwise have accrued," but for the defendant's interference. *Campbell v. Rayburn* (1954) 129 Cal.App.2d 232, 234-235   In a comparable analysis, California courts have rejected intentional and negligent interference claims that turn on a public authorities issuance of a permit due to the inherently speculative nature of the government permitting process. *Blank v. Kirwan* (1985) 39 Cal.3d. 311, 330 ("The tort has traditionally protected the expectancies involved in ordinary commercial dealings – not the "expectancies' involved in the governmental license process."

The California Supreme Court's analysis in *Blank* is edifying, because the plaintiff was an unsuccessful applicant for a license to operate a poker club that brought an action against the city licensing authority and private individuals alleging they conspired to exclude the plaintiff.  The *Blank* case parallels Plaintiff ComAv's allegations in the First Amended Complaint that the Airport Authority, PART and Pratt & Whitney have interfered with their alleged prospective economic advantages. Plaintiff's alleged and arguably illusory economic advantages are based on its ability to lease Hangar 681. A lease that Plaintiff was not assured to receive, nor did it have an exclusive right to lease Hangar 681.  If Plaintiff had such rights to Hangar 681, those rights would arguably stem from FAA Grant Assurance 22 and 23. This brings the parties and the Court back to the fact that Plaintiff's second and third causes of action rely on a violation of FAA grant assurances by the Airport Authority. This motion has laid out in great detail that the FAA has exclusive jurisdiction in determining such matters. Plaintiffs cannot plead a "protectable expectancy" for a prospective economic advantage (as required under *Blank*). Plaintiffs "at most can hope for an economic relationship and a desire for a future benefit." *Blank.* at 133.

In Plaintiff's First Amended Complaint, the conduct alleged by Plaintiff to have interfered with a protected economic advantage is the Authority's decision to lease Hangar 681 to another tenant. As stated before, this boils down to an alleged violation

22

of the Airport Authorities grant assurances with the FAA, as to whether or not under Grant Assurance 22, if the Airport Authority was obligated to or engaged in unjust discrimination by not entering into a lease agreement with Plaintiff.  The crux of the matter as to the Airport Authority's leasing decision as to Hangar 681, is the fact that Plaintiff refused to provide financial statements to the Airport to attest to Plaintiff's financial viability prior to any lease agreement, along with the fact that Plaintiff is $185,000.00 behind on rent owed to Pratt & Whitney under those party's sublease agreement. (FAC, Ex. B CTS lease).

To allow Plaintiff's to proceed with such an action for interference with a prospective economic advantage would undermine the FAA's administrative and enforcement scheme established by Congress, and allow private parties, such as Plaintiff, to assert a right that they do not have.  *Interface Group,* 816 F.2d at 15 ("[The AAIA] does not impose on airport developers [sponsors] a duty that arguably could run in favor of private plaintiffs. Rather it imposes only the duty to give 'assurances' to the [FAA] Secretary.'" Plaintiff's state based claims (along with its section 1983 claim and claims for declaratory and injunctive relief) are the precise type of attempt to use state-law [and federal law] remedies to end-run exclusive administrative enforcement authority that the Supreme Court foreclose in *Astra*, as discussed earlier in this motion. Plaintiffs cannot state a cause of action for negligent or intentional interference with a prospective economic advantage, because they are not entitled to and are precluded from pursuant to the FAA's exclusive jurisdiction. Accordingly, these claims must be dismissed without leave to amend.

**3.   The Court must dismiss Plaintiff's causes for Declaratory and Injunctive Relief.**

Declaratory and injunctive relief do not in and of themselves provide causes of action. *Audette v. International Longshoremen's and Warehousemen's Union*, 195 F.3d 1107, 1111 n.3 (9th Cir. 1999); *Shamsiam v. Atlantic Richfield Co.,* 107 Cal.App.4th 967, 984 (2003)).  Without a valid claim of legal injury, there is no cause

of action upon which to request such relief.   Because this Court does not have jurisdiction over the claims as alleged by Plaintiff; and Plaintiff has failed to state a claim upon which relief could be granted against the Defendant (SCLAA & the City), there is no legal controversy between the parties necessitating a declarative statement as to the rights of the parties. *McGraw-Edison Co. v. Preformed Line Products Co.,* 362 F.2d 339, 342 (9th Cir. 1966). Additionally, such relief would conflict with the FAA's ability to determine what violations, if any exist, between the parties and injunctive relief for alleged violations of grant assurances can only be sought by the FAA pursuant to 49 U.S.C. § 47111(d), (f).   Accordingly, this Court must dismiss Plaintiff's fifth and sixth causes of action for declarative and injunctive relief respectively.

**C.   The Allegations regarding the SCLAA and the City of Victorville's lawsuit with the Securities and Exchange Commission should be stricken from the Complaint.**

Plaintiff, in what is an attempt to smear the Airport and the City, makes the audacious claim that the Airport Authority is trying to charge higher rent in order to value into bonds that were issued nearly 10 years ago.   This claim is not relevant or germane to any of the allegations in the Complaint that pertain to the Plaintiff's. Rule 12(f) of the Federal Rules of Civil Procedure authorizes a trial court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *See Whittlestone, Inc. v. Handi-Craft Co*., 618 F.3d 970 (9th Cir. 2010).   Plaintiff's pleading of the SEC matter falls into the "scandalous matter" category.

The City and the Authority have filed a motion for summary judgement in the SEC matter and are currently awaiting decision from the court.   The bonds in that case were issued under the now defunct California Redevelopment Law and during a time when the entire country experienced the Great Recession.   Plaintiff's attempt

to relate the SEC case to the instant action is for inflammatory purposes only, and does not assert any actual findings or violations by the City or the Airport. Such allegations should be stricken from the First Amended Complaint.

Furthermore, Plaintiff's SEC theory is based upon Grant Assurance 25, which required a sponsor to use the rates and fees it received from airport users for airport purposes. Plaintiff tries to state the higher rent charged to it will go to pay off bonds, which is nonsensical since the bonds are only supported by tax revenues. As discussed earlier in this brief, Plaintiff cannot allege or attempt to enforce a violation of a grant assurance (herein Assurance 25), the SEC matter and facts as alleged do not apply to any of the causes for action and must be stricken pursuant to Federal Rule of C. Pro. 12(f).

**D.   If the Court does not dismiss the First Amended Complaint, Defendant herein requests that the proceedings be stayed pending the outcome the FAA's investigation of Plaintiff's PART 16 complaint filed on June 6, 2016.**

Plaintiffs have not exhausted their Administrative Remedies, because the FAA has yet to make a determination as to the alleged violations of the grant assurances as set forth in Plaintiff's FAA Part 16 Complaint. Furthermore, appeals of such a determination come under the exclusive review of the U.S. Courts of Appeals.  If the Court finds that it has jurisdiction and that Plaintiff has managed to state a claim the Court must stay this proceedings in its entirety.

**IV.   CONCLUSION**

For the reasons stated above the First Amended Complaint should be dismissed in its entirety without leave to amend.

DATED:  October 11, 2016   Respectfully Submitted by:

 */s/ Michelle McCarron*_____
MICHELLE MCCARRON
*Attorney for Defendants City of Victorville &*
*Southern California Logistics Airport Authority*

SCAA/0073/CENTRAL DIST/5.16-cv-01267DOCS/MAIN COMPLAINT/003-4